# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Trinity Behavioral Health Care System, Inc.,
and Maxus, Inc.,

Plaintiffs

v.

Arkansas Department of Human Services, John
M. Selig, in his individual capacity and in his
official capacity as Director of the Arkansas
Department of Human Services, and Dawn
Stehle in her individual capacity and in her
official capacity as Director of the Division of
Medical Services of the Arkansas Department
of Human Service

Defendants.

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 05 2014

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

4:14 CV00651 KGB

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Plaintiffs Trinity Health Care System, Inc., ("Trinity") and Maxus, Inc., ("Maxus") (collectively "Plaintiffs" or "Providers") respectfully submit this Memorandum in Support of their Motion for a Temporary Restraining Order or in the alternative, a Preliminary Injunction.

## INTRODUCTION

This is an action seeking a temporary restraining order or in the alternative, a preliminary injunction enjoining Defendants from violating Plaintiffs' statutory and constitutional rights and endangering Arkansas' juvenile and adult Medicaid patients by wrongly suspending Plaintiffs' Medicaid payments on November 6, 2014. Under federal law, a court should grant preliminary

injunctive relief when movant can demonstrate a likelihood of success on the merits and irreparable harm in the absence of such relief.

Plaintiffs in this case are likely to prevail on the merits because the suspension was wrongly issued on numerous grounds. **First**, the agency from which the suspension was issued, the Arkansas Department of Human Services ("DHS"), lacks the authority to do so and therefore, under the federal Medicaid statutory and regulatory scheme, the suspension is invalid. **Second**, even if DHS had statutory authority to issue a suspension of Medicaid payments, which it does not, DHS misapplied the facts and the law when it issued the suspension pursuant to federal Medicaid regulation section 455.23. Specifically, suspension was improper under this section because (i) there have been no credible allegations of fraud; (ii) good cause exists not to suspend payments; (iii) the allegations that gave rise to the suspension do not threaten state Medicaid funds; and (iv) the allegations lack any facts to suggest that the alleged conduct in any way benefitted either of the Providers, let alone both. **Third**, Plaintiffs will prevail on their due process claims because the suspension will immediately force Providers out of business thus depriving them of any opportunity to rebut the allegations put forth against them. Plaintiffs will be out of business even if they committed no wrongdoing. **Fourth**, the suspension violates the patients' due process rights because it was issued without any prior consideration of the effect it would have on Arkansas' Medicaid beneficiaries' access to medical care and the statewide psychiatric system in violation of Sections 1396a(a)(30)(A) and 1396a(a)(19) of the Social Security Act. The foregoing sections require that states ensure sufficient care and services are available to Medicaid beneficiaries and require that states administer the program in the best interest of the beneficiaries. If the suspension is permitted to take effect and the Providers forced

to close, the entirety of the state's Medicaid program will be overwhelmed and the beneficiaries will be unable to secure sufficient care and services as required by federal law.

Furthermore, both the patients at issue and the Providers will experience irreparable harm if this Court does not enjoin DHS from suspending the Medicaid payments before a full and fair hearing can be held.[1]  The patients will experience irreparable harm if they are abruptly transferred from their treatment providers because the transfer will cause stress, anxiety, and emotional trauma that will adversely impact their treatment progress.  The Providers will experience irreparable harm because they will be forced to immediately close their business even if it is later established that Providers did not engage in any wrongdoing whatsoever.  For these reasons, as set forth in more detail below, this Court should grant Plaintiffs' request for immediate injunctive relief.

## THE MEDICAID STATUTE AND REGULATORY SCHEME

The Medicaid program, as set forth in Title XIX of the Social Security Act (the "Social Security Act"), is a joint federal and state program that provides medical assistance to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. §1396-1.  The program operates by authorizing the Federal Government to pay a percentage of the costs a state incurs for medical care, and, in return, the state is required to comply with certain federal requirements.

### *Medicaid Equal Access Provision*

Federal law requires state Medicaid plans to employ methods and procedures to ensure that the state's payments are sufficient to enlist enough providers so that care and services are

---

[1] Plaintiffs have requested and were granted an administrative hearing currently scheduled for November 14, 2014. However, suspension is set to take effect November 6, 2014 and it is uncertain when a ruling may be handed down following the hearing.  As such, court intervention is necessary to ensure that the patients are not prematurely removed from their treatment providers as discussed more fully herein.

available to the general population in a geographic area.  Section 1396a(a)(30)(A) of the Social

Security Act, commonly referred to as the Medicaid "Equal Access Provision" requires that

states:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

> *42 U.S.C. § 1396a(a)(19)*

Federal law also requires that states administer Medicaid plans in the best interests of the

recipients.  Specifically, 42 U.S.C. §1396a(a)(19) requires that states:

> provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients.

> *Suspension of Medicaid Payments - 42 C. F. R.  § 455.23*

Further, federal law requires state plans to prevent fraud and waste of Medicaid funds and

mandates that Medicaid payments be suspended in instances where an investigation is ongoing

and upon the determination of a *credible* allegation of fraud, *except* when good cause exists to

not suspend such payments.

Specifically, 42 C. F. R.  §  455.23  provides:

(a) **Basis for suspension**.

(1)    The State Medicaid agency must suspend all Medicaid payments to a provider after the agency determines there is credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payment or to suspend payment only in part.

* * *

(3)    A provider may request, and must be granted administrative review where State law so requires.

* * *

(e)    **Good cause not to suspend payments**. A State may find that good cause exists not to suspend payments, or not to continue a payment suspension previously imposed, to an individual or entity against which there is an investigation of a credible allegation of fraud if any of the following are applicable:

(1)    Law enforcement officials have specifically requested that a payment suspension not be imposed because such a payment suspension may compromise or jeopardize an investigation.

(2)    Other available remedies implemented by the State more effectively or quickly protect Medicaid funds.

(3)    The State determines, based upon the submission of **written evidence** by the individual or entity that is the subject of the payment suspension, that the suspension should be removed.

(4)    Beneficiary access to items or services would be jeopardized by a payment suspension because of either of the following:

(i)    An individual or entity is the sole community physician or the sole source of essential specialized services in a community.

(ii)    The individual or entity serves a large number of beneficiaries within a HRSA-designated medically underserved area.

(5)     Law enforcement declines to certify that a matter continues to be under investigation per the requirements of paragraph (d)(3) of this section.

(6)     The State determines that payment suspension is not in the best interests of the Medicaid program.

The purpose of 42 C.F.R. §455.23 is to ensure that state agencies suspend payments to providers who are submitting fraudulent claims such that Medicaid funds are not wrongly dissipated. *See* 76 F.R. 5966, p. 5934. (discussing that a suspension may be issued in part as long as "fraudulent claims were not continuing to be paid.")  The good cause exception is intended to be broad "to reflect that payment suspension is a very serious action that can potentially lead to dire consequences." 76 F.R. 5966, p. 5933.  In this case, there have been **no** allegations of improper billing or conversion of Medicaid funds asserted against the Providers.

*Authority to Suspend Medicaid Payments*

Federal regulations mandate the suspension of Medicaid payments to providers under certain circumstances. *See* 42 C. F. R. §455.23.  As of July 1, 2013, pursuant to the powers and duties delegated to it by duly enacted Arkansas state statute, the Arkansas Office of Medicaid Inspector General is the only agency with the proper delegated authority to suspend Medicaid payments in Arkansas. *See* A.C.A 20-77-2505, A.C.A. 20-77-2506, and A.C.A. 20-77-2508. Specifically, the Medicaid Inspector has the explicit statutory duty to: "[p]revent, detect, and investigate fraud and abuse within the medical assistance program"[2] and to "[p]ursue civil and administrative enforcement actions against an individual or entity that engages in fraud, abuse, or illegal or improper acts within the medical assistance program, including without limitation: . . . (ii) [w]ithholding payment of medical assistance funds in accordance with state laws and rules

---

[2] A.C.A. 20-77-2505. A.C.A. 20-77-1303. The "medical assistance program" is defined to include the program under Title XIX of the federal Social Security Act, commonly known as "Medicaid."

and federal laws and regulation; [and] (iii) [i]mposition of administrative sanctions and penalties in accordance with state laws and rules and federal laws and regulations." A.C.A. 20-77-2506(6)(A). DHS has no similar statutory authority pursuant to which it may order suspension of Medicaid payments. Further, in accordance with A.C.A. 20-77-2508, all "duties" and "functions" of DHS necessary to the operations of the Office of Medicaid Inspector General were transferred to the Arkansas Office of Medicaid Inspector General. Accordingly, to the extent DHS ever possessed authority to order the suspension of Medicaid payments, such authority has since been transferred to the Office of Medicaid Inspector General.

## BACKGROUND AND FACTS

### *Trinity and Maxus Psychiatric Treatment Facilities*

Trinity is a licensed inpatient treatment facility that was established in 1987 and has operated as a licensed psychiatric residential treatment facility since 1999. (*See* Affidavit of Kristi Kirk attached hereto as **Exhibit A** at ¶6). Trinity provides psychiatric services to children in Arkansas ranging from age six to seventeen. (**Exh. A** at ¶ 6). Maxus is an outpatient treatment facility based in Warm Springs, Arkansas and is a certified provider of mental health counseling to juvenile and adult patients. (*See* Third Affidavit of Thomas Christian Stinnett, M.D., P.A. attached hereto as **Exhibit B** at ¶6). Maxus has 18 separate counseling clinics located throughout the state of Arkansas. (**Exh. B** at ¶ 6). The patients at Trinity and Maxus suffer from psychiatric diagnoses and severe emotional/behavioral problems including impulse control, abuse recovery, oppositional behavior, depression, grief, post-adoption, chemical dependency and sexual issues. (*See* Second Affidavit of Thomas Christian Stinnett, M.D., P.A. attached hereto as **Exhibit C** at ¶7; **Exh. B** at ¶6). Trinity and 12 of Maxus' 18 counseling clinics are located within areas designated by the U.S. Department of Health and Human as Medically

Underserved.[3]  (**Exh. A** at ¶ 8).  Over 99% of Trinity and Maxus' patients are Medicaid beneficiaries. (**Exh. A** at ¶ 7).

The patients receiving treatment at Trinity live on Trinity's residential campus, situated in Warm Springs, Arkansas. (*See* Affidavit of Thomas Christian Stinnett, M.D., P.A. attached hereto as **Exhibit D** at ¶ 6).  Patients live in cutting-edge residential homes that are monitored full-time by residential staff.  (**Exh. D** at ¶7).  In addition to psychiatric treatment, Trinity provides its patients with on-campus primary and secondary education. (**Exh. D** at ¶15).  Patients are tested at entry for grade level performance and education plans are developed to address their individual needs.  (**Exh. D** at ¶15).  Curriculum is individualized to permit each patient to reach his or her greatest academic potential and earn a high school diploma or GED.  (**Exh. D** at ¶15). Coordination with the home school district of each patient assures that graduation requirements will be met. (**Exh. D** at ¶15).

Trinity has 172 employees and service providers and Maxus has 350 more, many of whom are highly skilled in the field of psychiatric care and include physicians, master's level therapists, and registered nurses. (**Exh. B** at ¶8; **Exh. C** at ¶ 9).  Trinity additionally employs licensed education personnel.  Both Trinity and Maxus have invested a great deal of time and money in the recruiting, hiring, education, training and certification of these employees and service providers. (**Exh. C** at ¶9; **Exh. B** at ¶8).

*DHS' Improper and Unauthorized Attempt To Suspend Payments*

On October 7, 2014, DHS issued letters to Trinity and Maxus purportedly pursuant to 42 C.F.R. §455.23(a) notifying the Providers of the suspension of their Medicaid payments effective November 6, 2014 because the agency determined there were credible allegations of fraud

---

[3] Additionally, the U.S. Department of Health and Human Services has designated 16 of 18 of Maxus' counseling clinics as Underserved Provider Areas specific to mental health. (**Exh. B** at ¶ 11).

against the Providers for which an investigation is ongoing. (*See* October 7, 2014 letters issued to Maxus and Trinity attached hereto as **Exhibit E**). DHS noted that the suspension would continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. (**Exh. E**). There have been no allegations that patient care at Maxus or Trinity has been affected or compromised in any way. *See* **Exh. E**. DHS indicated that the suspension was based upon "credible allegations" that the owner of Trinity and Maxus provided cash and other things of value to an officer of DHS in return for that officer's acts, including the provision of internal DHS information that allegedly benefited the owner and the Providers. (**Exh. E**).

In its suspension letter, DHS acknowledged the large numbers of Medicaid beneficiaries that will be negatively impacted by the suspension and found good cause exists to immediately suspend payment only in part. (**Exh. E**). Per DHS's letter, the Providers' Medicaid payments have been suspended for all *new* inpatient admissions and outpatient beneficiaries. (**Exh. E**). Payments for *existing* beneficiaries will be suspended on November 6, 2014 to allow time for existing beneficiaries to transfer to new providers.[4] (**Exh. E**).

*Effects of Suspension*

If the suspension is permitted to take effect, there will be numerous irreversible negative consequences for the Providers, the psychiatric care system in Arkansas as a whole and for the patients currently receiving treatment at Trinity and Maxus.

---

[4] As of the date of this filing 60 patients remain at Trinity's inpatient facility and over 2,600 patients are continuing to receive treatment at one of Maxus' outpatient facilities. As such, the timeframe established by DHS to effectuate the transfer of patients from Trinity and Maxus is clearly insufficient and unrealistic. This is not surprising given the large number of patients' Providers treat and the lack of alternative care facilities as discussed herein.

<u>Negative Effect on the Providers</u>

The suspension levied by DHS will be the direct cause of the Providers' permanent destruction and Providers will immediately be forced out of business if the suspension is permitted to take effect. (**Exh. C at ¶¶ 8, 10; Exh. B at ¶¶ 7, 9**). Providing 24-hour in-patient care and daily services to out-patient individuals is not a business that can be "suspended." (**Exh. C at ¶8; Exh. B at ¶7**). The patients Providers treat cannot forgo treatment pending resolution of an eventual post-suspension administrative hearing but rather must seek immediate services at another facility and will not return once they do so. (**Exh. C at ¶8; Exh. B at ¶7**).

Providers have over 500 employees or service providers, all of whom will seek employment elsewhere if Providers' Medicaid payments are suspended. (**Exh. C at ¶9; Exh. B ¶8**). In fact, employees who cannot risk being left without a paycheck have begun resigning despite a strong desire to remain with their patients. *See* a true and correct copy of a text message from a clinical supervisor to Providers' Compliance Director Kristi Kirk attached hereto as **Exhibit F** in which the clinical supervisor explains her decision to resign by stating the following:

> I want you to know that I have been here 9 amazing years and would have been for another 50. I love ACA and have enjoyed it. I have been so uneasy about the future and the bottom line is that I have 3 babies to take care of and they are my priority. You are such a dear friend and I hope that you can look past this and continue that friendship. I did notify Francis as well. I feel terrible for both of you but need to find something that I have a guaranteed job and pay check. I hope you can understand!

This employee and hundreds more like her cannot forgo weeks of pay pending the resolution of the administrative hearing. To ask these employees to remain with the Providers and continue

caring for the thousands of patients under Providers' care until they are afforded the opportunity to rebut the allegations made against would be to deny these employees their livelihood for an underdetermined length of time.  In truth, if the suspension is permitted to take effect on November 6, these employees will be forced to seek alternative employment.  The Providers then will be unable to replicate its current staffing levels after the termination hearing given the amount of investment that has gone into their current staff and the limited pool of available qualified personnel. **(Exh. C at ¶9; Exh. B ¶8).**

Medicaid payments make up over 99% of Providers' revenue; a suspension of those payments pending an undetermined time for administrative review will leave the companies with no source of income, no patients, and no employees to serve them. **(Exh. C at ¶10; Exh. B ¶9).** The Providers will be forced to close their doors before they have any opportunity for a full and fair hearing on the merits of the suspension and they will not be able to reopen even if they are successful on the administrative hearing level. **(Exh. C at ¶10; Exh. B ¶9).**

<u>Negative Effects On Arkansas' Psychiatric Care System</u>

Both Trinity and Maxus treat patient who are residents of rural Arkansas where access to psychiatric treatment facilities is limited. **(Exh. D at ¶17).**  If the suspension takes effect and the Providers are forced to close their doors, the number of mental health patients in Arkansas who are in need of medical care will skyrocket because of the lack of alternative care facilities. **(Exh. C at ¶17; Exh. B at ¶12).** The already overstretched state psychiatric system will be even further burdened potentially causing a decrease in the level of care the beneficiaries receive.

*Shortage of Inpatient Psychiatric Care Facilities*

The Arkansas Health Services Permit Agency ("HSPA") prepares an annual survey to determine capacity for Psychiatric Residential Treatment Facility ("PRTF") need. **(Exh. C at**

¶12). As of October 2014, HSPA reports that there are 628 in-state beds for PRTF in Arkansas. 92 of those beds are Trinity's. (**Exh. C** at ¶13). Based on HSPA's most recent report, statewide bed need for inpatient psychiatric patients is 634. (**Exh. C** at ¶14). Thus, according to the HSPA, the state's current bed need is 6 fewer than are currently available. (**Exh. C** at ¶14). Suspending Trinity's Medicaid payments would immediately reduce the number of available PRTF beds in Arkansas by 15% thereby causing an extreme shortage of PRTF beds in the state. (**Exh. C** at ¶15). The state's inpatient bed shortage would surge from 6 to 98 overnight and because of the current moratorium on new inpatient beds, no additional bed space can be created to house Trinity's inpatient population.

*"Medically Underserved" Areas Currently Served by Providers*

The U.S. Department of Health and Human Services uses several factors, including ratio of primary medical care physicians per 1,000 population, infant mortality rate, percentage of the population with incomes below the poverty level, and percentage of the population with incomes below the poverty level, and percentage of the population age 65 or over to designate defined geographic areas as "Medically Underserved." *See* http://www.hrsa.gov/shortage/mua/. Trinity and 12 of 18 of the Maxus' outpatient counseling clinics are within Medically Underserved Areas. (**Exh. A** at ¶ 8).

Specifically, Plaintiffs provide services to Arkansas' Medicaid beneficiaries in the following counties that have been designated as Medically Underserved Areas: Baxter, Chicot, Desha, Greene, Jackson, Jefferson, Mississippi, Pulaski, Randolph, Sebastian. (**Exh. A** at ¶8). If the suspension is permitted to take effect and Trinity and Maxus are forced to close despite the lack of any proof (or even credible allegations) of wrongdoing, these designated Medically Underserved Areas will experience an even greater shortage of available treatment centers and

wait times at the remaining outpatient facilities will dramatically increase. (**Exh. B** at ¶¶ 12-13). This real concern over a lack of alternative treatment centers is even more compelling considering the current moratorium on new licenses for outpatient counseling clinics. While existing clinics may be able to provide treatment for some of Maxus' current patients, if they have the capacity, no new facilities can be opened. Thus, patients living in areas where Maxus was the only provider will either have to travel to seek treatment or will go without. Considering the patients' lack of financial resources, the latter is the most likely possibility.

<u>Negative Effect on the Patients</u>

Because the state is already suffering from a shortage of Medicaid sponsored psychiatric treatment facilities, abruptly ceasing operations of two of its largest psychiatric behavioral treatment providers will be devastating to those individuals relying on the treatment Plaintiffs provide. *See generally*, **Exh. D**. There is *no* facility in Northeast Arkansas that can accommodate Trinity's approximately 100 juvenile inpatients and certainly no facility in the state with the same level of facilities and treatment for juveniles. (**Exh. D** at ¶17). Additionally, a large portion of outpatient psychiatric patients will be unable to find nearby substitute Medicaid outpatient counseling clinics. (**Exh. B** at ¶ 12).

In addition to a lack of available alternative treatment, the removal of the Providers' patients from their treatment facilities in itself will likely cause emotional trauma to the patients that will negatively affect their treatment progress. Because the patients in both the inpatient and outpatients treatment centers suffer from various behavioral and mental disorders, developing a stable, comfortable, secure, and trusting therapeutic setting is essential. (**Exh. D** at ¶¶ 8, 21). Patients with behavioral and mental disorders have a more difficult time developing trust in their providers. (**Exh. D** at ¶¶ 8, 21). Generally, a period of "bonding" must occur between the

psychiatric patient and the treatment provider before any benefits of treatment materialize. (**Exh. D** at ¶¶ 11, 22). Removing the patients from Trinity and Maxus will immediately break the trust that has been developed, will retard the progress that has been made, and will cause irreparable regression in the patients' mental growth. (**Exh. D** at ¶¶ 14, 24).

The patients residing at Trinity will experience the negative effects of the suspension to an even greater degree because in addition to being removed from their medical treatment providers, they are also being removed from the residences and their education providers. (**Exh. D** at ¶16). In many cases, a child coming to Trinity has already tried but failed to receive the treatment he or she needs through foster home care, stays in psychiatric hospitals, and in non-resident treatment facilities. (**Exh. D** at ¶12). Forcing these patients to once again endure a traumatic transfer away from their medical providers, their educational providers, and their stable residences will result in therapeutic and educational regression. (**Exh. D** at ¶¶ 13, 16).

On October 22, 2014, Plaintiffs filed a formal notice of appeal with DHS requesting that DHS consider the adverse impact the suspension would have on (i) the Providers; (ii) the state's psychiatric system as a whole; and (iii) the 2,600 patients receiving treatment at Trinity and Maxus. (*See* Notice of Appeal attached hereto as **Exhibit G**).

## STANDARD FOR INJUNCTIVE RELIEF

Federal Rule of Civil Procedure 65 governs the issuance of injunctive relief. *See* FED. R. CIV. P. 65. In considering a motion for a preliminary injunction, courts consider the following four factors: (1) the likelihood that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between the threat of irreparable harm and any injury that granting the injunction would inflict on the other parties; and (4) the impact that granting injunctive relief would have on the public interest. *Dataphase Systems, Inc. v. CL*

*Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). As the Eighth Circuit made clear in *Dataphase*, these four factors are flexible and interrelated. *Id.* Stated differently, a movant is not required to prevail on every factor. *International Long Term Care, Inc. v. Shalala*, 947 F. Supp. 15, 17 (D.C. Cir. 1996). An overwhelming showing of one element may compensate for another. *Id.*

In this case, Plaintiffs satisfy all four elements. Plaintiffs have a strong likelihood of succeeding on the merits of their claim and it is beyond dispute that both Plaintiffs *and* the 2,600 Arkansas Medicaid beneficiaries currently receiving treatment at Trinity and Maxus will experience irreparable harm if the suspension is permitted to take effect on November 6, 2014. Defendants, on the other hand, will suffer no harm if an injunction is granted. Furthermore, the public interest overwhelmingly supports issuance of an injunction in this case. Accordingly, Plaintiffs' Motion should be granted.

## ARGUMENT

An injunction is appropriate in this case because Plaintiffs (and the thousands of patients they treat) will suffer serious and irreparable harm in the absence of an injunction and because Plaintiffs can demonstrate a likelihood that they will ultimately prevail on the merits of their claim. *See Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540 (Ill. 1977) (enjoining suspension from Medicaid program and finding irreparable harm when 90% of the plaintiff's income was generated from Medicaid payments); *Kapable Kids Learning Center Inc. v. Arkansas Dep't of Human Services*, 420 F. Supp. 2d 956, 961 (E.D. Ark. 2005) (sustaining an injunction issued to protect Medicaid beneficiaries' procedural due process right to equal access to medical care); *Oak Park Health Care Center, LLC v. Johnson*, 2009 WL 331563, *3 (W.D. La., Feb. 10, 2009) (finding "the threat of irreparable injury likely to be suffered by the residents [if forced to move abruptly] alone was sufficient to obtain preliminary injunction."); *Pathfinder Healthcare, Inc. v. Thompson,* 177 F. Supp. 2d 895, 896  (E.D. Ark. 2001) (granting injunctive

relief when requiring plaintiff to wait for the administrative review process would be the "practical equivalent of a total denial of judicial review.").

## I.     PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Plaintiffs have a substantial likelihood of prevailing on the merits on a number of independent bases. First, the agency from which the suspension was issued, DHS, lacks the authority to do so and therefore, the suspension is invalid. Second, even if DHS had statutory authority to issue a suspension of Medicaid payments, the purported suspension in this case is in contravention to federal Medicaid regulation section 455.23. Specifically, the suspension conflicts with the regulation because (i) there have been no credible allegations of fraud; (ii) good cause exists not to suspend payments; (iii) the allegations at issue do not threaten state Medicaid funds; and (iv) there are no allegations that the alleged conduct in any way benefitted Trinity or Maxus, let alone both. Furthermore, Plaintiffs will likely prevail on their due process claims and on the due process claims of the 2,600 patients for which the injunction is also being sought. Plaintiffs will prevail because the effect of the suspension will be to put Plaintiffs out of business before they are ever granted a full and fair hearing on the merits even if it is later shown that they did not commit any wrongdoing in violation of the Plaintiffs' procedural and substantive due process rights. The suspension will also unnecessarily and abruptly force the patients to leave their treatment facilities and put the patients at substantial risk of being denied medical treatment entirely due to the lack of available alternative treatment facilities thereby violating the patients' procedural and substantive due process rights. Accordingly, an injunction is warranted under the circumstances to prevent the gross inequity that would result if the suspension were permitted to take effect before Plaintiffs have an opportunity to present these arguments and obtain a reversal of the unauthorized and wrongful suspension.

### A. The Suspension Was Not Authorized By Law

A state or federal agency cannot act in the absence of statutory authority. *See American Bus Ass'n v. Slater*, 231 F.3d 1 (D.C. Cir. 2000). Action taken by an administrative agency without the requisite statutory authority is improper and should be reversed. *Northport Health Servs. v. Arkansas Dep't of Human Services*, 2009 Ark. 619 (Ark. 2009). *See also Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540 (Ill. 1977) (affirming grant of preliminary injunction finding the defendant was without statutory authority to suspend or terminate plaintiff's participation in the Medicaid program.).

As of July 1, 2013, the Arkansas Office of Medicaid Inspector General is the only agency with the proper delegated authority to suspend Medicaid payments in Arkansas and has the explicit statutory duty to pursue civil and administrative remedies in order to prevent, detect, and investigate fraud within the Medicaid program. *See* A.C.A 20-77-2505, A.C.A. 20-77-2506, and A.C.A. 20-77-2508. DHS has *no* similar statutory authority pursuant to which it may order suspension of Medicaid payments. Further, in accordance with A.C.A. 20-77-2508, all "duties" and "functions" of DHS necessary to the operations of the Office of Medicaid Inspector General were transferred to the Arkansas Office of Medicaid Inspector General, effective July 1, 2013. As such, to the extent the DHS ever possessed the authority to order the suspension of Medicaid payments, such authority has since been transferred to the Office of Medicaid Inspector General.

Because DHS issued a suspension of Plaintiffs' Medicaid payments without any statutory authority to do so, the purported suspension is invalid. Accordingly, Plaintiffs have a substantial likelihood of success on their claim that the suspension should be reversed.

### B. DHS Misapplied the Facts and the Law When Issuing the Suspension Pursuant to 42 C.F.R. § 455.23

If DHS had statutory authority to issue the suspension, which it did not, the suspension

should nonetheless be reversed because DHS misapplied the facts and the law in issuing the suspension pursuant to 42 C.F.R. §455.23. Specifically, the suspension contravenes the federal Medicaid regulation because (i) there have been no credible allegations of fraud; (ii) good cause exists not to suspend payments; (iii) the allegations at issue do not threaten state Medicaid funds; and (iv) there are no allegations that the alleged conduct in any way benefitted Trinity or Maxus, let alone both.

*i.     No Credible Allegations of Fraud*

In order to suspend a provider's Medicaid payments in accordance with the federal regulations, the agency with the requisite authority must first determine there are "credible allegation[s] of fraud." 42 C.F.R. §455.23(a). DHS's unauthorized decision to suspend the Providers' Medicaid payments was in violation of the federal regulations because there have been no such allegations.

To be a credible allegation of fraud under federal law, the allegation should be "an allegation, which has been *verified by the state*, from any source, including but not limited to the following: (1) Fraud hotline complaints; (2) Claims data mining; (3) Patterns identified through provider audits, civil false claims cases, and law enforcement investigations." 42 C.F.R. §455.2. (Emphasis added). Additionally, pursuant to federal law, allegations must "have an indicia of reliability and *the State Medicaid agency should review all allegations, facts, and evidence carefully and act judiciously on a case-by-case basis*." 42 C.F.R. §455.2(3). (Emphasis added). Accordingly, the federal regulations require that the state Medicaid agency conduct an independent review of an allegation in conjunction with additional facts and evidence in order to verify the allegation *prior* to making an adverse decision to suspend Medicaid payments. A pre-suspension independent review is required because, as the federal government has explicitly

recognized, "payment suspension is a very serious action that can potentially lead to dire consequences." 76 F.R. 5966, p. 5933.

In this case, DHS has failed to follow any of the requirements for determining whether a credible allegation of fraud exists.  There is absolutely no evidence to suggest that DHS complied with statutory obligations and underwent any investigation to confirm the veracity of the allegations that gave rise to the suspension.  In fact, Providers issued a freedom of information request (the "FOIA Request") to DHS requesting (1) a complete copy of the file regarding the temporary suspension of Medicaid payments to Maxus and Trinity and (2) copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Maxus and Trinity. (A true and correct copy of Providers' FOIA Request is attached here to as **Exhibit H**).  There were no records of substance provided in response.  (A true and correct copy of the FOIA Response is attached here to as **Exhibit I**).  Accordingly, it is clear that DHS has not undergone the required review process or conducted *any* independent or objective investigation of the allegations at issue here.  Rather, upon information and belief, DHS merely accepted allegations contained in a federal plea agreement entered into by one of DHS' former employees, now a convicted felon, as true.

Because DHS failed to conduct any objective review or independent verification of the allegations and failed to conduct any investigation into the facts and evidence prior to issuing the suspension of Providers' Medicaid payments, the suspension was not issued in response to a "credible allegation of fraud" and is not consistent with federal law.  As such, Plaintiffs have a likelihood of success in having the suspension reversed on these grounds.

ii.    *Good Cause Exceptions Exist for Continuing Medicaid Payments*

It is likely Providers will succeed on the merits because even if DHS had conducted a proper investigation into the allegations that it relied upon in issuing the suspension, substantial good cause exists not to suspend payments.   *See* 42 C.F.R. §455.23(e).   The Medicaid regulations specifically provide that the following constitutes good cause to not suspend payments: (a) the provider serves a medically underserved area and (b) suspension would not be in the best interests of the Medicaid program. 42 C.F.R. §455.23(e).  Both good cause exceptions apply here.

a.   The Providers Serve Medically Underserved Areas

The federal regulations specifically provide that serving a Medically Underserved Area constitutes a good cause exception to the suspension provision because the federal government recognizes that suspending payments pay have devastating and irreversible effects on beneficiaries living in certain underserved areas.  *See* 76 F.R. 5966, p. 5933.  Trinity and 12 of 18 of Maxus' outpatient clinics serve patients in Medically Underserved Areas. (**Exh. A** at ¶ 8). As discussed above, permitting the suspension will directly impact those living in these Medically Underserved Areas.  (*See supra* p. 13-14).  As such, good cause exists pursuant to 42 C.F.R. §455.23(e)(4)(ii) to not suspend the Providers' Medicaid payments at this time.

b.   Suspension Is Not In The Best Interests Of The Medicaid Program

Good cause also exists not to suspend payments because, as set forth in detail below, suspension is not in the best interests of the state's Medicaid program.

*Suspension Will Be Harmful To The Patients' Treatment*

The removal of the Providers' patients from their treatment facilities will cause emotional trauma to the patients and will likely cause therapeutic regression, particularly for those patients

residing at the Providers' inpatient facility.  (**Exh. D** at ¶¶ 18, 25).  Abruptly removing patients suffering from severe emotional and behavioral problems from the therapeutic setting they have grown accustomed to will destroy the bonding they have developed with their treatment providers and will be disruptive to their treatment.  (**Exh. D** at ¶¶ 11, 24).  Furthermore, removing the patients from Trinity will also remove them from their education providers causing additional trauma and loss in educational progress. (**Exh. D** at ¶16).  These unnecessary changes in their treatment modalities threaten to cause further psychiatric and emotional trauma.  (**Exh. D** at ¶¶ 11, 24).  Simply put, forcing the closure of Plaintiffs' operations and removing the patients from their established treatment providers runs directly contrary to the best interests on the Medicaid program in Arkansas.

*The Patients Will Likely Be Unable To Obtain Alterative Treatment*

The majority of the patients at issue in this action are residents of rural Arkansas where there is a lack of alternative Medicaid eligible psychiatric facilities.  (**Exh. B** at ¶11; **Exh. D** at ¶17).  As discussed above, Trinity and 12 of Maxus' 18 outpatient counseling clinics provide necessary services to areas in Arkansas that have been officially designated as underserved by the U.S. Department of Health and Human Services.  (**Exh. D** at ¶ 8).  As such, if the suspension is permitted to take effect and the Providers forced to shut down, their 2,600 patients will likely be unable to obtain alternative treatment thereby further jeopardizing their health, safety, and well-being.

Even DHS has recognized the devastating effects that closing the Providers will have on Arkansas' Medicaid population and ordered that the suspension only be "in part" such that initially, it only applies to new patients.  (**Exh. E**).  The full suspension is scheduled to take effect on November 6, 2014.  (**Exh. E**).  When the full suspension is effectuated, the Providers

will be immediately and permanently forced out of business. The current psychiatric system will likely be unable to absorb the 2,600 patients and the closure of Plaintiffs' facilities will further stress the already overburdened system, likely resulting in a decreased level of care throughout the state. In the absence of any allegations that the patients' safety is at issue, dismantling an organization employing over 500 healthcare professionals and service providers, and serving over 2,600 patients is not in the best interests of the state's Medicaid program.

*Suspension Will Increase The State's Shortage of Medicaid-Accredited Inpatient Facilities*

If the suspension takes effect and Trinity is forced to close its doors, the state's inpatient bed shortage will immediately increase by 15%. 92 additional juvenile patients in need of residential treatment will be forced to go without. Such a dramatic and abrupt reduction in available beds when the state's needs are already being underserved would further burden the state's already overtaxed and underserved psychiatric care system and would not be in the best interest of the state's Medicaid program as a whole. Accordingly, the good cause exception compels that the Providers' payments not be suspended.

iii.     *Allegations Don't Involve Threats to Medicaid Funds.*

Even if the suspension was based on credible allegations of fraud (which it wasn't) and the good faith exceptions did not apply (which they do), the suspension is nonetheless unjustified because the allegations do not relate to any conduct that threatens the Medicaid payment system. The purpose of the Medicaid suspension of payments provision is to "combat and prevent fraud and abuse" but to do so in a manner that will "ensure that the department and its outside contractors treat providers with fairness and due process." A.C.A. 20-77-1302(a); A.C.A. 20-77-1701(b). Further, the intent of the suspension provision is to ensure that state agencies suspend payments to providers who are submitting fraudulent claims such that Medicaid funds are not

wrongly dissipated. *See* 76 F.R. 5966, p. 5934. Defendants' suspension of Medicaid payments is in contravention of the federal regulations in that it was issued in response to allegations that do ***not*** relate to misuse of Medicaid funds and the suspension is not intended to protect and preserve such funds. *See* **Exh. E.** There are no allegations that the Providers are engaging in improper Medicaid billing or that Medicaid funds are being misappropriated in any manner whatsoever. Rather, the sole allegation that gave rise to the suspension states that the owner of Trinity and Maxus, provided "cash and other things of value to an official of DHS in return for that official's acts, including the provision of internal DHS information that benefitted" the owner and the Providers.

Continuation of Medicaid payments to the Providers in this case presents zero threat to Medicaid funds, but the suspension of such payments *will* severely threaten the well-being of those Arkansas citizens intended to benefit from the Medicaid program and will destroy Providers before a full and fair hearing can occur. As such, the Defendants' suspension of Plaintiffs' Medicaid payments is in direct contravention of the intent and purpose of 42 C.F.R. §455.23 and should be stayed pending resolution of the administrative review procedure.

> iv.   *Suspension is Not Warranted Because There Are No Allegations that the Alleged Conduct Was Intended To Or Actually Benefitted Trinity or Maxus*

The suspension statute has been misapplied in this case for the additional reason that DHS has treated Trinity, Maxus, and their owner as one entity. Trinity and Maxus are independent corporate entities and each provides its own separate Medicaid eligible services. Here, DHS has adopted allegations that the owner of the Providers obtained "information" from a DHS official in exchange for cash and other things of value. However, DHS does not set forth how the alleged conduct of Provider benefitted either Trinity or Maxus. The alleged illegal conduct is not attributable to these separate entities absent evidence that the alleged wrongdoing

was taken on the Providers' behalf or for their benefit.  Without a plausible connection between alleged actions and a benefit to Trinity or Maxus, it is improper for DHS to suspend Medicaid payments to *either* organization, let alone both.

Furthermore, the violations of law alleged to have been committed thus triggering the suspension—conspiracy to commit an offense against the United States and theft or bribery concerning programs receiving Federal funds, both require intent.  *See* 18 U.S.C. §§ 371 and 666.  DHS, however, has not asserted how any alleged action was intended to benefit Trinity or Maxus, let alone how either organization did in fact benefit.  *See* **Exh. E.**  DHS simply states in a conclusory fashion that "[t]he allegation is of an exchange of cash and other things of value for the acts and information provided to you and [the Providers] that was unauthorized and illegal and was beneficial to Maxus."  (**Exh. E**).  In the absence of any factual allegations that the alleged conduct was intended to or did in fact benefit Trinity or Maxus, suspension was not warranted.

Because the Defendants' suspension of Medicaid funds was issued in the absence of credible allegations of fraud, in the absence of any threat to Medicaid funds, when good cause exists to not suspend payments and when there are no allegations that the alleged conduct threatens Medicaid funds, or that the alleged conduct was intended to or actually benefitted either Trinity or Maxus, let along both, the suspension violates 42 C.F.R. §455.23 and should be set aside pending a full and fair review on the merits by DHS via administrative hearing process.

### C. The Suspension Violates Plaintiffs' Due Process Rights

In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time and in a meaningful manner ***prior*** to a government decision which deprives one of its a liberty or property interest.  U.S. Const. amend. XIV § 1;

*Ingram v. City of Pine Bluff*, 355 Ark. 129, 136 (2003) *quoting Matthews v. Eldridge*, 424 U.S. 319 (1976). A person's liberty interest is implicated if the government levels a charge against him that "impairs his reputation for honesty or morality." *Erickson v. U.S. ex rel. Dep't. of Health & Human Services*, 67 F.3d 858, 862 (9th Cir. 1995). The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer great loss. *Parker v. BancorpSouth Bank*, 369 Ark. 300, 307 (2007). Additionally, "[a] state agency's failure to follow its own ordinances or regulations may constitute a deprivation of property without due process." *Derrickson v. Board of Educ. of City of St. Louis*, 703 F.2d 309, 315 (8th Cir. 1983), *citing Wilson v. Robinson*, 668 F.2d 380, 382-383 (8th Cir. 1981) (overruled on other grounds).

Plaintiffs have a likelihood of success on their due process claims on numerous grounds. First, because Plaintiffs have a liberty interest in their well-established reputation for honestly and morally serving the Arkansas community, they are entitled to procedural due process *before* any deprivation of that right. By enacting the suspension without giving Providers the opportunity for an immediate review, DHS' actions threaten to infringe upon these rights without constitutionally afforded due process. Once the suspension takes place, patients will be discharged and Providers' employees and service providers will leave to seek employment elsewhere. Trinity and Maxus will be unable to operate and will be forced to shut down permanently. Even if the Providers are vindicated after the administrative review process has been completed, they will already have been forced out of business, will be unable to reopen, and their reputation forever and unjustifiably tarnished. Stated differently, the administrative process that DHS employs is akin to affording a criminal defendant on death row a full and fair hearing *after* he is executed. By the time the "appeal" process is completed, it will be too late. The

criminal defendant will be dead and the Providers will no longer exist.

Second, the suspension constitutes a deprivation of due process because DHS' failure to provide Plaintiffs a meaningful opportunity to present a defense constitutes a violation of 42 C.F.R. §455.23(a)(2) which requires both that Plaintiffs are granted an administrative review of their suspension and that any suspension issued pursuant to section 455.23(a)(2) be temporary. While Plaintiffs have initiated the administrative review process and are in the process of challenging the wrongful and unauthorized suspension, any post-suspension hearing will be wholly insufficient to protect Plaintiffs' due process rights. Medicaid payments make up 99% of Providers' revenue and the Providers cannot operate, even temporarily, with 99% of their revenue abruptly withheld. (**Exh. B** at ¶ 9; **Exh. C** at ¶10). The effect of the "temporary" suspension will be the *permanent* closure of two of Arkansas' largest psychiatric treatment providers solely on the bases of unsubstantiated allegations. Plaintiffs will have no opportunity for review of the agency's decision to suspend their Medicaid payments, in violation of the statutory and regulatory requirements and Plaintiffs' procedural due process rights.

Lastly, because there have been no allegations that the patients' safety is at risk and no Medicaid funds are at risk of wrongful dissipation, the suspension was issued arbitrarily, capriciously, and without rational basis. To permit the suspension to take effect under these circumstances and force Providers permanently out of business before they are afforded any opportunity for a full and fair hearing on the merits of the allegations against them shocks the conscience and offends judicial notions of fairness such that Defendants are in violation of Plaintiffs' substantive due process rights.

### D. The Suspension Violates Patients' Due Process Rights

The patients at issue in this action have a protected interest in continuing to receive Medicaid sponsored treatment and to have equal access to such treatment as provided for by Section 1396a(a)(30)(A) of the Social Security Act. Additionally, the patients are entitled to a state Medicaid system administered in their best interests as provided for by Section 1396a(a)(19) of the Act. Denial of these statutorily protected rights amounts to a denial of due process of law. *See Kapable Kids Learning Center Inc. v. Arkansas Dep't of Human Services*, 420 F. Supp. 2d 956, 961 (E.D. Ark. 2005). Further, courts have determined that implementing changes in Medicaid payments without first conducting a study into the effects the change would have is both a violation of the Medicaid Equal Access Provision and a violation of the Fourteenth Amendment's procedural due process clause. *See Pediatric Specialty Care, Inc. v. Arkansas DHS*, 364 F.3d 925 (2004); *Arkansas Medical Soc., Inc. v. Reynolds*, 6 F.3d 519 (1993) (holding that because DHS failed to consider the reduction in reimbursement's impact on equality of access, efficiency, economy and quality of care, DHS's decision violated the requirements of §1396(a)(30)(A). *See also Spivey v. Barry*, 665 F.2d 1222, 1228 (C.A.D.C. 1981) (noting that "transfer of patients to a facility with inferior services . . . would invoke constitutional procedural protections."). When changes in the Medicaid system threaten to deprive a state's Medicaid beneficiaries their rights under the Medicaid program, the medical providers may properly assert the due process claims of the patients. *See Kapable Kids Learnings Center, Inc. v. Arkansas DHS*, 420 F. Supp. 2d (W.D. Ark. 2005) (noting that medical providers have standing to assert the rights of their patients).

If implemented, the purported suspension will result in the closing down of Providers' operations entirely thus grossly limiting Arkansas' Medicaid patients' access to Medicaid sponsored treatment. As discussed above, Providers' patients will likely be forced to travel long

distances or to forgo treatment entirely if the suspension is permitted to take effect. Additionally, issuing the suspension and forcing 2,600 patients to abruptly move from their current treatment providers when there has been no finding of wrongdoing will trigger anxiety and emotional trauma and will unnecessarily jeopardize these patients' treatment progress. Defendants' actions here thus threaten to deprive these patients of equal access to treatment and access to a state Medicaid system administered in their best interests in violation of their statutory and constitutional rights.

Lastly, because there have been no allegations that the patients' safety is at risk, DHS' suspension of the Providers' Medicaid payments was issued arbitrarily, capriciously, and without rational basis. DHS levied the suspension of Plaintiffs' Medicaid payments without conducting any investigation into the risks and consequences to the patients. Defendants should be enjoined on this basis alone. *See Pediatric Specialty Care, Inc. v. Arkansas DHS*, 364 F.3d 925, 929 (2004) where the district court enjoined a state agency from implementing changes relating to Medicaid payments to providers because the agency "had done nothing to determine the effect" that the payment changes would have on the "economy, efficiency, quality of care and equal access." Permitting the suspension to take effect under these circumstances and forcing the patients to move from their treatment providers before any hearing on the merits is conducted shocks the conscience and offends judicial notions of fairness in violation of the Fourteenth Amendment Due Process Clause.

Because Defendants' actions and procedures in suspending Providers' Medicaid payments, which in turn requires that the patients be abruptly removed from Providers' facilities, violate the due process clause of the United States Constitution, the suspension must be set aside until a review of the merits is completed. *See Kapable Kids Learning Center Inc. v. Arkansas*

*Dep't of Human Services*, 420 F. Supp. 2d 956, 961 (E.D. Ark. 2005) (stating the court's issuance of an injunction suspending certain Medicaid payment changes comported with due process requirements and allowed the state to remain in compliance with the equal access provision pending further review of the proposed change).

## II.   PLAINTIFFS AND PATIENTS WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED

Harm is considered irreparable when "it cannot be adequately compensated by money damages or redressed in a court of law." *Delancy v. State*, 356 Ark. 259, 305 (Ark. 2004). Unless this Court exercises its equitable power in this case to temporarily enjoin DHS' suspension of Plaintiffs' Medicaid payments, Plaintiffs will lack the funding necessary to remain operational pending the resolution of any forthcoming administrative review.   Plaintiffs' facilities will be forced to close permanently, without any possibility of re-opening even if Plaintiffs are ultimately absolved of any wrongdoing.  Most importantly, unless this Court grants temporary injunctive relief, Plaintiffs' patients will be forced to endure an abrupt removal from their current treatment facilities, the disruptive effect of which threatens their medical treatment in a way that cannot be undone.  (**Exh. D** at ¶14).  The irreparable harm that both Plaintiffs and their patients will experience if the suspension is permitted to take effect justifies the issuance of an injunction in this case.

### A.  Irreparable Harm To Providers' Patients

Courts have recognized that abruptly transferring inpatient residents from their treatment facilities and separating them from their caregivers can have harmful effects referred to as "transfer trauma."  *See e.g.*, *In re L.P.*, 2010 WL 2651632, No. XX/10, at *7 (N.Y. Fam. Ct., June 16, 2010) (noting that minimizing placement change will minimize child pain and trauma; lessen child attachment, behavior and mental health disorders....").  In fact, courts have

specifically found that prematurely moving Medicaid residents pending exhaustion of a provider's appeal constitutes "irreparable harm" such that an injunction is proper.   *See Pathfinder Healthcare, Inc. v. Thompson*, 177 F. Supp. 2d 895, 897 (E.D. Ark. 2001) ("Particularly compelling in this case, however, is the certain irreparable harm to [provider's] residents if they are forced to move unnecessarily."); *Oak Park Health Care Center, LLC v. Johnson*, 2009 WL 331563, *3 (W.D. La., Feb. 10, 2009) (stating that "the threat of irreparable injury likely to be suffered by the residents [if forced to move abruptly] *__alone was sufficient to obtain preliminary injunction.__*").   This is true even when the movant seeking the injunction is the provider, not the patient. *Id. See also Peak Medical Oklahoma No. 5, Inc. v. Sebelius*, 2010 WL 4809319, *3 (N.D. Okl. 2010) (stating that "[a]lthough the residents [were] not formally before the Court, their interests are still relevant in evaluating irreparable harm for the equitable determination whether or not to grant [an injunction pending appeal.") (internal citations omitted); *Frontier Health v. Shalala*, 113 F. Supp. 2d 1192, 1193 (E.D. Tenn. 2000) (granting an injunction in favor of plaintiff provider because "having to move mentally ill people to distant facilities would not only be disturbing to the patients but would take them away from current therapists and family support").

The courts in the above-cited cases all recognized the great harm that can result if at-risk patients are removed from their treatment facilities unnecessarily.   In *Pathfinder*, for example, the U.S. Department of Health and Human Services sought to terminate the plaintiff's participation in the Medicaid program.   While the plaintiff sought an administrative appeal of the department's actions, it also sought and the court granted, injunctive relief to suspend the termination pending resolution of plaintiff's administrative appeal.   Critical to the court's decision to stay enforcement of the termination was the trauma the patients would likely endure

by an abrupt move from their treatment facilities and providers. *See Pathfinder Healthcare, Inc.*
*v. Thompson*, 177 F. Supp. 2d at 897 ("Particularly compelling in this case, however, is the
**certain irreparable harm** to [provider's] residents if they are forced to move unnecessarily.")
(emphasis added).

Similarly, the thousands of patients at issue in this case who are receiving treatment at
Plaintiffs' facilities face certain and irreparable harm if they are forced to abruptly leave their
treatment centers unnecessarily. (**Exh. D** at ¶¶ 14, 24). For all the reasons set forth above, the
harm that is certain to result from allowing patients suffering from mental and behavioral
disorders to go untreated will be irreparable and supports the issuance of an injunction in this
action. (*See supra* p. 11-13). Accordingly, this Court should exercise its equitable powers to
stay enforcement of the suspension such that the patients will not be put risk. *See Pathfinder*
*Healthcare, Inc. v. Thompson*, 177 F. Supp. 2d 895, 897 (E.D. Ark. 2001) (granting plaintiff's
motion for an injunction when "[n]one of the violations for which [the agency] purport[ed] to
terminate [the provider] involve immediate jeopardy to [the patients]."

### B. Irreparable Harm to Providers

Courts have held that when a facility obtains 90% of their revenue from Medicaid
payments, it can be "reasonably inferred that wrongful suspension from the Medicaid program,
for any length of time" would constitute irreparable harm warranting injunctive relief. *Bio-*
*Medical Laboratories, Inc. v. Trainor*, 68 Ill.2d 540, 549 (Ill. 1977). *See also Atwood Turnkey*
*Drilling, Inc. v. Petroleo Brasiliero, S.A.*, 875 F.2d 1174 (5th Cir. 1989) (finding that potential
economic harm that is so severe that it threatens the existence of plaintiff's business constitutes
irreparable harm). Further, the irreparable harm element is satisfied when in the absence of an
injunction, there is a substantial risk that plaintiff will be forced to forego certain administrative

appeal rights as a result of being forced out of business prior to resolution of the administrative appeal. *See Pathfinder Healthcare, Inc. v. Thompson,* 177 F. Supp. 2d 895, 896 (E.D. Ark. 2001) (granting injunctive relief when requiring plaintiff to wait for the administrative review process would be the "practical equivalent of a total denial of judicial review."); *International Long Term Care, Inc. v. Shalala,* 947 F. Supp. 15 (D.C. Cir. 1996) (granting a preliminary injunction enjoining the suspension of Medicaid and Medicare payments for a short period of time to allow for an administrative hearing and for a final administrative decision to be issued); *Frontier Health, Inc. v. Shalala,* 113 F. Supp. 2d 1192 (E.D. Tenn. 2000) (enjoining the Secretary of Health and Human Services from terminating a hospital's participation in Medicaid and Medicare programs until the administrative appeal has been completed).

*Pathfinder, International,* and *Frontier Health* are all on point and support the grant of temporary injunctive relief until Plaintiffs receive a full and fair hearing on the merits of the suspension. In each of these cases, the plaintiff Medicaid or Medicare providers were cited by certain state agencies and sanctions assessed for alleged violations of the Medicaid or Medicare regulations. In each case, the provider was, in theory, provided a process by which it could challenge the sanction and if successful, continue participating in the Medicaid or Medicare program. That process, as is the case here, was the administrative appeal. The courts in each of those cases, however, recognized that because the Medicaid or Medicare program accounted for a substantial percentage of the providers' revenue, the providers faced a substantial risk of going out of business before the administrative process could be undertaken. Accordingly, the courts granted temporary injunctive relief and suspended the termination of the providers' Medicaid payments because doing so and maintaining the status quo was the only way to ensure that the administrative process was not "rendered hollow." *International Long Term Care, Inc. v.*

*Shalala*, 947 F. Supp. at 20.

Like the plaintiffs in the above referenced cases, it is indisputable that Plaintiffs here will suffer irreparable harm if their Medicaid payments are suspended prior to the resolution of the administrative appeal. As discussed in detail above, if and when the suspension is reversed on administrative review, the Providers will have already been wrecked. There will be no business to resume, no patients to treat, no service providers to employ. (**Exh. C** at ¶10; **Exh. B** at ¶9). This type of threatened devastation is precisely the type of imminent and irreversible harm the injunction was meant to guard against. *See Atwood Turnkey Drilling, Inc. v. Petroleo Brasiliero, S.A.*, 875 F.2d 1174 (5th Cir. 1989). Accordingly, this Court should grant Plaintiffs the requested injunctive relief.

## III.   THE INJURY PLAINTIFFS AND THEIR PATIENTS WILL SUFFER GREATLY OUTWEIGHS ANY HARM AN INJUNCTION WOULD IMPOSE ON DEFENDANTS.

As discussed at length in the preceding sections of this memorandum, the failure to issue an injunction in this case is certain to result in devastating harm to the Providers, their patients, and the state's entire Medicaid system. (*See supra* p. 10-14). On the other hand, the only potential harm to Defendants, should this Court grant the requested relief, is a temporary delay in the administrative process. There are no allegations that the Plaintiffs are providing inadequate treatment here or that Medicaid funds are being misappropriated. As such, there is no reason not to stay the suspension pending a full and fair hearing on the merits of the allegations put forth against Plaintiffs. The temporary delay of the suspension is trivial when balanced against the serious irreparable harm that will result if the suspension is permitted to take effect on November 6, 2014. As such, the balance of the respective harms favors the grant of an injunction in this case.

## IV.   THE PUBLIC INTEREST FAVORS AN INJUNCTION

Unless this Court grants Plaintiffs' requested relief, the public interest will be significantly harmed by the impending suspension and subsequent closure of Plaintiffs' facilities. Indeed, the Medicaid program is intended to protect the indigent people of Arkansas, yet it is these Arkansas citizens and the state's Medicaid system as a whole that will suffer immensely for all the reasons stated herein if an injunction is not issued. (*See supra* p. 11-14).

### <u>Conclusion</u>

This case involves a unique set of facts and important issues the resolution of which will undoubtedly have far-reaching consequences for a large number of the most vulnerable Arkansas citizens.   Accordingly, this Court should exercise its equitable power to maintain the status quo and stay the suspension of Plaintiffs' Medicaid payments pending the outcome of their administrative appeal.   To allow the suspension to take effect before Plaintiffs are able to challenge the wrongful suspension and to subject Plaintiffs' patients to a potentially unnecessary and devastating disruption in their medical treatment, contravenes the purpose and intent of the Medicaid statute.   This is particularly true in this case because the grounds upon which the suspension is purportedly based have nothing to do with the quality of care the patients are receiving or the waste of Medicaid funds.   Staying the suspension will ensure hundreds of Arkansas' Medicaid recipients can continue receiving the uninterrupted medical treatment they require until such time as an administrative law judge can rule upon the merits of Plaintiffs' defenses.   For these reasons, the Court should grant Plaintiffs' Motion for a Preliminary Injunction pending resolution of their administrative appeal.

Respectfully submitted,

TRINITY BEHAVIORAL HEALTH CARE
SYSTEM, INC. and MAXUS, INC.

By: _____

Charles A. Banks, AR Bar #73004
Banks Law Firm
100 Morgan Keegan Drive, Ste. 100
Little Rock, AR 72225-1310
(501) 280-0100
Attorneys for Plaintiffs
Date: November 5, 2014

and

_____

Ronald A. Hope, AR Bar # 81092
Hope, Trice, O'Dwyer & Wilson, P.A.
211 Spring Street
Little Rock, Arkansas 72201
(501) 372-4144
Attorneys for Plaintiffs
Date: November 5, 20147

# EXHIBIT A

## AFFIDAVIT OF KRISTI KIRK

I, Kristi Kirk, being duly sworn and under oath, hereby state the following based upon personal knowledge:

1.  I am over 18 years of age and have personal knowledge of the facts set forth in this affidavit and would testify to the same if called upon to do so.

2.  I am currently the Compliance Director at Maxus, Inc. and Trinity Behavioral Health, Inc. ("Maxus" and "Trinity" respectively, and cumulatively, "Provider").

3.  In my capacity as the Compliance Director at Provider, I have personal knowledge regarding the locations, operations, and patient populations at Maxus' 18 outpatient counseling clinics and Trinity's in-patient psychiatric treatment facility.

4.  I also have general knowledge of the Medicaid-eligible outpatient psychiatric counseling clinics and psychiatric residential treatment facilities that exist throughout the state of Arkansas.

5.  Maxus operates 18 outpatient counseling clinics in Arkansas and is a qualified provider of Medicaid services.

6.  Trinity was established in 1987 and has operated as a licensed psychiatric residential treatment facility since 1999. It provides psychiatric services to children in Arkansas ranging from age six to seventeen.

7.  Medicaid beneficiaries make up over 99% of Providers' patients.

8.  Trinity's psychiatric residential treatment facility and 12 of the 18 Maxus' outpatient counseling clinics are in HRSA-designated Medically Underserved Areas. These areas include all or portions of the following counties: Baxter, Chicot, Crittenden, Desha, Faulkner, Greene, Jackson, Jefferson, Mississippi, Pulaski, Randolph, Sebastian. (*See* list of

Provider facilities and corresponding HSRA Medically Underserved Area database search results

incorporated and attached hereto at Tab 1 and found at http://muafind.hrsa.gov/index.aspx.).

9.    As of the date of this affidavit, 60 patients remain at Trinity's inpatient facility

and over 2,600 patients are continuing to receive treatment at one of Maxus' outpatient facilities.


FURTHER AFFIANT SAYETH NAUGHT.

Date:   November 3, 2014

Kristi Kirk


STATE OF ARKANSAS          )
                           )
COUNTY OF Pulaski          )

I, Gerald Crochet, Jr, a Notary Public for the above county and state, hereby certify that Kristi Kirk appeared before me on this 3rd day of November, 2014, and being duly sworn to oath, and attested to the execution of this Affidavit.

Notary Public

GERALD J. CROCHET, JR.
NOTARY
*
PUBLIC
#12367426
EXPIRES
02-19-2016
SALINE COUNTY

My Commission expires

# TAB 1

| OFFICE | NPI # | Medicaid Provider # | ADDRESS | COUNTY | PHONE | FAX |
|---|---|---|---|---|---|---|
| ARKADELPHIA | 1134243579 | 162952526 | 2425 COUNTRY CLUB RD. ARKADELPHIA, AR 71923-2903 | CLARK | 870-245-3888 | 870-245-3887 |
| BENTON | 1194840371 | 162293526 | 109 WEST SOUTH STREET BENTON, AR 72015-3776 | SALINE | 501-776-1191 | 501-776-1194 |
| BLYTHEVILLE | 1316062391 | 158655526 | 829 E MAIN BLYTHEVILLE, AR 72315-2521 | MISSISSIPPI | 870-780-6986 | 870-780-6987 |
| CONWAY | 1215052485 | 162291526 | 1100 BOB COURTWAY DR. SUITE 9 CONWAY, AR 72032-4766 | FAULKNER | 501-328-5525 | 501-328-5342 |
| DUMAS | 1881719060 | 162292526 | 105 CARLTON DR. DUMAS, AR 71639-2836 | DESHA | 870-382-1680 | 870-382-1681 |
| FORT SMITH | 1780709881 | 158653526 | 100 TOWSON AVE. FORT SMITH, AR 72901-2632 | SEBASTIAN | 479-784-9801 | 479-784-9805 |
| HARRISON | 1366567364 | 158658526 | 1408 HWY 62 65 N HARRISON, AR 72601-2914 | BOONE | 870-741-2960 | 870-741-2965 |
| JONESBORO | 1376668541 | 162296526 | 3009 TURMAN DR, SUITE A JONESBORO, AR 72404-8998 | CRAIGHEAD | 870-268-8875 | 870-268-8695 |
| LAKE VILLAGE | 1972892206 | 185746526 | 316 MAIN STREET LAKE VILLAGE, AR 71653-1942 | CHICOT | 870-265-2186 | 870-265-2305 |
| MARION | 1194840363 | 162295526 | 4001 COMMERICAL CENTER DR. SUITE 2 MARION, AR 72364 | CRITTENDEN | 870-735-4441 | 870-735-5441 |
| MOUNTAIN HOME | 1740305747 | 158654526 | 3348 HWY. 62 W. MOUNTAIN HOME, AR 72653 | BAXTER | 870-424-9060 | 870-424-9061 |
| NEWPORT | 1952558264 | 167003526 | 2000 MCLAIN SUITE B NEWPORT, AR 72112-3661 | JACKSON | 870-523-2938 | 870-523-2994 |
| NORTH LITTLE ROCK | 1881719052 | 162954526 | 632 W BROADWAY N LITTLE ROCK, AR 72114-5526 | PULASKI | 501-955-2674 | 501-955-2754 |
| PARAGOULD | 1225153497 | 162294526 | 100 N. ROCKINGCHAIR RD. SUITE 1 PARAGOULD, AR 72450-2413 | GREENE | 870-335-9617 | 870-335-9618 |
| POCAHONTAS | 1417075912 | 158656526 | 1878 HWY. 62 POCAHONTAS, AR 72455-3639 | RANDOLPH | 870-248-0660 | 870-248-0321 |
| RUSSELLVILLE | 1306961495 | 158652526 | 1310 W MAIN STREET SUITE 100 RUSSELLVILLE, AR 72801-2803 | POPE | 479-498-4423 | 479-498-4425 |
| SEARCY | 1477723161 | 166873526 | 106 S SPRING SEARCY, AR 72143-7717 | WHITE | 501-268-2812 | 501-268-2824 |
| WHITE HALL | 1104078997 | 170244526 | 204 FRANKIE LANE WHITE HALL, AR 71612-2699 | JEFFERSON | 870-247-2305 | 870-247-2330 |
| TRNITY | 1831216514 | 157516125 | 1033 OLD BURR ROAD WARM SPRINGS, AR 72478-9077 | RANDOLPH | 870-647-1400 | 870-647-1451 |



U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

**Print    Close**

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 2425 Country Club Rd, Arkadelphia, AR, 71923
(---- Input location: 2425 country club, arkadelphia, Arkansas 71923)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Hot Springs Catchment Area |
| Mental Health HPSA ID: | 7059990513 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 14 |
| Mental Health HPSA Designation Date: | 1997/03/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/09/11 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Clark County |
| Dental Health HPSA ID: | 605999050K |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 16 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: No**   [Additional result analysis] | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Clark |
| County Subdivision Name: | Caddo |
| Census Tract Number: | 953601   [Additional result analysis] |
| ZIP Code: | 71923 |
| Post Office Name: | Arkadelphia |
| Congressional District Name: | Arkansas District 04 |
| Congressional District Representative Name: | Tom Cotton |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

**Date of query: 10/28/2014**



U.S. Department of Health and Human Services
**HRSA** U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print    Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 109 W South St, Benton, AR, 72015
(---- Input location: 109 west south, benton, Arkansas 72015)

| | |
|---|---|
| In a Primary Care Health Professional Shortage Area: No | |
| In a Mental Health Professional Shortage Area: No | |
| In a Dental Care Health Professional Shortage Area: No | |
| In a Medically Underserved Area/Population: No   [Additional result analysis] | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Saline |
| County Subdivision Name: | Bauxite |
| Census Tract Number: | 010101   [Additional result analysis] |
| ZIP Code: | 72015 |
| Post Office Name: | Benton |
| Congressional District Name: | Arkansas District 02 |
| Congressional District Representative Name: | Tim Griffin |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U.S. Department of Health and Human Services
**Health Resources and Services Administration**

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

**Reported location:** 829 E Main St, Blytheville, AR, 72315
**(— Input location:** 829 east main, blytheville, Arkansas 72315)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Jonesboro Catchment Area |
| Mental Health HPSA ID: | 7059990507 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1981/07/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/23 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Mississippi County |
| Dental Health HPSA ID: | 605999050R |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 11 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Mississippi County |
| MUA/P ID: | 00180 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Mississippi |
| County Subdivision Name: | Chickasawba |
| Census Tract Number: | 010200 |
| ZIP Code: | 72315 |
| Post Office Name: | Blytheville |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Case 4:14-cv-00651-KGB   Document 3   Filed 11/05/14   Page 44 of 217

**Date of query: 10/28/2014**



*Powered by the HRSA Data Warehouse*

Print    Close

## Find Shortage Areas: HPSA & MUA/P by Address

**Reported location: 1100 Bob Courtway Dr, Conway, AR, 72032**
**(---- Input location: 1100 bob courtway, conway, Arkansas 72032)**

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: No** | |
| **In a Dental Care Health Professional Shortage Area: No** | |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Faulkner County |
| MUA/P ID: | 00160 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Faulkner |
| County Subdivision Name: | Cadron |
| Census Tract Number: | 030403 |
| ZIP Code: | 72032 |
| Post Office Name: | Conway |
| Congressional District Name: | Arkansas District 02 |
| Congressional District Representative Name: | Tim Griffin |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

**Date of query: 10/28/2014**



U. S. Department of Health & Human Services

U. S. Department of Health and Human Services
**Health Resources and Services Administration**

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 105 Carlton Dr, Dumas, AR, 71639
(---- Input location: 105 carlton drive, dumas, Arkansas 71639)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: Yes** | |
| Primary Care HPSA Name: | Low Income - Desha County |
| Primary Care HPSA ID: | 105999050G |
| Primary Care HPSA Status: | Designated |
| Primary Care HPSA Score: | 15 |
| Primary Care HPSA Designation Date: | 2013/11/13 |
| Primary Care HPSA Designation Last Update Date: | - - - |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Monticello Catchment Area |
| Mental Health HPSA ID: | 7059990504 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 19 |
| Mental Health HPSA Designation Date: | 1978/07/19 |
| Mental Health HPSA Designation Last Update Date: | 2012/05/03 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Desha County |
| Dental Health HPSA ID: | 6059990535 |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 17 |
| Dental Health HPSA Designation Date: | 2010/03/02 |
| Dental Health HPSA Designation Last Update Date: | 2013/11/13 |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Desha County |
| MUA/P ID: | 00158 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Desha |
| County Subdivision Name: | Randolph |
| Census Tract Number: | 950200 |
| ZIP Code: | 71639 |
| Post Office Name: | Dumas |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.

Date of query: 10/28/2014



U. S. Department of Health and Human Services
**Health Resources and Services Administration**

*Powered by the HRSA Data Warehouse*

Print    Close

## Find Shortage Areas: HPSA & MUA/P by Address

**Reported location:** 100 Towson Ave, Fort Smith, AR, 72901
(---- **Input location:** 100 towson, fort smith, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Fort Smith Catchment Area |
| Mental Health HPSA ID: | 7059990514 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 17 |
| Mental Health HPSA Designation Date: | 1997/03/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/09/11 |
| **In a Dental Care Health Professional Shortage Area: No** | |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Fort Smith |
| MUA/P ID: | 06216 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Sebastian |
| County Subdivision Name: | Upper |
| Census Tract Number: | 000300 |
| ZIP Code: | 72901 |
| Post Office Name: | Fort Smith |
| Congressional District Name: | Arkansas District 03 |
| Congressional District Representative Name: | Steve Womack |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

**Date of query:** 10/28/2014



U. S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 1408 Highway 62 65 N, Harrison, AR, 72601
(---- Input location: 1408 hwy 62 65 n, harrison, Arkansas 72601)

| In a Primary Care Health Professional Shortage Area: Yes | |
|---|---|
| Primary Care HPSA Name: | Low Income - Boone County |
| Primary Care HPSA ID: | 105999050D |
| Primary Care HPSA Status: | Designated |
| Primary Care HPSA Score: | 9 |
| Primary Care HPSA Designation Date: | 2013/10/23 |
| Primary Care HPSA Designation Last Update Date: | - - - |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Mountain Home Catchment Area |
| Mental Health HPSA ID: | 7059990509 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 18 |
| Mental Health HPSA Designation Date: | 1986/06/16 |
| Mental Health HPSA Designation Last Update Date: | 2012/05/03 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Boone County |
| Dental Health HPSA ID: | 605999050X |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 13 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: No** | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Boone |
| County Subdivision Name: | North Harrison |
| Census Tract Number: | 790501   [Additional result analysis] |
| ZIP Code: | 72601 |
| Post Office Name: | Harrison |
| Congressional District Name: | Arkansas District 03 |
| Congressional District Representative Name: | Steve Womack |

Case 4:14-cv-00651-KGB   Document 3   Filed 11/05/14   Page 50 of 217

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

**Date of query: 10/28/2014**



U.S. Department of Health & Human Services

**HRSA**  U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 3009 Turman Dr, Jonesboro, AR, 72404
(---- Input location: 3009 turman, jonesboro, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Jonesboro Catchment Area |
| Mental Health HPSA ID: | 7059990507 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1981/07/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/23 |
| **In a Dental Care Health Professional Shortage Area: No** | |
| **In a Medically Underserved Area/Population: No** | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Craighead |
| County Subdivision Name: | Nettleton |
| Census Tract Number: | 000401   [Additional result analysis] |
| ZIP Code: | 72404 |
| Post Office Name: | Jonesboro |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U. S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 316 Main St, Lake Village, AR, 71653
(---- Input location: 316 main, lake village, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Monticello Catchment Area |
| Mental Health HPSA ID: | 7059990504 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 19 |
| Mental Health HPSA Designation Date: | 1978/07/19 |
| Mental Health HPSA Designation Last Update Date: | 2012/05/03 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Chicot County |
| Dental Health HPSA ID: | 605017 |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 13 |
| Dental Health HPSA Designation Date: | 1978/07/19 |
| Dental Health HPSA Designation Last Update Date: | 2012/05/21 |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Chicot County |
| MUA/P ID: | 00148 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Chicot |
| County Subdivision Name: | Carlton |
| Census Tract Number: | 080300 |
| ZIP Code: | 71653 |
| Post Office Name: | Lake Village |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

**Date of query: 10/28/2014**



U. S. Department of Health & Human Services

**HRSA**  U. S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 4001 Commercial Center Dr, Marion, AR, 72364
(---- Input location: 4001 commercial center, marion, Arkansas)

| | |
|---|---|
| In a Primary Care Health Professional Shortage Area: No | |
| In a Mental Health Professional Shortage Area: No | |
| In a Dental Care Health Professional Shortage Area: No | |
| In a Medically Underserved Area/Population: Yes | |
| MUA/P Service Area Name: | Crittenden County |
| MUA/P ID: | 00155 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Crittenden |
| County Subdivision Name: | Jasper |
| Census Tract Number: | 030703 |
| ZIP Code: | 72364   [Additional result analysis] |
| Post Office Name: | Marion |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |
| | |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U.S. Department of Health & Human Services

**HRSA**
U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 3348 Highway 62 W, Mountain Home, AR, 72653
(---- Input location: 3348 hwy 62, mountain home, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Mountain Home Catchment Area |
| Mental Health HPSA ID: | 7059990509 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 18 |
| Mental Health HPSA Designation Date: | 1986/06/16 |
| Mental Health HPSA Designation Last Update Date: | 2012/05/03 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Baxter County |
| Dental Health HPSA ID: | 605999051M |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 17 |
| Dental Health HPSA Designation Date: | 2014/03/06 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Baxter County |
| MUA/P ID: | 00144 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Baxter |
| County Subdivision Name: | Mountain Home   [Additional result analysis] |
| Census Tract Number: | 950100   [Additional result analysis] |
| ZIP Code: | 72653 |
| Post Office Name: | Mountain Home |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U. S. Department of Health & Human Services

**HRSA**  U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

# Find Shortage Areas: HPSA & MUA/P by Address

**Reported location:** 2000 Mclain St, Newport, AR, 72112
(---- Input location: 2000 mclain, newport, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Batesville Catchment Area |
| Mental Health HPSA ID: | 7059990505 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 14 |
| Mental Health HPSA Designation Date: | 1979/09/17 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/20 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Jackson County |
| Dental Health HPSA ID: | 605999050C |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 10 |
| Dental Health HPSA Designation Date: | 2013/10/29 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Jackson County |
| MUA/P ID: | 00169 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Jackson |
| County Subdivision Name: | Union |
| Census Tract Number: | 480300 |
| ZIP Code: | 72112 |
| Post Office Name: | Newport |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



Powered by the HRSA Data Warehouse

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 632 W Broadway Ave, North Little Rock, AR, 72114
(---- Input location: 632 w broadway, north little rock, Arkansas)

| | |
|---|---|
| In a Primary Care Health Professional Shortage Area: No | |
| In a Mental Health Professional Shortage Area: No | |
| In a Dental Care Health Professional Shortage Area: No | |
| In a Medically Underserved Area/Population: Yes | |
| MUA/P Service Area Name: | Pulaski Service Area |
| MUA/P ID: | 00213 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Pulaski |
| County Subdivision Name: | Hill |
| Census Tract Number: | 002500 |
| ZIP Code: | 72114 |
| Post Office Name: | North Little Rock |
| Congressional District Name: | Arkansas District 02 |
| Congressional District Representative Name: | Tim Griffin |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U.S. Department of Health and Human Services
**Health Resources and Services Administration**

*Powered by the HRSA Data Warehouse*

Print   Close

# Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 100 N Rockingchair Rd, Paragould, AR, 72450
(---- Input location: 100 rockingchair rd, paragould, Arkansas 72540)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Jonesboro Catchment Area |
| Mental Health HPSA ID: | 7059990507 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1981/07/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/23 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Greene County |
| Dental Health HPSA ID: | 605999050P |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 9 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Greene County |
| MUA/P ID: | 00163 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Greene |
| County Subdivision Name: | Spring Grove |
| Census Tract Number: | 480400   [Additional result analysis] |
| ZIP Code: | 72450 |
| Post Office Name: | Paragould |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

HRSA - Find Shortage Areas: HPSA & MUA/P by Address - Version 2.0                    Page 2 of 2

**Date of query: 10/28/2014**



U. S. Department of Health and Human Services
Health Resources and Services Administration

Powered by the HRSA Data Warehouse

Print    Close

# Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 1878 Highway 62 W, Pocahontas, AR, 72455
(---- Input location: 1878 hwy 62, pocahontas, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: Yes** | |
| Primary Care HPSA Name: | Low Income - Randolph County |
| Primary Care HPSA ID: | 1059990574 |
| Primary Care HPSA Status: | Designated |
| Primary Care HPSA Score: | 13 |
| Primary Care HPSA Designation Date: | 2012/12/11 |
| Primary Care HPSA Designation Last Update Date: | - - - |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Jonesboro Catchment Area |
| Mental Health HPSA ID: | 7059990507 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1981/07/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/23 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Randolph County |
| Dental Health HPSA ID: | 605999050N |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 14 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Randolph County |
| MUA/P ID: | 00192 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Randolph |
| County Subdivision Name: | Demun |
| Census Tract Number: | 960301   [Additional result analysis] |
| ZIP Code: | 72455 |
| Post Office Name: | Pocahontas |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.

**Date of query:** 10/28/2014



U. S. Department of Health & Human Services

**HRSA**
U. S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 1310 W Main St, Russellville, AR, 72801
(---- Input location: 1310 w main, russellville, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Russellville Catchment Area |
| Mental Health HPSA ID: | 7059990510 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1986/06/16 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/20 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Pope County |
| Dental Health HPSA ID: | 605999051L |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 17 |
| Dental Health HPSA Designation Date: | 2014/03/05 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: No** | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Pope |
| County Subdivision Name: | Illinois |
| Census Tract Number: | 951400   [Additional result analysis] |
| ZIP Code: | 72801 |
| Post Office Name: | Russellville |
| Congressional District Name: | Arkansas District 03 |
| Congressional District Representative Name: | Steve Womack |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014

HRSA - Find Shortage Areas: HPSA & MUA/P by Address - Version 2.0                    Page 1 of 1



U.S. Department of Health & Human Services

**HRSA**
U. S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 106 S Spring St, Searcy, AR, 72143
(---- Input location: 106 s spring, searcy, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Batesville Catchment Area |
| Mental Health HPSA ID: | 7059990505 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 14 |
| Mental Health HPSA Designation Date: | 1979/09/17 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/20 |
| **In a Dental Care Health Professional Shortage Area: No** | |
| **In a Medically Underserved Area/Population: No** | |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | White |
| County Subdivision Name: | Gray |
| Census Tract Number: | 070402 |
| ZIP Code: | 72143 |
| Post Office Name: | Searcy |
| Congressional District Name: | Arkansas District 02 |
| Congressional District Representative Name: | Tim Griffin |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Date of query: 10/28/2014



U.S. Department of Health & Human Services

**HRSA**
U.S. Department of Health and Human Services
Health Resources and Services Administration

Powered by the HRSA Data Warehouse

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 204 Frankie Ln, White Hall, AR, 71602
(---- Input location: 204 frankie, white hall, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: No** | |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Pine Bluff Catchment Area |
| Mental Health HPSA ID: | 7059990503 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 15 |
| Mental Health HPSA Designation Date: | 1978/07/19 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/20 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Jefferson County |
| Dental Health HPSA ID: | 605999051G |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 15 |
| Dental Health HPSA Designation Date: | 2013/11/20 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Jefferson Service Area |
| MUA/P ID: | 00216 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Jefferson |
| County Subdivision Name: | Washington |
| Census Tract Number: | 000302 |
| ZIP Code: | 71602 |
| Post Office Name: | White Hall |
| Congressional District Name: | Arkansas District 04 |
| Congressional District Representative Name: | Tom Cotton |

*Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.*

Case 4:14-cv-00651-KGB   Document 3   Filed 11/05/14   Page 67 of 217

**Date of query: 10/28/2014**



U.S. Department of Health & Human Services

**HRSA**   U.S. Department of Health and Human Services
Health Resources and Services Administration

*Powered by the HRSA Data Warehouse*

Print   Close

## Find Shortage Areas: HPSA & MUA/P by Address

Reported location: 1033 Old Burr Rd, Warm Springs, AR, 72478
(---- Input location: 1033 old burr, warm springs, Arkansas)

| | |
|---|---|
| **In a Primary Care Health Professional Shortage Area: Yes** | |
| Primary Care HPSA Name: | Low Income - Randolph County |
| Primary Care HPSA ID: | 1059990574 |
| Primary Care HPSA Status: | Designated |
| Primary Care HPSA Score: | 13 |
| Primary Care HPSA Designation Date: | 2012/12/11 |
| Primary Care HPSA Designation Last Update Date: | - - - |
| **In a Mental Health Professional Shortage Area: Yes** | |
| Mental Health HPSA Name: | Jonesboro Catchment Area |
| Mental Health HPSA ID: | 7059990507 |
| Mental Health HPSA Status: | Designated |
| Mental Health HPSA Score: | 16 |
| Mental Health HPSA Designation Date: | 1981/07/14 |
| Mental Health HPSA Designation Last Update Date: | 2012/08/23 |
| **In a Dental Care Health Professional Shortage Area: Yes** | |
| Dental Health HPSA Name: | Low Income - Randolph County |
| Dental Health HPSA ID: | 605999050N |
| Dental Health HPSA Status: | Designated |
| Dental Health HPSA Score: | 14 |
| Dental Health HPSA Designation Date: | 2013/11/13 |
| Dental Health HPSA Designation Last Update Date: | - - - |
| **In a Medically Underserved Area/Population: Yes** | |
| MUA/P Service Area Name: | Randolph County |
| MUA/P ID: | 00192 |

| | |
|---|---|
| State Name: | Arkansas |
| County Name: | Randolph |
| County Subdivision Name: | Warm Springs |
| Census Tract Number: | 960200 |
| ZIP Code: | 72478 |
| Post Office Name: | Warm Springs |
| Congressional District Name: | Arkansas District 01 |
| Congressional District Representative Name: | Rick Crawford |

Note: The address you entered is geocoded and then compared against the HPSA and MUA data (as of 10/25/2014) in the HRSA Data Warehouse. Due to geoprocessing limitations, the designation result provided may be inaccurate and does not constitute an official determination. If you feel the result is in error, please refer to http://answers.hrsa.gov.

**Date of query:** 10/28/2014

# EXHIBIT B

## THIRD AFFIDAVIT OF THOMAS CHRISTIAN STINNETT, M.D., P.A.

I, Thomas Christian Stinnett, M.D., being duly sworn and under oath, hereby state the following based upon personal knowledge:

1.      I am over 18 years of age and have personal knowledge of the facts set forth in this affidavit and would testify to the same if called upon to do so.

2.      I am a board-certified physician and psychiatrist licensed to practice medicine in the State of Arkansas.  (A copy of my Arkansas State Medical Board information is attached hereto at Tab 1.)

3.      I am currently a physician and psychiatrist at Maxus, Inc. ("Maxus").

4.      In my capacity as a physician at Maxus, I have personal knowledge regarding the patient populations at Maxus' 18 outpatient counseling clinics.

5.      I also have general knowledge of the Medicaid-eligible outpatient psychiatric counseling clinics that exist throughout the state of Arkansas.

6.      Maxus is based in Warm Springs, Arkansas.  It is a certified provider of mental health counseling to juvenile and adult patients within the state of Arkansas.  Maxus operates 18 outpatient counseling clinics in Arkansas and is a qualified provider of Medicaid services. Patients are treated for psychiatric diagnoses and severe emotional/behavioral problems including impulse control, abuse recovery, oppositional behavior, depression, grief, post-adoption, chemical dependency and sexual issues.

7.      The suspension levied by DHS will be the direct cause of the permanent destruction of Maxus.  Providing daily services to outpatient individuals is not a business that can be "suspended."  The patients Maxus serves must seek immediate services at another counseling clinic and will not return once they do so.

8.       Maxus has 350 employees and service providers, many of whom are highly skilled in the field of psychiatric care and include physicians, master's level therapists and registered nurses. Maxus has vested a great deal of time and cost in the education, training and certification of these employees and service providers, all of whom will seek employment elsewhere. The efforts to replicate staffing levels upon termination of the suspension would be highly cost prohibitive and is likely not even possible given the limited pool of available qualified personnel.

9.       Medicaid payments make up over 99% of Maxus' income; a suspension of those payments pending an undetermined time for investigation will leave the companies with no source of income, no patients and no employees/service providers to serve them.

10.       It is not in the best interest of the state Medicaid system to dismantle an organization employing numerous healthcare professionals and serving over 2,500 patients when it has not been shown or even alleged that there are any problems with the quality of care it provides.

11.       Sixteen of 18 Maxus outpatient counseling clinics are in HRSA-designated medically underserved areas and health provider shortage areas. These areas include all or portions of the following counties: Boone, Baxter, Chicot, Clark, Craighead, Crittenden, Desha, Greene, Jackson, Jefferson, Mississippi, Pope, Pulaski, Randolph, Sebastian, and White. (See *79 Fed Reg 36075* and incorporated list for Arkansas attached hereto at Tab 2 and found at http://hpasfind.hrsa.gov/HPSASearch.aspx.)

12.       The uprooting and disruption caused to the patients of Maxus will have a profound effect on the treatment of Maxus' patients. A large portion of outpatient psychiatric patients will be unable to find nearby substitute Medicaid counseling clinics and will be forced to either go without treatment or travel far distances for treatment if the DHS suspension is implemented and Maxus closes its doors.

13.     Psychiatric care statewide will be impacted with the closing of Maxus's 18 facilities.  Wait times at outpatient facilities across the state will dramatically increase, the already-stretched state-wide psychiatric system will be stretched farther and system-wide quality of care may be adversely impacted.

14.     The reduction in outpatient counseling clinics will negatively impact patients' ability to obtain counseling and would not be in the best interest of the Medicaid program or Medicaid recipients' best interests.

FURTHER AFFIANT SAYETH NAUGHT.

Date:   October 13, 2014

_____
Thomas Christian Stinnett, M.D.

STATE OF ARKANSAS        )
                         )
COUNTY OF Pope           )

I, Amee Standridge, a Notary Public for the above county and state, hereby certify that Thomas Christian Stinnett appeared before me on this ___ day of October, 2014, and being duly sworn to oath, and attested to the execution of this Affidavit.

AMEE STANDRIDGE
POPE COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires July 31, 2019
Commission No. 12572539

_____
Notary Public

3219039v1/08993-0015

# TAB 1



# ARKANSAS STATE MEDICAL BOARD

1401 West Capitol, Suite 340, Little Rock, Arkansas 72201 (501) 296-1802 FAX: (501) 603-3555

www.armedicalboard.org

## License Verification

Queried on: Wednesday, February 05, 2014 at: 1:13 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

Primary Specialty: Psychiatry

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2015

Basis: Exam

License Status: Active

License Category: Unlimited



# ARKANSAS STATE MEDICAL BOARD
## STATE OF ARKANSAS CENTRALIZED CREDENTIALS VERIFICATION SERVICE

1401 West Capitol, Suite 340  Little Rock, AR  72201   (501) 296-1802
www.armedicalboard.org   ccvs@armedicalboard.org

## Initial Credentialing Information

Queried By: TED SUHL / MAXUS WARM SPRINGS AR

Queried on: Wednesday, November 20, 2013 at: 4:30 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

SSN: 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

Sex: Male

DOB: 2/14/1959

UPIN: B90203

NPI: 1164568598

Medicare Provider Number: 51755

Accept Medicare Patients?: Yes

Medicaid Provider Number: 114196001

Accept Medicaid Patients?: Yes

International Graduate?: No

Country of Medical School: USA

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2014

Basis: Exam

License Status: Active

License Category: Unlimited

No Information Found for: License Board History.

870 647 2145          Trinty Behavioral                          05:39:00 p.m.   10-09-2014        8/22

## Certifications (ABMS Boards)

Specialty: Psychiatry
Certification Type: Certified
Certification Status: Active/Lifetime - MOC Not Required
Certification Board: ABMS - Amer Bd of Psychiatry & Neurology
Certificate Number:
Certification Date: 04/30/1992
Recertification Date:
Expiration Date:
Verification Date: 11/18/2013
Verification Source: Certifacts
Remarks: None

---

No Information Found for: Certifications (Non-ABMS Boards).

---

No Information Found for: Certifications (ECFMG).

---

No Information Found for: Certifications (Fifth Pathway).

---

## DEA Information (Federal)

DEA Number: BS0966981
DEA Address: #5 St. Vincent Circle Suite 302 Little Rock, AR  72205
Schedules: 2, 2N, 3, 3N, 4, 5
Issue Date:
Expiration Date: 02/28/2015
Verification Date: 11/15/2013
Verification Source: NTIS / DEA
Remarks: None

---

No Information Found for: DEA (State).

---

No Information Found for: Education (Undergraduate).

---

## Education (Medical)

Education: Medical
School/GME: University of Arkansas College of Medicine
Location: Little Rock, AR USA
Degree: M.D.
Start Date: 08/01/1981
Leave Date: 05/17/1986
Program Completed: Yes
Verification Date: 07/11/2006
Verification Source: Verbal Direct
Board Waiver: No
Transcript Verification Date:
Official Transcript?: No
Remarks: LOA - see Misc Activity entry

## Education (Internship)

Education: Internship
School/GME: University of Arkansas for Medical Sciences Program
Location: Little Rock, AR
Specialty: Transitional
Start Date: 07/01/1986
Leave Date: 06/30/1987
Program Completed: Yes
Verification Date: 01/04/2001
Verification Source: Direct
Board Waiver: No
Remarks: None

## Education (Residency)

|                              |                                                      |
|------------------------------|------------------------------------------------------|
| Education:                   | Residency                                            |
| School/GME:                  | University of Arkansas for Medical Sciences Program  |
| Location:                    | Little Rock, AR USA                                  |
| Specialty:                   | Psychiatry                                           |
| Start Date:                  | 07/01/1987                                           |
| Leave Date:                  | 06/30/1990                                           |
| Anticipated Completion Date: |                                                      |
| Program Completed:           | Yes                                                  |
| Verification Date:           | 01/04/2001                                           |
| Verification Source:         | Direct                                               |
| Board Waiver:                | No                                                   |
| Remarks:                     | None                                                 |

---

No Information Found for: Education (Fellowship).

---

No Information Found for: Education (Assistantship).

---

No Information Found for: Education (Clerkship).

---

No Information Found for: Education (Externship).

---

No Information Found for: Education (Observership).

---

No Information Found for: Education (Other Graduate).

---

No Information Found for: Education (Postgraduate).

---

## Insurance Information

Type: Current
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2004
Expiration Date: 05/01/2014
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/13/2013
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $3,000,000-$5,000,000
Retroactive Date: 07/01/1990
Issue Date: 07/01/1995
Expiration Date: 07/01/1996
Denied/Dropped:
Documentation Received: Yes
Verification Date: 05/27/1995
Verification Source: Certificate Copy

Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 90-I151

Coverage Amount: $1,000,000-$3,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/2003

Expiration Date: 05/01/2004

Denied/Dropped:

Documentation Received: Yes

Verification Date: 03/27/2003

Verification Source: Certificate Copy


Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 89-I151

Coverage Amount: $1,000,000-$3,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/2002

Expiration Date: 05/01/2003

Denied/Dropped:

Documentation Received: Yes

Verification Date: 04/04/2002

Verification Source: Certificate Copy

Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $3,000,000-$5,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2001
Expiration Date: 05/01/2002
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/23/2001
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/1999
Expiration Date: 05/01/2002
Denied/Dropped:
Documentation Received: Yes
Verification Date: 06/20/2001
Verification Source: Certificate Copy

---

No Information Found for: License (Out-of-State)

---

No Information Found for: Misc (AMA/AOA).

---

No Information Found for: Misc (Criminal Conviction).

---

No Information Found for: Misc (Rehab/Health).

---

No Information Found for: Misc (Exemptions).

---

## Misc (Federation Verifications)

Verification Date: 11/15/2013

Verification Source: FSMB

Remarks: None

---

No Information Found for: Misc (Military).

## Misc (Misc Activities)

Activity Type: Time Gap

Dates: From  Thru

Letter of Explanation? : No

Remarks: No time gaps


Activity Type: Miscellaneous Activity

Dates: From 08/01/1984 Thru 07/21/1985

Letter of Explanation? : Yes

Remarks: LOA


Activity Type: Time Gap

Dates: From 05/18/1986 Thru 06/30/1986

Letter of Explanation? : Yes

Remarks: Vacation

---

No Information Found for: Misc (Physician's Health Committee).

---

No Information Found for: Practice (Partner in Practice).

## Practice (Previous Practice)

Name: Arkansas Psychiatric Clinic, P.A.

Location: Little Rock ARUSA

Position: Partner

Status: Inactive

Date From: 11/01/1992

Date Thru: 12/31/2000

Restriction: Psychiatry

Category: Unknown

In Good Standing?: Yes

Verification Method: Phone

Verification Source: Verbal Direct

Verification Date: 02/22/2005

Board Waiver?: No

Remarks: None


Name: Little Rock Psychiatric Clinic, PA

Location: Little Rock ARUSA

Position: Owner/Medical Director

Status: Inactive

Date From: 02/01/1996

Date Thru: 01/31/2001

Restriction: Psychiatry

Category: Unknown

In Good Standing?: Yes

Verification Method: Phone

Verification Source: Verbal Direct

Verification Date: 02/28/2011

Board Waiver?: No

Remarks: None

## Practice (Primary Practice)

Name: Thomas C. Stinnett, M.D., PA
Location: Little Rock ARUSA
Position: Private Practice
Status: Current
Date From: 01/02/2001
Date Thru:
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 11/18/2013
Board Waiver?: No
Remarks: None

No Information Found for: Practice (Secondary Practice).

No Information Found for: Specialty (Practice).

## Specialty (Primary)

Specialty: Psychiatry
Remarks: None

No Information Found for: Specialty (Secondary).

No Information Found for: Specialty (Self-Designated).

No Information Found for: Work History (Clinic).

## Work History (Employment)

Institution Name: George W. Jackson Mental Health Center
Location: Jonesboro, AR
Instituiton Dates: 01/01/1988 Thru 12/31/1989
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, no contact info; physician info only

Institution Name: Community Counseling Services, Inc.

Location: Hot Springs, AR

Instituiton Dates: 01/01/1989 Thru 12/31/1990

Verification Date: 07/11/2006

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Cannot verify, files archived, physician information only


Institution Name: Counseling Associates, Inc.

Location: Conway, AR

Instituiton Dates: 07/01/1990 Thru 11/30/1992

Verification Date: 07/11/2006

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Cannot verify, files archived, physician information only


Institution Name: Birch Tree Communities, Inc.

Location: Benton, AR

Instituiton Dates: 07/01/1999 Thru 12/31/1999

Verification Date: 04/08/2003

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Contracted Psychiatrist


Institution Name: Outlook Geriatric Partial Hospitalization (Facility Closed)

Location: Russellville, AR

Instituiton Dates: 12/01/1999 Thru 07/01/2001

Verification Date: 04/16/2004

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Medical Director

Institution Name: Arkansas Counseling Associates/MAXUS
Location: Warm Springs, AR
Instituiton Dates: 01/25/2005
Verification Date: 11/18/2013
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Staff Psychiatrist/Medical Director


Institution Name: Boone Park And Lynch Drive Elementaries
Location: North Little Rock, AR
Instituiton Dates: 02/01/2005 Thru 12/31/2006
Verification Date: 06/17/2010
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Contract physician


Institution Name: Rivendell Behavioral Health Services
Location: Benton, AR
Instituiton Dates: 07/01/2005 Thru 03/31/2006
Verification Date: 01/31/2007
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Medical Director

---

## Work History (Staff Appointments)

Institution Name: The Bridgeway
Location: North Little Rock, AR
Institution Dates: 08/19/1987 Thru 05/24/2007
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 05/08/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

870 647 2145        Trinty Behavioral                                    05:41:57 p.m.    10-09-2014        19/22_____

Institution Name: Saint Mary's Regional Medical Center
Location: Russellville, AR
Institution Dates: 10/29/1991 Thru 02/23/2008
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 06/10/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

Institution Name: St, Vincent Infirmary Medical Center (St. Vincent Health System)
Location: Little Rock, ARUSA
Institution Dates: 09/04/1996 Thru 03/17/2000
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 04/08/2003
Verification Source: Direct
Board Waiver?: No
Remarks: None

Institution Name: Baptist Health Medical Center - Little Rock
Location: Little Rock, AR
Institution Dates: 11/21/1996 Thru 02/01/2011
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 07/26/2011
Verification Source: Direct
Board Waiver?: No
Remarks: None

Institution Name: Charter Behavioral Health System of Little Rock
Location: Maumelle, ARUSA
Institution Dates: 02/01/1999 Thru 10/31/1999
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, facility closed; physician info only


Institution Name: Pinnacle Pointe Hospital
Location: Little Rock, AR
Institution Dates: 12/09/1999 Thru 01/13/2012
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 10/19/2012
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: Arkansas Heart Hospital
Location: Little Rock, AR
Institution Dates: 03/17/2005 Thru 07/01/2013
Status: Inactive
Staff Privilege: Associate
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 08/23/2013
Verification Source: Roster Direct
Board Waiver?: No
Remarks: None

Institution Name: Rivendell Behavioral Health Services
Location: Benton, AR
Institution Dates: 07/01/2005 Thru 03/31/2006
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 01/31/2007
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: River Valley Medical Center (formerly Dardanelle
Hospital)
Location: Dardanelle, ARUSA
Institution Dates: 08/20/2007 Thru 10/01/2008
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 12/03/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: The Bridgeway
Location: North Little Rock, AR
Institution Dates: 07/21/2008 Thru 07/21/2011
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 01/30/2012
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

Institution Name: Saint Mary's Regional Medical Center

Location: Russellville, AR

Institution Dates: 10/21/2011

Status: Current

Staff Privilege: Active Staff

Clinical Scope: Psychiatry

In Good Standing?: Yes

Verification Date: 11/15/2013

Verification Source: Roster Direct

Board Waiver?: No

Remarks: None

---

No Information Found for: Work History (Teaching).

---

Report Version: 1.0.1 Rev. 03/11

PHIDNO: ASMB5258

Serial Number: 381643

Snapshot Version: 1.0.0.10588

Report ID: e2af3c77-2cb1-43ac-81f4-94d451c8e18b

# TAB 2



U. S. Department of Health & Human Services

**HRSA**
U. S. Department of Health and Human Services
Health Resources and Services Administration

HRSA Data Warehouse | HRSA.gov

Enter Keywords
◉ HRSA Data Warehouse  ○ HRSA.gov

*Powered by the HRSA Data Warehouse*

## Find Shortage Areas: HPSA by State & County

| Shortage Designation Home |
| Find Shortage Areas |
| HPSA & MUA/P by Address |
| HPSA Eligible for the Medicare Physician Bonus Payment |
| MUA/P by State & County |

**Criteria:**

State: Arkansas
County: All Counties
ID: All
Date of Last Update: All Dates
HPSA Score (lower limit): 0
Results: 165 records found.

Discipline: Mental Health
Metro: All
Status: Designated
Type: All

(Satellite sites of Comprehensive Health Centers automatically assume the HPSA score of the affiliated grantee. They are not listed separately.)

| HPSA Name | ID | Type | FTE | # Short | Score |
|---|---|---|---|---|---|
| **001 - Arkansas County** | | | | | |
| Pine Bluff Catchment Area | 7059990503 | Geographical Area | 8 | 2 | 15 |
|   Arkansas | | Single County | | | |
| **003 - Ashley County** | | | | | |
| Monticello Catchment Area | 7059990504 | Geographical Area | 2 | 1 | 18 |
|   Ashley | | Single County | | | |
| Mainline Health Systems | 7059990517 | Comprehensive Health Center | | | 21 |
| **005 - Baxter County** | | | | | |
| Mountain Home Catchment Area | 7059990509 | Geographical Area | 3 | 1 | 18 |
|   Baxter | | Single County | | | |
| **007 - Benton County** | | | | | |
| Uama/Ash Center for Children | 7059990506 | Other Facility | 3 | 0 | 16 |
| Decatur Medi Clinic | 7059990545 | Rural Health Clinic | 0 | | 0 |
| **009 - Boone County** | | | | | |
| Mountain Home Catchment Area | 7059990509 | Geographical Area | 3 | 1 | 18 |
|   Boone | | Single County | | | |
| **011 - Bradley County** | | | | | |
| Monticello Catchment Area | 7059990504 | Geographical Area | 2 | 1 | 18 |
|   Bradley | | Single County | | | |
| **013 - Calhoun County** | | | | | |
| El Dorado Catchment Area | 7059990502 | Geographical Area | 2 | 4 | 18 |
|   Calhoun | | Single County | | | |
| Calhoun Rural Health Services | 7059990516 | Comprehensive Health Center | | | 14 |
| **015 - Carroll County** | | | | | |
| Carroll/Madison Catchment Area | 7059990515 | Geographical Area | 1 | 1 | 16 |
|   Carroll | | Single County | | | |
| **017 - Chicot County** | | | | | |
| Monticello Catchment Area | 7059990504 | Geographical Area | 2 | 1 | 18 |
|   Chicot | | Single County | | | |
| Lake Village Clinic, P.A. | 7059990542 | Rural Health Clinic | | | 12 |
| **019 - Clark County** | | | | | |
| Hot Springs Catchment Area | 7059990513 | Geographical Area | 6 | 3 | 14 |
|   Clark | | Single County | | | |
| **021 - Clay County** | | | | | |
| Jonesboro Catchment Area | 7059990507 | Geographical Area | 9 | 4 | 16 |
|   Clay | | Single County | | | |
| Corning Area Health Care | 7059990518 | Comprehensive Health Center | | | 16 |
| **023 - Cleburne County** | | | | | |
| Batesville Catchment Area | 7059990505 | Geographical Area | 7 | 4 | 14 |
|   Cleburne | | Single County | | | |
| **025 - Cleveland County** | | | | | |
| Pine Bluff Catchment Area | 7059990503 | Geographical Area | 3 | 2 | 15 |
|   Cleveland | | Single County | | | |
| **027 - Columbia County** | | | | | |
| El Dorado Catchment Area | 7059990502 | Geographical Area | 2 | 4 | 18 |
|   Columbia | | Single County | | | |
| **029 - Conway County** | | | | | |
| Russellville Catchment Area | 7059990510 | Geographical Area | 3 | 2 | 18 |
|   Conway | | Single County | | | |
| **031 - Craighead County** | | | | | |
| Jonesboro Catchment Area | 7059990507 | Geographical Area | 9 | 4 | 16 |
|   Craighead | | Single County | | | |
| **033 - Crawford County** | | | | | |
| Fort Smith Catchment Area | 7059990514 | Geographical Area | 9 | 3 | 17 |
|   Crawford | | Single County | | | |
| **035 - Crittenden County** | | | | | |
| East Arkansas Family Health | 7059990519 | Comprehensive Health Center | | | 18 |
| **037 - Cross County** | | | | | |
| Helena Catchment Area | 7059990508 | Geographical Area | 1 | 1 | 18 |
|   Cross | | Single County | | | |
| **039 - Dallas County** | | | | | |
| El Dorado Catchment Area | 7059990502 | Geographical Area | 2 | 4 | 18 |
|   Dallas | | Single County | | | |
| **041 - Desha County** | | | | | |
| Monticello Catchment Area | 7059990504 | Geographical Area | 2 | 1 | 18 |
|   Desha | | Single County | | | |
| **043 - Drew County** | | | | | |
| Monticello Catchment Area | 7059990504 | Geographical Area | 2 | 1 | 18 |
|   Drew | | Single County | | | |
| **045 - Faulkner County** | | | | | |

Find Shortage Areas: HPSA by State & County                    Page 2 of 4

No HPSAs in this county.

| 047 - Franklin County | | | | | |
|---|---|---|---|---|---|
| Fort Smith Catchment Area | 7059990614 | Geographical Area | 8 | 3 | 17 |
| Franklin | | Single County | | | |
| 049 - Fulton County | | | | | |
| Batesville Catchment Area | 7059990505 | Geographical Area | 7 | 4 | 14 |
| Fulton | | Single County | | | |
| 051 - Garland County | | | | | |
| Hot Springs Catchment Area | 7059990513 | Geographical Area | 6 | 3 | 14 |
| Garland | | Single County | | | |
| 053 - Grant County | | | | | |
| Pine Bluff Catchment Area | 7059990503 | Geographical Area | 5 | 2 | 16 |
| Grant | | Single County | | | |
| 055 - Greene County | | | | | |
| Jonesboro Catchment Area | 7059990507 | Geographical Area | 9 | 4 | 16 |
| Greene | | Single County | | | |
| 057 - Hempstead County | | | | | |
| Texarkana Catchment Area | 7059990601 | Geographical Area | 3 | 1 | 19 |
| Hempstead | | Single County | | | |
| 059 - Hot Spring County | | | | | |
| Hot Springs Catchment Area | 7059990513 | Geographical Area | 6 | 3 | 14 |
| Hot Spring | | Single County | | | |
| Ouachita River Correctional Unit | 7059990537 | Correctional Facility | 0 | 0 | 12 |
| 061 - Howard County | | | | | |
| Texarkana Catchment Area | 7059990601 | Geographical Area | 3 | 1 | 19 |
| Howard | | Single County | | | |
| 063 - Independence County | | | | | |
| Batesville Catchment Area | 7059990505 | Geographical Area | 7 | 4 | 14 |
| Independence | | Single County | | | |
| 065 - Izard County | | | | | |
| Batesville Catchment Area | 7059990505 | Geographical Area | 7 | 4 | 14 |
| Izard | | Single County | | | |
| North Central Correctional Unit | 7059990528 | Correctional Facility | 0 | 0 | 21 |
| 067 - Jackson County | | | | | |
| Batesville Catchment Area | 7059990505 | Geographical Area | 7 | 4 | 14 |
| Jackson | | Single County | | | |
| McPherson Correctional Unit | 7059990530 | Correctional Facility | 0 | 0 | 15 |
| Grimes Correctional Unit | 7059990531 | Correctional Facility | 0 | 0 | 12 |
| 069 - Jefferson County | | | | | |
| Pine Bluff Catchment Area | 7059990503 | Geographical Area | 5 | 2 | 16 |
| Jefferson | | Single County | | | |
| Jefferson Comprehensive | 7059990524 | Comprehensive Health Center | | | 14 |
| Tucker Prison Unit | 7059990533 | Correctional Facility | 0 | 0 | 15 |
| Pine Bluff Correctional Unit | 7059990534 | Correctional Facility | 0 | 0 | 15 |
| Tucker Maximum Security Unit | 7059990538 | Correctional Facility | 0 | 0 | 12 |
| Randall Williams Unit | 7059990543 | Correctional Facility | 0 | 0 | 12 |
| 071 - Johnson County | | | | | |
| Russellville Catchment Area | 7059990510 | Geographical Area | 3 | 2 | 16 |
| Johnson | | Single County | | | |
| 073 - Lafayette County | | | | | |
| Texarkana Catchment Area | 7059990601 | Geographical Area | 3 | 1 | 19 |
| Lafayette | | Single County | | | |
| 075 - Lawrence County | | | | | |
| Jonesboro Catchment Area | 7059990507 | Geographical Area | 9 | 4 | 16 |
| Lawrence | | Single County | | | |
| 077 - Lee County | | | | | |
| Helena Catchment Area | 7059990508 | Geographical Area | 1 | 2 | 16 |
| Lee | | Single County | | | |
| Lee County Cooperative | 7059990523 | Comprehensive Health Center | | | 16 |
| East Arkansas Regional Unit at Brickeys | 7059990535 | Correctional Facility | 0 | 0 | 15 |
| 079 - Lincoln County | | | | | |
| Pine Bluff Catchment Area | 7059990503 | Geographical Area | 5 | 2 | 16 |
| Lincoln | | Single County | | | |
| Varner Supermax Unit | 7059990529 | Correctional Facility | 0 | 0 | 16 |
| Cummins Unit | 7059990539 | Correctional Facility | 0 | 0 | 15 |
| 081 - Little River County | | | | | |
| Texarkana Catchment Area | 7059990601 | Geographical Area | 3 | 1 | 19 |
| Little River | | Single County | | | |
| 083 - Logan County | | | | | |
| Fort Smith Catchment Area | 7059990614 | Geographical Area | 8 | 3 | 17 |
| Logan | | Single County | | | |
| River Valley Primary Care Services | 7059990525 | Comprehensive Health Center | | | 22 |
| Booneville Community and Family Medical Clinic | 7059990541 | Rural Health Clinic | | | 22 |
| 085 - Lonoke County | | | | | |
| No HPSAs in this county. | | | | | |
| 087 - Madison County | | | | | |
| Carroll/Madison Catchment Area | 7059990515 | Geographical Area | 1 | 1 | 18 |
| Madison | | Single County | | | |
| 089 - Marion County | | | | | |
| Mountain Home Catchment Area | 7059990509 | Geographical Area | 3 | 1 | 18 |
| Marion | | Single County | | | |
| 091 - Miller County | | | | | |
| Texarkana Catchment Area | 7059990601 | Geographical Area | 3 | 1 | 19 |
| Miller | | Single County | | | |
| 093 - Mississippi County | | | | | |
| Jonesboro Catchment Area | 7059990507 | Geographical Area | 9 | 4 | 16 |
| Mississippi | | Single County | | | |
| 095 - Monroe County | | | | | |
| Helena Catchment Area | 7059990508 | Geographical Area | 1 | 2 | 16 |
| Monroe | | Single County | | | |
| Mid-Delta Health Systems, Inc. | 7059990522 | Comprehensive Health Center | | | 15 |
| 097 - Montgomery County | | | | | |
| Hot Springs Catchment Area | 7059990513 | Geographical Area | 6 | 3 | 14 |
| Montgomery | | Single County | | | |
| 099 - Nevada County | | | | | |

Find Shortage Areas: HPSA by State & County

| Area | Code | Type | | | |
|---|---|---|---|---|---|
| El Dorado Catchment Area | 7058990502 | Geographical Area | 2 | 4 | 18 |
| Nevada | | Single County | | | |
| **101 - Newton County** | | | | | |
| Mountain Home Catchment Area | 7058990509 | Geographical Area | 3 | 1 | 18 |
| Newton | | Single County | | | |
| **103 - Ouachita County** | | | | | |
| El Dorado Catchment Area | 7058990502 | Geographical Area | 2 | 4 | 18 |
| Ouachita | | Single County | | | |
| **105 - Perry County** | | | | | |
| Russellville Catchment Area | 7058990510 | Geographical Area | 3 | 2 | 16 |
| Perry | | Single County | | | |
| **107 - Phillips County** | | | | | |
| Helena Catchment Area | 7058990508 | Geographical Area | 1 | 2 | 19 |
| Phillips | | Single County | | | |
| **109 - Pike County** | | | | | |
| Hot Springs Catchment Area | 7058990513 | Geographical Area | 5 | 5 | 14 |
| Pike | | Single County | | | |
| **111 - Poinsett County** | | | | | |
| Jonesboro Catchment Area | 7058990507 | Geographical Area | 9 | 4 | 18 |
| Poinsett | | Single County | | | |
| **113 - Polk County** | | | | | |
| Fort Smith Catchment Area | 7058990514 | Geographical Area | 6 | 3 | 17 |
| Polk | | Single County | | | |
| Healthy Connections | 7058990521 | Comprehensive Health Center | | | 22 |
| **115 - Pope County** | | | | | |
| Russellville Catchment Area | 7058990510 | Geographical Area | 3 | 2 | 16 |
| Pope | | Single County | | | |
| **117 - Prairie County** | | | | | |
| Prairie County | D05117 | Single County | 0 | 0 | 12 |
| **119 - Pulaski County** | | | | | |
| Wrightsville Unit | 7058990532 | Correctional Facility | 0 | 0 | 3 |
| **121 - Randolph County** | | | | | |
| Jonesboro Catchment Area | 7058990507 | Geographical Area | 9 | 4 | 18 |
| Randolph | | Single County | | | |
| **125 - Saline County** | | | | | |
| No HPSA in this county. | | | | | |
| **127 - Scott County** | | | | | |
| Fort Smith Catchment Area | 7058990514 | Geographical Area | 6 | 3 | 17 |
| Scott | | Single County | | | |
| **129 - Searcy County** | | | | | |
| Mountain Home Catchment Area | 7058990509 | Geographical Area | 3 | 1 | 18 |
| Searcy | | Single County | | | |
| Boston Mountain Rural | 7058990525 | Comprehensive Health Center | | | 20 |
| Marshall Family Prestice Clinic | 7058990544 | Rural Health Clinic | 0 | | 19 |
| **131 - Sebastian County** | | | | | |
| Fort Smith Catchment Area | 7058990514 | Geographical Area | 6 | 3 | 17 |
| Sebastian | | Single County | | | |
| **133 - Sevier County** | | | | | |
| Texarkana Catchment Area | 7058990501 | Geographical Area | 3 | 1 | 19 |
| Sevier | | Single County | | | |
| **135 - Sharp County** | | | | | |
| Batesville Catchment Area | 7058990505 | Geographical Area | 7 | 4 | 14 |
| Sharp | | Single County | | | |
| **123 - St. Francis County** | | | | | |
| Helena Catchment Area | 7058990508 | Geographical Area | 1 | 2 | 19 |
| St. Francis | | Single County | | | |
| Federal Correctional Complex - Forrest City | 7058990540 | Correctional Facility | 0 | 5 | 21 |
| **137 - Stone County** | | | | | |
| Batesville Catchment Area | 7058990505 | Geographical Area | 7 | 4 | 14 |
| Stone | | Single County | | | |
| **139 - Union County** | | | | | |
| El Dorado Catchment Area | 7058990502 | Geographical Area | 2 | 4 | 18 |
| Union | | Single County | | | |
| **141 - Van Buren County** | | | | | |
| Batesville Catchment Area | 7058990505 | Geographical Area | 7 | 4 | 14 |
| Van Buren | | Single County | | | |
| **143 - Washington County** | | | | | |
| St. Francis House NWA, Inc. | 7058990527 | Comprehensive Health Center | | | 19 |
| **145 - White County** | | | | | |
| Batesville Catchment Area | 7058990505 | Geographical Area | 7 | 4 | 14 |
| White | | Single County | | | |
| **147 - Woodruff County** | | | | | |
| Batesville Catchment Area | 7058990505 | Geographical Area | 7 | 4 | 14 |
| Woodruff | | Single County | | | |
| Alcare | 7058990520 | Comprehensive Health Center | | | 18 |
| **149 - Yell County** | | | | | |
| Russellville Catchment Area | 7058990510 | Geographical Area | 3 | 2 | 16 |
| Yell | | Single County | | | |
| Data as of: 8/29/2014 | | | | | |

[ NEW SEARCH ]    [ MODIFY SEARCH CRITERIA ]

**June 25, 2014 Federal Register Notice**

NOTE: Today a list of designated HPSAs is being posted below to reflect the publication of the Federal Register notice on June 25, 2014. This Federal Register notice reflects the status of HPSAs as of May 23, 2014. The main impact of this Federal Register publication will be to officially withdraw those HPSAs that have been in "proposed for withdrawal" status since the last Federal Register notice was published on June 27, 2013. HPSAs that have been placed in "proposed for withdrawal" status since May 23, 2014 will remain in that status until the publication of the next Federal Register notice. If there are any questions about the status of a particular HPSA or area, we recommend that you contact the state primary care office in your state; a listing can be obtained at http://bhpr.hrsa.gov/shortage/hpsas/primarycareoffices.html.

- County and County Equivalent Listing – Primary Care      (approx. 359 KB)
- County and County Equivalent Listing – Dental Care       (approx. 267 KB)
- County and County Equivalent Listing – Mental Care       (approx. 355 KB)

## Online Processing of Shortage Designation Applications Suspended

Online processing of shortage designation applications has been suspended and will resume in December 2014. Please direct any questions to your State Primary Care Office and/or the appropriate Shortage Designation Officer.

Ask Questions | Viewers & Players | Privacy Policy | Disclaimers | Accessibility | Freedom of Information Act | USA.gov | WhiteHouse.gov | Recovery.gov |

## TOTAL ESTIMATED ANNUALIZED BURDEN—HOURS

| Form name | Number of respondents | Number of responses per respondent | Total responses | Average burden per response (in hours) | Total burden hours |
|---|---|---|---|---|---|
| Rural Health Information Technology (HIT) Workforce Program Performance Measures .......................................... | 15 | 1 | 15 | 3.6 | 54 |
| Total ................................................................... | 15 | 1 | 15 | 3.6 | 54 |

Dated: June 19, 2014.
Jackie Painter,
*Acting Director, Division of Policy and Information Coordination.*
[FR Doc. 2014–14804 Filed 6–24–14; 8:45 am]
BILLING CODE 4165–15–P

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Health Resources and Services Administration

### Lists of Designated Primary Medical Care, Mental Health, and Dental Health Professional Shortage Areas

**AGENCY:** Health Resources and Services Administration, HHS.

**ACTION:** Notice.

**SUMMARY:** This notice advises the public of the published lists of all geographic areas, population groups, and facilities designated as primary medical care, mental health, and dental health professional shortage areas (HPSAs) as of May 23, 2014, available on the Health Resources and Services Administration (HRSA) Web site at *http://www.hrsa.gov/shortage/.*

HPSAs are designated or withdrawn by the Secretary of Health and Human Services (HHS) under the authority of section 332 of the Public Health Service (PHS) Act and 42 CFR part 5.

**SUPPLEMENTARY INFORMATION:**

*Background:* Section 332 of the PHS Act, 42 U.S.C. 254e, provides that the Secretary of HHS shall designate HPSAs based on criteria established by regulation. HPSAs are defined in section 332 to include (1) urban and rural geographic areas with shortages of health professionals, (2) population groups with such shortages, and (3) facilities with such shortages. Section 332 further requires that the Secretary annually publish a list of the designated geographic areas, population groups, and facilities. The lists of HPSAs are to be reviewed at least annually and revised as necessary. HRSA's Bureau of Health Workforce (BHW) has the responsibility for designating and updating HPSAs.

Public or private nonprofit entities are eligible to apply for assignment of National Health Service Corps (NHSC) personnel to provide primary care, mental, or dental health services in or to these HPSAs. NHSC health professionals with a service obligation may enter into service agreements to serve only in federally designated HPSAs. Entities with clinical training sites located in HPSAs are eligible to receive priority for certain residency training program grants administered by the BHW. Many other federal programs also utilize HPSA designations. For example, under authorities administered by the Centers for Medicare and Medicaid Services, certain qualified providers in geographic area HPSAs are eligible for increased levels of Medicare reimbursement.

*Development of the Designation and Withdrawal Lists:* Criteria for designating HPSAs were published as final regulations (42 CFR part 5) in 1980. Criteria then were defined for each of seven health professional types (primary medical care, dental, psychiatric, vision care, podiatric, pharmacy, and veterinary care). The criteria for correctional facility HPSAs were revised and published on March 2, 1989 (54 FR 8735). The criteria for psychiatric HPSAs were expanded to mental health HPSAs on January 22, 1992 (57 FR 2473). Currently funded PHS Act programs use only the primary medical care, mental health, or dental HPSA designations.

Individual requests for designation or withdrawal of a particular geographic area, population group, or a facility as a HPSA are received and reviewed continuously by BHW. The majority of the requests come from the Primary Care Offices (PCO) in the State Health Departments, who have access to the on-line application and review system. Requests that come from other sources are referred to the PCOs for their review and concurrence. In addition, interested parties, including the Governor, the State Primary Care Association, and state professional associations are

notified of each request submitted for their comments and recommendations.

Annually, lists of designated HPSAs are made available to all PCOs, state medical and dental societies, and others, with a request to review and update the data on which the designations are based. Emphasis is placed on updating those designations that are more than 3-years old or where significant changes relevant to the designation criteria have occurred.

Recommendations for possible additions, continuations, revisions, or withdrawals from a HPSA list are reviewed by BHW, and the review findings are provided by letter to the agency or individual requesting action or providing data, with copies to other interested organizations and individuals. These letters constitute the official notice of designation as a HPSA, rejection of recommendations for HPSA designation, revision of a HPSA designation, and/or advance notice of pending withdrawals from the HPSA list. Designations (or revisions of designations) are effective as of the date on the notification letter from BHW. Proposed withdrawals become effective only after interested parties in the area affected have been afforded the opportunity to submit additional information to BHW in support of its continued or revised designation. If no new data are submitted, or if BHW review confirms the proposed withdrawal, the withdrawal becomes effective upon publication of the lists of designated HPSAs in the Federal Register. In addition, lists of HPSAs are updated daily on the HRSA Web site, *http://www.hrsa.gov/shortage/*, so that interested parties can access the most accurate and timely information.

*Publication and Format of Lists:* Due to the large volume of designations, a printed version of the list is no longer distributed. This notice serves to inform the public of the availability of the complete listings of designated HPSAs on the HRSA Web site. The three lists (primary medical care, mental health, and dental) of designated HPSAs are available at a link on the HRSA Web site at *http://www.hrsa.gov/shortage/*, and

include a snapshot of all geographic areas, population groups, and facilities that were designated HPSAs as of May 23, 2014. This notice incorporates the most recent annual reviews of designated HPSAs and supersedes the HPSA lists published in the Federal Register on June 27, 2013 (77 FR 38638). The lists also include automatic facility HPSAs, designated as a result of the Health Care Safety Net Amendments of 2002 (Pub. L. 107–251), not subject to update requirements. Each list of designated HPSAs (primary medical care, mental health, and dental) is arranged by state. Within each state, the list is presented by county. If only a portion (or portions) of a county is (are) designated, or if the county is part of a larger designated service area, or if a population group residing in the county or a facility located in the county has been designated, the name of the service area, population group, or facility involved is listed under the county name. Counties that have a whole county geographic HPSA are indicated by the "Entire county HPSA" notation following the county name. Further details on the snapshot of HPSAs listed can be found on the HRSA Web site: *http://www.hrsa.gov/shortage/*.

In addition to the specific listings included in this notice, all Indian Tribes that meet the definition of such Tribes in the Indian Health Care Improvement Act of 1976, 25 U.S.C. 1603(d), are automatically designated as population groups with primary medical care and dental health professional shortages. The Health Care Safety Net Amendments of 2002 also made the following entities eligible for automatic facility HPSA designations: all federally qualified health centers (FQHCs) and rural health clinics that offer services regardless of ability to pay. These entities include: FQHCs funded under section 330 of the PHS Act, FQHC Look-Alikes, and Tribal and urban Indian clinics operating under the Indian Self-Determination and Education Act of 1975 (25 U.S.C. 450) or the Indian

Health Care Improvement Act. Many, but not all, of these entities are included on this listing. Exclusion from this list does not exclude them from HPSA designation; any facilities eligible for automatic designation will be included in the database as they are identified.

*Future Updates of Lists of Designated HPSAs:* The lists of HPSAs on the HRSA Web site below consist of all those that were designated as of May 23, 2014. It should be noted that HPSAs are currently updated on an ongoing basis based on the identification of new areas, population groups, facilities, and sites that meet the eligibility criteria or that no longer meet the eligibility criteria and/or are being replaced by another type of designation. As such, additional HPSAs may have been designated by letter since that date. The appropriate agencies and individuals have been or will be notified of these actions by letter. These newly designated HPSAs will be included in the next publication of the HPSA list and are currently included in the daily updates posted on the HRSA Web site at *http://www.hrsa.gov/shortage/find.html*.

Any designated HPSA listed on the HRSA Web site below is subject to withdrawal from designation if new information received and confirmed by HRSA indicates that the relevant data for the area involved have significantly changed since its designation. The effective date of such a withdrawal will be the next publication of a notice regarding this list in the Federal Register. All requests for new designations, updates, or withdrawals should be based on the relevant criteria in regulations published at 42 CFR part 5.

*Electronic Access Address:* The complete list of HPSAs designated as of May 23, 2014, are available on the HRSA Web site at *http://www.hrsa.gov/shortage/*. Frequently updated information on HPSAs is also available at *http://datawarehouse.hrsa.gov*.

FOR FURTHER INFORMATION CONTACT: Requests for further information on the

HPSA designations listed on the HRSA Web site below and requests for additional designations, withdrawals, or reapplication for designation should be submitted to Melissa Ryan, Operations Director, Division of Policy and Shortage Designation, Bureau of Health Workforce, Health Resources and Services Administration, Room 9A–55, Parklawn Building, 5600 Fishers Lane, Rockville, Maryland 20857, (301) 594–0816, *http://www.hrsa.gov/shortage/*.

Dated: June 18, 2014.
Mary K. Wakefield,
*Administrator.*
[FR Doc. 2014–14806 Filed 6–24–14; 8:45 am]
BILLING CODE 4165–15–P

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Health Resources and Services Administration**

**Health Careers Opportunity Program**

AGENCY: Health Resources and Services Administration (HRSA), HHS.

ACTION: Notice of class deviation from competition requirements for the Health Careers Opportunity Program (HCOP).

SUMMARY: The Health Resources and Services Administration (HRSA) will be issuing non-competitive awards for the HCOP program. Approximately $9.8 million will be made available in the form of grants to the awardees listed in the chart below for the budget period beginning September 1, 2014. We have determined the need for significant program changes prior to launching a new competition to the field. This will enable the Bureau of Health Workforce to thoughtfully redesign the current program to ensure that it meets the needs of both the government and the field, and conduct a single competition in fiscal year (FY) 2015.

SUPPLEMENTARY INFORMATION: Grantees of record and intended award amounts are:

| Grant No. | Institution name | State | Anticipated FY 2014 funding amount |
|---|---|---|---|
| D18HP23034 .................. | University of Alabama Birmingham ........................................ | AL | $624,823 |
| D18HP23007 .................. | University of Arizona ....................................................... | AZ | 739,146 |
| D18HP10623 .................. | University of California, San Diego ..................................... | CA | 742,224 |
| D18HP23026 .................. | D'Youville College .......................................................... | NY | 679,854 |
| D18HP10617 .................. | Marquette University ....................................................... | WI | 719,155 |
| D18HP05283 .................. | Meharry Medical College ................................................... | TN | 750,000 |
| D18HP23030 .................. | Michigan State University .................................................. | MI | 667,125 |
| D18HP10625 .................. | University of Michigan-Flint ............................................... | MI | 592,581 |
| D18HP10627 .................. | Mount Sinai School of Medicine .......................................... | NY | 686,377 |
| D18HP23032 .................. | University of Texas Medical Branch ...................................... | TX | 750,000 |
| D18HP23014 .................. | Research Foundation of the State University of New York ........ | NY | 712,447 |

# EXHIBIT C

## SECOND AFFIDAVIT OF THOMAS CHRISTIAN STINNETT, M.D., P. A.

I, being duly sworn and under oath, hereby state the following based upon personal knowledge:

1.    I am over 18 years of age and have personal knowledge of the facts set forth in this affidavit and would testify to the same if called upon to do so.

2.    I am a board-certified physician and psychiatrist licensed to practice medicine in the State of Arkansas.  (A copy of my Arkansas State Medical Board information is attached hereto at Tab 1.)

3.    I am currently a physician and psychiatrist at Trinity Behavioral HealthCare Systems, Inc. ("Trinity").

4.    In my capacity as a physician and psychiatrist, I have personal knowledge regarding the patient populations at Trinity's inpatient juvenile psychiatric treatment facility.

5.    I also have general knowledge of the Medicaid-eligible inpatient psychiatric facilities that exist throughout the state of Arkansas.

6.    Trinity operates a licensed inpatient facility that treats children ranging from six years of age to seventeen years of age.  Patients live on Trinity's residential campus, Northeastern Arkansas.  Therapeutic services are provided by a multi-disciplinary team, including Physicians, Master's Level Therapists, Registered Nurses and Licensed Educational Personnel.

7.    Patients' stay at Trinity range from six  to eight months.  Patients are treated for psychiatric diagnoses and severe emotional/behavioral problems including impulse control, abuse recovery, oppositional behavior, depression, grief, post-adoption, chemical dependency and sexual issues.

8.      The suspension levied by DHS will be the direct cause of the permanent destruction of Trinity. Providing 24-hour in-patient care is not a business that can be "suspended." The patients Trinity serves must seek immediate services at another facility and will not return once they do so.

9.      Trinity has 172 employees and service providers, many of whom are highly skilled in the field of psychiatric care and include physicians, master's level therapists, registered nurses and licensed educational personnel. Trinity has invested a great deal of time and cost in the education, training and certification of these employees and service providers, all of whom will seek employment elsewhere. The efforts to replicate staffing levels upon termination of the suspension would be highly cost prohibitive and is likely not even possible given the limited pool of available qualified personnel.

10.     Medicaid payments make up over 99% of Trinity's income; a suspension of those payments pending an undetermined time for investigation will leave Trinity with no source of income, no patients and no employees to serve them.

11.     Trinity has inpatient capacity of 158 which includes 92 state-approved beds for Medicaid inpatients. Nine-nine percent of the inpatients at Trinity are Medicaid recipients.

12.     The Arkansas Health Services Permit Agency ("HSPA") prepares an annual survey to determine capacity for Psychiatric Residential Treatment Facility ("PRTF") need. (See *Health Care Facilities Services Need SFY 201,* incorporated herein and attached hereto at Tab 2.)

13.   HSPA released its report for PRTF bed utilization in October of 2014. The report calculates that there are 628 in-state beds for PRTF in the state. *Id.* Ninety-two of those beds are Trinity's.

14.   Based on HSPA's most recent calculations, statewide bed need for inpatient psychiatric patients is 634, and the total number of existing beds is 628. *Id.* Thus, HSPA shows a current bed need as being six fewer than there actually are at present. *Id.*

15.   DHS' suspension of funding to Trinity would take 92 PRFT beds out of the state's system, reducing the total PRFT beds available in the state by 15%.

16.   The additional reduction of bed count, which would occur from the suspension of funding to Trinity, would significantly add to the shortage of beds HSPA has already identified while Trinity's 92 beds were operational.

17.   Reducing PRFT beds by 15%, as a result of the suspension of funding to Trinity, would cause an extreme shortage of PRFT beds in Arkansas, would negatively impact patients' ability to obtain inpatient psychiatric treatment and would not be in the best interest of the Medicaid program or Medicaid recipients' best interests.

18.   It is not in the best interest of the state Medicaid system to dismantle an organization employing numerous healthcare professionals and serving emotionally fragile patients when it has not been shown or even alleged that there are any problems with the quality of care it provides.

FURTHER AFFIANT SAYETH NAUGHT.
Date:   October  13 2014

_____
Thomas Christian Stinnett, M.D., P.A.

STATE OF ARKANSAS          )
                          )
COUNTY OF Pope             )

I, _Amee Standridge_, a Notary Public for the above county and state, hereby certify that Thomas Christian Stinnett appeared before me on this 13 day of October, 2014, and being duly sworn to oath, and attested to the execution of this Affidavit.

AMEE STANDRIDGE
POPE COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires July 31, 2019
Commission No. 12575859

_Amee Standridge_
Notary Public

3318737v1/08993-0015

# TAB 1

870 647 2145          Trinty Behavioral                                  05:38:23 p.m.    10-09-2014          6 /22

 # ARKANSAS STATE MEDICAL BOARD

1401 West Capitol, Suite 340, Little Rock, Arkansas 72201 (501) 296-1802 FAX: (501) 603-3555

www.armedicalboard.org

## License Verification

Queried on: Wednesday, February 05, 2014 at: 1:13 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

Primary Specialty: Psychiatry

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2015

Basis: Exam

License Status: Active

License Category: Unlimited

870 647 2145          Trinty Behavioral                                    05:38:39 p.m.     10-09-2014        7/22



# ARKANSAS STATE MEDICAL BOARD
## STATE OF ARKANSAS CENTRALIZED CREDENTIALS VERIFICATION SERVICE

1401 West Capitol, Suite 340   Little Rock, AR  72201   (501) 296-1802
www.armedicalboard.org    ccvs@armedicalboard.org

## Initial Credentialing Information

Queried By: TED SUHL / MAXUS WARM SPRINGS AR

Queried on: Wednesday, November 20, 2013 at: 4:30 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

SSN: 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

Sex: Male

DOB: 2/14/1959

UPIN: B90203

NPI: 1164568598

Medicare Provider Number: 51755

Accept Medicare Patients?: Yes

Medicaid Provider Number: 114196001

Accept Medicaid Patients?: Yes

International Graduate?: No

Country of Medical School: USA

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2014

Basis: Exam

License Status: Active

License Category: Unlimited

No Information Found for: License Board History.

## Certifications (ABMS Boards)

Specialty: Psychiatry
Certification Type: Certified
Certification Status: Active/Lifetime - MOC Not Required
Certification Board: ABMS - Amer Bd of Psychiatry & Neurology
Certificate Number:
Certification Date: 04/30/1992
Recertification Date:
Expiration Date:
Verification Date: 11/18/2013
Verification Source: Certifacts
Remarks: None

No Information Found for: Certifications (Non-ABMS Boards).

No Information Found for: Certifications (ECFMG).

No Information Found for: Certifications (Fifth Pathway).

## DEA Information (Federal)

DEA Number: BS0966981
DEA Address: #5 St. Vincent Circle Suite 302 Little Rock, AR 72205
Schedules: 2, 2N, 3, 3N, 4, 5
Issue Date:
Expiration Date: 02/28/2015
Verification Date: 11/15/2013
Verification Source: NTIS / DEA
Remarks: None

No Information Found for: DEA (State).

No Information Found for: Education (Undergraduate).

## Education (Medical)

Education: Medical
School/GME: University of Arkansas College of Medicine
Location: Little Rock, AR USA
Degree: M.D.
Start Date: 08/01/1981
Leave Date: 05/17/1986
Program Completed: Yes
Verification Date: 07/11/2006
Verification Source: Verbal Direct
Board Waiver: No
Transcript Verification Date:
Official Transcript?: No
Remarks: LOA - see Misc Activity entry

## Education (Internship)

Education: Internship
School/GME: University of Arkansas for Medical Sciences Program
Location: Little Rock, AR
Specialty: Transitional
Start Date: 07/01/1986
Leave Date: 06/30/1987
Program Completed: Yes
Verification Date: 01/04/2001
Verification Source: Direct
Board Waiver: No
Remarks: None

# Education (Residency)

|  |  |
|---|---|
| Education: | Residency |
| School/GME: | University of Arkansas for Medical Sciences Program |
| Location: | Little Rock, AR USA |
| Specialty: | Psychiatry |
| Start Date: | 07/01/1987 |
| Leave Date: | 06/30/1990 |
| Anticipated Completion Date: |  |
| Program Completed: | Yes |
| Verification Date: | 01/04/2001 |
| Verification Source: | Direct |
| Board Waiver: | No |
| Remarks: | None |

No Information Found for: Education (Fellowship).

No Information Found for: Education (Assistantship).

No Information Found for: Education (Clerkship).

No Information Found for: Education (Externship).

No Information Found for: Education (Observership).

No Information Found for: Education (Other Graduate).

No Information Found for: Education (Postgraduate).

# Insurance Information

Type: Current
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2004
Expiration Date: 05/01/2014
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/13/2013
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $3,000,000-$5,000,000
Retroactive Date: 07/01/1990
Issue Date: 07/01/1995
Expiration Date: 07/01/1996
Denied/Dropped:
Documentation Received: Yes
Verification Date: 05/27/1995
Verification Source: Certificate Copy

870 647 2145       Trinty Behavioral                                        05:40:03 p.m.     10-09-2014          12 /22

Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 90-I151

Coverage Amount: $1,000,000-$3,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/2003

Expiration Date: 05/01/2004

Denied/Dropped:

Documentation Received: Yes

Verification Date: 03/27/2003

Verification Source: Certificate Copy


Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 89-I151

Coverage Amount: $1,000,000-$3,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/2002

Expiration Date: 05/01/2003

Denied/Dropped:

Documentation Received: Yes

Verification Date: 04/04/2002

Verification Source: Certificate Copy

Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $3,000,000-$5,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2001
Expiration Date: 05/01/2002
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/23/2001
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/1999
Expiration Date: 05/01/2002
Denied/Dropped:
Documentation Received: Yes
Verification Date: 06/20/2001
Verification Source: Certificate Copy

---

No Information Found for: License (Out-of-State)

---

No Information Found for: Misc (AMA/AOA).

---

No Information Found for: Misc (Criminal Conviction),

---

No Information Found for: Misc (Rehab/Health).

---

No Information Found for: Misc (Exemptions).

---

## Misc (Federation Verifications)

Verification Date: 11/15/2013

Verification Source: FSMB

Remarks: None

---

No Information Found for: Misc (Military).

## Misc (Misc Activities)

Activity Type: Time Gap

Dates: From  Thru

Letter of Explanation? : No

Remarks: No time gaps

Activity Type: Miscellaneous Activity

Dates: From 08/01/1984 Thru 07/21/1985

Letter of Explanation? : Yes

Remarks: LOA

Activity Type: Time Gap

Dates: From 05/18/1986 Thru 06/30/1986

Letter of Explanation? : Yes

Remarks: Vacation

---

No Information Found for: Misc (Physician's Health Committee).

No Information Found for: Practice (Partner in Practice).

## Practice (Previous Practice)

870 647 2145        Trinty Behavioral                                          05:40:51 p.m.    10-09-2014·      15/22

Name: Arkansas Psychiatric Clinic, P.A.
Location: Little Rock ARUSA
Position: Partner
Status: Inactive
Date From: 11/01/1992
Date Thru: 12/31/2000
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 02/22/2005
Board Waiver?: No
Remarks: None


Name: Little Rock Psychiatric Clinic, PA
Location: Little Rock ARUSA
Position: Owner/Medical Director
Status: Inactive
Date From: 02/01/1996
Date Thru: 01/31/2001
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 02/28/2011
Board Waiver?: No
Remarks: None

---

## Practice (Primary Practice)

Name: Thomas C. Stinnett, M.D., PA
Location: Little Rock ARUSA
Position: Private Practice
Status: Current
Date From: 01/02/2001
Date Thru:
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 11/18/2013
Board Waiver?: No
Remarks: None

No Information Found for: Practice (Secondary Practice).

No Information Found for: Specialty (Practice).

## Specialty (Primary)

Specialty: Psychiatry
Remarks: None

No Information Found for: Specialty (Secondary).

No Information Found for: Specialty (Self-Designated).

No Information Found for: Work History (Clinic).

## Work History (Employment)

Institution Name: George W. Jackson Mental Health Center
Location: Jonesboro, AR
Instituiton Dates: 01/01/1988 Thru 12/31/1989
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, no contact info; physician info only

Institution Name: Community Counseling Services, Inc.
Location: Hot Springs, AR
Instituiton Dates: 01/01/1989 Thru 12/31/1990
Verification Date: 07/11/2006
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Cannot verify, files archived, physician information only

Institution Name: Counseling Associates, Inc.
Location: Conway, AR
Instituiton Dates: 07/01/1990 Thru 11/30/1992
Verification Date: 07/11/2006
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Cannot verify, files archived, physician information only

Institution Name: Birch Tree Communities, Inc.
Location: Benton, AR
Instituiton Dates: 07/01/1999 Thru 12/31/1999
Verification Date: 04/08/2003
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Contracted Psychiatrist

Institution Name: Outlook Geriatric Partial Hospitalization (Facility Closed)
Location: Russellville, AR
Instituiton Dates: 12/01/1999 Thru 07/01/2001
Verification Date: 04/16/2004
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Medical Director

870 647 2145          Trinty Behaviorial                                            05:41:39 p.m.     10-09-2014          18 /22

Institution Name: Arkansas Counseling Associates/MAXUS
Location: Warm Springs, AR
Instituiton Dates: 01/25/2005
Verification Date: 11/18/2013
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Staff Psychiatrist/Medical Director


Institution Name: Boone Park And Lynch Drive Elementaries
Location: North Little Rock, AR
Instituiton Dates: 02/01/2005 Thru 12/31/2006
Verification Date: 06/17/2010
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Contract physician


Institution Name: Rivendell Behaviorial Health Services
Location: Benton, AR
Instituiton Dates: 07/01/2005 Thru 03/31/2006
Verification Date: 01/31/2007
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Medical Director

---

## Work History (Staff Appointments)

Institution Name: The Bridgeway
Location: North Little Rock, AR
Institution Dates: 08/19/1987 Thru 05/24/2007
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 05/08/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

Institution Name: Saint Mary's Regional Medical Center
Location: Russellville, AR
Institution Dates: 10/29/1991 Thru 02/23/2008
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 06/10/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: St. Vincent Infirmary Medical Center (St. Vincent Health System)
Location: Little Rock, ARUSA
Institution Dates: 09/04/1996 Thru 03/17/2000
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 04/08/2003
Verification Source: Direct
Board Waiver?: No
Remarks: None


Institution Name: Baptist Health Medical Center - Little Rock
Location: Little Rock, AR
Institution Dates: 11/21/1996 Thru 02/01/2011
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 07/26/2011
Verification Source: Direct
Board Waiver?: No
Remarks: None

Institution Name: Charter Behavioral Health System of Little Rock
Location: Maumelle, ARUSA
Institution Dates: 02/01/1999 Thru 10/31/1999
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, facility closed; physician info only


Institution Name: Pinnacle Pointe Hospital
Location: Little Rock, AR
Institution Dates: 12/09/1999 Thru 01/13/2012
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 10/19/2012
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: Arkansas Heart Hospital
Location: Little Rock, AR
Institution Dates: 03/17/2005 Thru 07/01/2013
Status: Inactive
Staff Privilege: Associate
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 08/23/2013
Verification Source: Roster Direct
Board Waiver?: No
Remarks: None

Institution Name: Rivendell Behavioral Health Services
Location: Benton, AR
Institution Dates: 07/01/2005 Thru 03/31/2006
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 01/31/2007
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: River Valley Medical Center (formerly Dardanelle
Hospital)
Location: Dardanelle, ARUSA
Institution Dates: 08/20/2007 Thru 10/01/2008
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 12/03/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: The Bridgeway
Location: North Little Rock, AR
Institution Dates: 07/21/2008 Thru 07/21/2011
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 01/30/2012
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

870 647 2145          Trinty Behavioral          05:42:45 p.m.    10-09-2014        22/22

| | |
|---|---|
| Institution Name: | Saint Mary's Regional Medical Center |
| Location: | Russellville, AR |
| Institution Dates: | 10/21/2011 |
| Status: | Current |
| Staff Privilege: | Active Staff |
| Clinical Scope: | Psychiatry |
| In Good Standing?: | Yes |
| Verification Date: | 11/15/2013 |
| Verification Source: | Roster Direct |
| Board Waiver?: | No |
| Remarks: | None |

No Information Found for: Work History (Teaching).

Report Version: 1.0.1 Rev. 03/11

PHIDNO: ASMB5258

Serial Number: 381643

Snapshot Version: 1.0.0.10588

Report ID: e2af3c77-2cb1-43ac-81f4-94d451c8e18b

# TAB 2

**Section XII**
**PRTF Need**

| PRTF NEED October 1, 2014 | Area 1 Counties | Area 2 Counties | Area 3 Counties | Area 4 Counties | Area 5 Counties | Area 6 Counties | Totals |
|---|---|---|---|---|---|---|---|
| | Benton | Baxter | Conway | Calhoun | Arkansas | Crittenden | |
| | Boone | Clay | Faulkner | Clark | Ashley | Cross | |
| | Carroll | Cleburne | Johnson | Columbia | Bradley | Lee | |
| | Crawford | Craighead | Lonoke | Dallas | Chicot | Mississippi | |
| | Franklin | Fulton | Perry | Garland | Cleveland | Monroe | |
| | Logan | Greene | Pope | Hempstead | Desha | Phillips | |
| | Madison | Independence | Prairie | Hot Spring | Drew | Poinsett | |
| | Marion | Izard | Pulaski | Howard | Grant | St. Francis | |
| | Newton | Jackson | Saline | Lafayette | Jefferson | | |
| | Polk | Lawrence | Yell | Little River | Lincoln | | |
| | Scott | Randolph | | Miller | | | |
| | Searcy | Sharp | | Montgomery | | | |
| | Sebastian | Stone | | Nevada | | | |
| | Washington | Van Buren | | Ouachita | | | |
| | | White | | Pike | | | |
| | | Woodruff | | Sevier | | | |
| | | | | Union | | | |
| Need | 207 | 95 | 183 | 75 | 37 | 37 | 634 |
| Current Beds | 119 | 120 | 156 | 111 | 46 | 76 | 628 |
| Net Need** | 88 | 25 | 27 | 36 | 9 | 39 | 6 |

## Section XIII
## List of PRTF'S

| Approved and/or Licensed Psychiatric Residential | | POA | Licensed | Approved (DYS) | Total | |
|---|---|---|---|---|---|---|
| Treatment Facilities as of April 1, 2010 | | | | | | |
| Facility | Location | Licensed In-State | Out of State | In-State | In-State | PRTF |
| | | Beds | Beds | Beds | Beds | Region |
| | | | | | | |
| Ozark Guidance | Springdale | 33 | 0 | 0 | 33 | 1 |
| Piney Ridge Center (#1171;POA Trans 9/13/07) | Fayetteville | 86 | 0 | 11 | 97 | 1 |
| Trinity Behavioral Healthcare | Warm Springs | 92 | 52 | 0 | 92 | 2 |
| United Methodist Children's Home | Bono | 28 | 0 | 0 | 28 | 2 |
| Centers for Youth and Families | Little Rock | 49 | 0 | 0 | 49 | 3 |
| United Methodist Children's Home | Little Rock | 37 | 0 | 0 | 37 | 3 |
| Youth Home | Little Rock | 70 | 0 | 0 | 70 | 3 |
| Millcreek of Arkansas | Fordyce | 111 | 0 | 15 | 126 | 4 |
| Centers for Youth and Families | Monticello | 23 | 0 | 0 | 23 | 5 |
| Delta Family | Hamburg | 23 | 0 | 0 | 23 | 5 |
| Woodridge Behavioral | Forrest City | 48 | 0 | 0 | 48 | 6 |
| Woodridge Behavioral (1418) | West Memphis | 28 | 0 | 0 | 28 | 6 |
| TOTALS | | 628 | 52 | 26 | 654 | |

# EXHIBIT D

## AFFIDAVIT OF THOMAS CHRISTIAN STINNETT, M.D., P.A.

I, Thomas Christian Stinnett, M.D., being duly sworn and under oath, hereby state the following based upon personal knowledge:

1.      I am over 18 years of age and have personal knowledge of the facts set forth in this affidavit and would testify to the same if called upon to do so.

2.      I am a board-certified physician and psychiatrist licensed to practice medicine in the State of Arkansas.  (A copy of my Arkansas State Medical Board information is attached hereto at Tab 1.)

3.      I am a physician and psychiatrist at Trinity Behavioral HealthCare Systems, Inc. ("Trinity") and Maxus, Inc. ("Maxus").

4.      In my capacity as a physician and psychiatrist at Trinity and Maxus, I have personal knowledge regarding the patient populations at Trinity's inpatient juvenile psychiatric treatment facility and Maxus' 18 outpatient counseling centers.

5.      In my practice as a psychiatrist, I regularly treat inpatient juvenile psychiatric patients and provided outpatient psychiatric counseling to juveniles and adults.

### *Trinity Behavioral HealthCare Systems, Inc.*

6.      Trinity operates a licensed inpatient facility that treats children ranging from six years of age to seventeen years of age.  Patients live on Trinity's residential campus, in Northeastern Arkansas.

7.      Patients live in residential homes that are monitored full time by residential staff. Therapeutic services are provided by a multi-disciplinary team, including physicians, master's level therapists, registered nurses and licensed educational personnel.

8.      Because patients at Trinity are children, developing a stable, comfortable, secure and trusting therapeutic setting is essential to the therapeutic process.

9.      Achieving a level of trust is often more difficult with children than adult psychiatric patients.  When patients are admitted to Trinity, there is a period of several months in which patients' transition into the therapeutic environment before the benefits of treatment can be realized.

10.      The placement of a child in an inpatient facility, in itself, can cause stress, anxiety and emotional trauma.

11.      A period of "bonding" typically occurs between a psychiatric patient and the treatment provider that is essential to the therapeutic process.  Changes in providers can cause regression in therapeutic progress and detrimentally affect patients.

12.      The specialized and delicate attention paid to each child is absolutely necessary to his or her development and cannot withstand disruption.  In many cases, a child coming to Trinity will have failed to receive the treatment needed through foster homes, psychiatric hospitals and non-resident treatment facilities.  The first step to helping these children alter their life course is building trust, which in turn requires consistent, qualified care.

13.      Removing a child from a residential and therapeutic setting that they have become accustomed to and changes in treatment modalities can cause further psychiatric and emotional trauma.

14.      Forcing the inpatient population at Trinity to endure a traumatic transfer from their surroundings may break therapeutic trust, destroy progress made and cause an irreparable regression in patients' mental growth.

15.      In addition to psychiatric treatment, Trinity provides its patients with primary and secondary education on campus.  Patients are tested at entry for grade-level performance, and

education plans are developed to address their needs.  Curriculum is individualized to permit each patient to reach his or her greatest educational potential, develop effective academic skills and earn a high school diploma or GED.  Coordination with the home school district of each patient assures that graduation requirements will be met.  Class size is minimized to assure individualized attention for each patient.

16.    Changes in educational circumstances can result in psychological trauma to patients and may also result in loss of educational progress.

17.    Trinity is authorized by the Arkansas Health Services Permit Agency ("HSPA") to operate 92 PRTF beds for Arkansas Medicaid patients.  It services a large portion of rural Arkansas.  I am not aware of another Medicaid-accredited facility similar to Trinity that could accommodate Trinity's current population of patients.

18.    In my opinion as a physician and psychiatrist, the transfer or removal of inpatient juvenile patients from Trinity may cause emotional trauma and may result in negative therapeutic regression and is not in the best interests of the patients.

*Maxus*

19.    Maxus operates 18 psychiatric counseling clinics in throughout Arkansas which provide outpatient psychiatric counseling to 2500 adults and juveniles.

20.    I a physician at Maxus and have personal knowledge regarding the patient population, care and treatment provided at these counseling clinics.  Maxus treats adult and juvenile patients suffering from various psychiatric conditions that include severe emotional/behavioral problems including impulse control, abuse recovery, oppositional behavior, depression, grief, post-adoption, chemical dependency and sexual issues.

21.    An important element of providing psychiatric care is developing a stable, comfortable, secure and trusting therapeutic setting.

3

22.     Therapeutic "bonding" typically occurs between a psychiatric patient and the treatment provider over the course of treatment and is essential to the therapeutic process.

23.     Children (particularly with Behavioral Disorders) and adult and juvenile patients with diagnoses such as Anxiety Disorders, Mood Disorders (Bipolar Disorder, Unipolar Depression) and Psychotic Disorders (Schizophrenia and related disorders) have a more difficult time developing trust in their providers, and therefore therapeutic benefits are often delayed until after therapeutic bonding takes place.  Patients with aforementioned diagnoses make up 90% of the current populations for Maxus and Trinity.

24.     Changes in providers can destroy therapeutic bonding, cause regression in therapeutic progress and detrimentally affect patients' mental health.

25.     In my opinion, as a physician and psychiatrist, the transfer of juvenile and adult patients from Maxus' outpatient counseling clinics will cause emotional trauma to a significant portion of Maxus' outpatient population and may result in negative therapeutic regression.

26.     It is further my opinion that the transfer of these patients to other psychiatric care providers is not in their best interests.

FURTHER AFFIANT SAYETH NAUGHT.

Date:  October 13, 2014

_____
Thomas Christian Stinnett, M.D.

STATE OF ARKANSAS          )
                           )
COUNTY OF Pope             )

I, Amee Standridge, a Notary Public for the above county and state, hereby certify that Thomas Christian Stinnett appeared before me on this ___ day of October, 2014, and being duly sworn to oath, and attested to the execution of this Affidavit.

AMEE STANDRIDGE
POPE COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires July 31, 2019
Commission No. 12372839

_____
Notary Public

3218367v1/08092-0015

# TAB 1



# ARKANSAS STATE MEDICAL BOARD

1401 West Capitol, Suite 340, Little Rock, Arkansas 72201 (501) 296-1802 FAX: (501) 603-3555

www.armedicalboard.org

## License Verification

Queried on: Wednesday, February 05, 2014 at: 1:13 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

Primary Specialty: Psychiatry

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2015

Basis: Exam

License Status: Active

License Category: Unlimited



# ARKANSAS STATE MEDICAL BOARD
### STATE OF ARKANSAS CENTRALIZED CREDENTIALS VERIFICATION SERVICE

1401 West Capitol, Suite 340   Little Rock, AR  72201   (501) 296-1802
www.armedicalboard.org    ccvs@armedicalboard.org

## Initial Credentialing Information

Queried By: TED SUHL / MAXUS WARM SPRINGS AR

Queried on: Wednesday, November 20, 2013 at: 4:30 PM

## General Information

Name: Thomas Christian Stinnett, M.D.

SSN: 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

Sex: Male

DOB: 2/14/1959

UPIN: B90203

NPI: 1164568598

Medicare Provider Number: 51755

Accept Medicare Patients?: Yes

Medicaid Provider Number: 114196001

Accept Medicaid Patients?: Yes

International Graduate?: No

Country of Medical School: USA

## Address Information

Mailing Address: 5 St. Vincent Circle

Address 2: Suite 302

City/State/Zip: Little Rock, AR 72205

Phone: (501) 666-5242

Fax: (501) 666-2430

## License Information

License Number: C-7152

Original Issue Date: 8/8/1986

Expiration Date: 2/28/2014

Basis: Exam

License Status: Active

License Category: Unlimited

No Information Found for: License Board History.

## Certifications (ABMS Boards)

Specialty: Psychiatry
Certification Type: Certified
Certification Status: Active/Lifetime - MOC Not Required
Certification Board: ABMS - Amer Bd of Psychiatry & Neurology
Certificate Number:
Certification Date: 04/30/1992
Recertification Date:
Expiration Date:
Verification Date: 11/18/2013
Verification Source: Certifacts
Remarks: None

No Information Found for: Certifications (Non-ABMS Boards).

No Information Found for: Certifications (ECFMG).

No Information Found for: Certifications (Fifth Pathway).

## DEA Information (Federal)

DEA Number: BS0966981
DEA Address: #5 St. Vincent Circle Suite 302 Little Rock, AR 72205
Schedules: 2, 2N, 3, 3N, 4, 5
Issue Date:
Expiration Date: 02/28/2015
Verification Date: 11/15/2013
Verification Source: NTIS / DEA
Remarks: None

No Information Found for: DEA (State).

No Information Found for: Education (Undergraduate).

## Education (Medical)

| | |
|---:|:---|
| Education: | Medical |
| School/GME: | University of Arkansas College of Medicine |
| Location: | Little Rock, AR USA |
| Degree: | M.D. |
| Start Date: | 08/01/1981 |
| Leave Date: | 05/17/1986 |
| Program Completed: | Yes |
| Verification Date: | 07/11/2006 |
| Verification Source: | Verbal Direct |
| Board Waiver: | No |
| Transcript Verification Date: | |
| Official Transcript?: | No |
| Remarks: | LOA - see Misc Activity entry |

## Education (Internship)

| | |
|---:|:---|
| Education: | Internship |
| School/GME: | University of Arkansas for Medical Sciences Program |
| Location: | Little Rock, AR |
| Specialty: | Transitional |
| Start Date: | 07/01/1986 |
| Leave Date: | 06/30/1987 |
| Program Completed: | Yes |
| Verification Date: | 01/04/2001 |
| Verification Source: | Direct |
| Board Waiver: | No |
| Remarks: | None |

## Education (Residency)

|  |  |
|---|---|
| Education: | Residency |
| School/GME: | University of Arkansas for Medical Sciences Program |
| Location: | Little Rock, AR USA |
| Specialty: | Psychiatry |
| Start Date: | 07/01/1987 |
| Leave Date: | 06/30/1990 |
| Anticipated Completion Date: | |
| Program Completed: | Yes |
| Verification Date: | 01/04/2001 |
| Verification Source: | Direct |
| Board Waiver: | No |
| Remarks: | None |

No Information Found for: Education (Fellowship).

No Information Found for: Education (Assistantship).

No Information Found for: Education (Clerkship).

No Information Found for: Education (Externship).

No Information Found for: Education (Observership).

No Information Found for: Education (Other Graduate).

No Information Found for: Education (Postgraduate).

## Insurance Information

870 647 2145          Trinty Behavioral                                    05:39:48 p.m.      10-09-2014          11 /22

Type: Current
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2004
Expiration Date: 05/01/2014
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/13/2013
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $3,000,000-$5,000,000
Retroactive Date: 07/01/1990
Issue Date: 07/01/1995
Expiration Date: 07/01/1996
Denied/Dropped:
Documentation Received: Yes
Verification Date: 05/27/1995
Verification Source: Certificate Copy

870 647 2145        Trinty Behavioral                                                    05:40:03 p.m.    10-09-2014        12/22

Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 90-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2003
Expiration Date: 05/01/2004
Denied/Dropped:
Documentation Received: Yes
Verification Date: 03/27/2003
Verification Source: Certificate Copy


Type: Previous
Carrier: State Volunteer Mutual Insurance Company
Address 1: 101 Westpark Dr., Suite 300
Address 2: PO Box 1065
City, State, Zip: Brentwood, TN  37024
Policy Number: 89-I151
Coverage Amount: $1,000,000-$3,000,000
Retroactive Date: 07/01/1990
Issue Date: 05/01/2002
Expiration Date: 05/01/2003
Denied/Dropped:
Documentation Received: Yes
Verification Date: 04/04/2002
Verification Source: Certificate Copy

Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 89-I151

Coverage Amount: $3,000,000-$5,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/2001

Expiration Date: 05/01/2002

Denied/Dropped:

Documentation Received: Yes

Verification Date: 03/23/2001

Verification Source: Certificate Copy


Type: Previous

Carrier: State Volunteer Mutual Insurance Company

Address 1: 101 Westpark Dr., Suite 300

Address 2: PO Box 1065

City, State, Zip: Brentwood, TN  37024

Policy Number: 89-I151

Coverage Amount: $1,000,000-$3,000,000

Retroactive Date: 07/01/1990

Issue Date: 05/01/1999

Expiration Date: 05/01/2002

Denied/Dropped:

Documentation Received: Yes

Verification Date: 06/20/2001

Verification Source: Certificate Copy

---

No Information Found for: License (Out-of-State)

No Information Found for: Misc (AMA/AOA).

No Information Found for: Misc (Criminal Conviction).

No Information Found for: Misc (Rehab/Health).

No Information Found for: Misc (Exemptions).

870 647 2145          Trinty Behavioral                    05:40:37 p.m.    10-09-2014        14/22

## Misc (Federation Verifications)

Verification Date: 11/15/2013
Verification Source: FSMB
Remarks: None

No Information Found for: Misc (Military).

## Misc (Misc Activities)

Activity Type: Time Gap
Dates: From  Thru
Letter of Explanation? : No
Remarks: No time gaps

Activity Type: Miscellaneous Activity
Dates: From 08/01/1984 Thru 07/21/1985
Letter of Explanation? : Yes
Remarks: LOA

Activity Type: Time Gap
Dates: From 05/18/1986 Thru 06/30/1986
Letter of Explanation? : Yes
Remarks: Vacation

No Information Found for: Misc (Physician's Health Committee).

No Information Found for: Practice (Partner in Practice).

## Practice (Previous Practice)

Name: Arkansas Psychiatric Clinic, P.A.
Location: Little Rock ARUSA
Position: Partner
Status: Inactive
Date From: 11/01/1992
Date Thru: 12/31/2000
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 02/22/2005
Board Waiver?: No
Remarks: None

Name: Little Rock Psychiatric Clinic, PA
Location: Little Rock ARUSA
Position: Owner/Medical Director
Status: Inactive
Date From: 02/01/1996
Date Thru: 01/31/2001
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 02/28/2011
Board Waiver?: No
Remarks: None

## Practice (Primary Practice)

Name: Thomas C. Stinnett, M.D., PA
Location: Little Rock ARUSA
Position: Private Practice
Status: Current
Date From: 01/02/2001
Date Thru:
Restriction: Psychiatry
Category: Unknown
In Good Standing?: Yes
Verification Method: Phone
Verification Source: Verbal Direct
Verification Date: 11/18/2013
Board Waiver?: No
Remarks: None

No Information Found for: Practice (Secondary Practice).

No Information Found for: Specialty (Practice).

## Specialty (Primary)

Specialty: Psychiatry
Remarks: None

No Information Found for: Specialty (Secondary).

No Information Found for: Specialty (Self-Designated).

No Information Found for: Work History (Clinic).

## Work History (Employment)

Institution Name: George W. Jackson Mental Health Center
Location: Jonesboro, AR
Instituiton Dates: 01/01/1988 Thru 12/31/1989
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, no contact info; physician info only

Institution Name: Community Counseling Services, Inc.

Location: Hot Springs, AR

Instituiton Dates: 01/01/1989 Thru 12/31/1990

Verification Date: 07/11/2006

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Cannot verify, files archived, physician information only


Institution Name: Counseling Associates, Inc.

Location: Conway, AR

Instituiton Dates: 07/01/1990 Thru 11/30/1992

Verification Date: 07/11/2006

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Cannot verify, files archived, physician information only


Institution Name: Birch Tree Communities, Inc.

Location: Benton, AR

Instituiton Dates: 07/01/1999 Thru 12/31/1999

Verification Date: 04/08/2003

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Contracted Psychiatrist


Institution Name: Outlook Geriatric Partial Hospitalization (Facility Closed)

Location: Russellville, AR

Instituiton Dates: 12/01/1999 Thru 07/01/2001

Verification Date: 04/16/2004

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: Medical Director

Institution Name: Arkansas Counseling Associates/MAXUS
Location: Warm Springs, AR
Instituiton Dates: 01/25/2005
Verification Date: 11/18/2013
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Staff Psychiatrist/Medical Director

Institution Name: Boone Park And Lynch Drive Elementaries
Location: North Little Rock, AR
Instituiton Dates: 02/01/2005 Thru 12/31/2006
Verification Date: 06/17/2010
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Contract physician

Institution Name: Rivendell Behavioral Health Services
Location: Benton, AR
Instituiton Dates: 07/01/2005 Thru 03/31/2006
Verification Date: 01/31/2007
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: Medical Director

---

## Work History (Staff Appointments)

Institution Name: The Bridgeway
Location: North Little Rock, AR
Institution Dates: 08/19/1987 Thru 05/24/2007
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 05/08/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None

Institution Name: Saint Mary's Regional Medical Center
Location: Russellville, AR
Institution Dates: 10/29/1991 Thru 02/23/2008
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 06/10/2008
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: St. Vincent Infirmary Medical Center (St. Vincent Health System)
Location: Little Rock, ARUSA
Institution Dates: 09/04/1996 Thru 03/17/2000
Status: Inactive
Staff Privilege: Courtesy
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 04/08/2003
Verification Source: Direct
Board Waiver?: No
Remarks: None


Institution Name: Baptist Health Medical Center - Little Rock
Location: Little Rock, AR
Institution Dates: 11/21/1996 Thru 02/01/2011
Status: Inactive
Staff Privilege: Consulting
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 07/26/2011
Verification Source: Direct
Board Waiver?: No
Remarks: None

Institution Name: Charter Behavioral Health System of Little Rock
Location: Maumelle, ARUSA
Institution Dates: 02/01/1999 Thru 10/31/1999
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date:
Verification Source: Unknown
Board Waiver?: No
Remarks: Cannot verify, facility closed; physician info only


Institution Name: Pinnacle Pointe Hospital
Location: Little Rock, AR
Institution Dates: 12/09/1999 Thru 01/13/2012
Status: Inactive
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 10/19/2012
Verification Source: Verbal Direct
Board Waiver?: No
Remarks: None


Institution Name: Arkansas Heart Hospital
Location: Little Rock, AR
Institution Dates: 03/17/2005 Thru 07/01/2013
Status: Inactive
Staff Privilege: Associate
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 08/23/2013
Verification Source: Roster Direct
Board Waiver?: No
Remarks: None

870 647 2145     Trinty Behavioral                                          05:42:29 p.m.     10-09-2014     21 /22

Institution Name: Rivendell Behavioral Health Services

Location: Benton, AR

Institution Dates: 07/01/2005 Thru 03/31/2006

Status: Inactive

Staff Privilege: Active Staff

Clinical Scope: Psychiatry

In Good Standing?: Yes

Verification Date: 01/31/2007

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: None


Institution Name: River Valley Medical Center (formerly Dardanelle Hospital)

Location: Dardanelle, ARUSA

Institution Dates: 08/20/2007 Thru 10/01/2008

Status: Inactive

Staff Privilege: Courtesy

Clinical Scope: Psychiatry

In Good Standing?: Yes

Verification Date: 12/03/2008

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: None


Institution Name: The Bridgeway

Location: North Little Rock, AR

Institution Dates: 07/21/2008 Thru 07/21/2011

Status: Inactive

Staff Privilege: Courtesy

Clinical Scope: Psychiatry

In Good Standing?: Yes

Verification Date: 01/30/2012

Verification Source: Verbal Direct

Board Waiver?: No

Remarks: None

870 647 2145          Trinty Behavioral          05:42:45 p.m.    10-09-2014        22 /22

Institution Name: Saint Mary's Regional Medical Center
Location: Russellville, AR
Institution Dates: 10/21/2011
Status: Current
Staff Privilege: Active Staff
Clinical Scope: Psychiatry
In Good Standing?: Yes
Verification Date: 11/15/2013
Verification Source: Roster Direct
Board Waiver?: No
Remarks: None

---

No Information Found for: Work History (Teaching).

---

Report Version: 1.0.1 Rev. 03/11

PHIDNO: A5MB5258

Serial Number: 381643

Snapshot Version: 1.0.0.10588

Report ID: e2af3c77-2cb1-43ac-81f4-94d451c8e18b

# EXHIBIT E



**Division of Medical Services**



P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789

October 7, 2014

Maxus, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:     Maxus, Inc.
        Medicaid Provider Nos.


        Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all Medicaid payments to a provider when the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid Program against the individual or entity.

You are hereby notified that DHS received a credible allegation of fraud against Maxus, Inc. ("Maxus") and will suspend all Medicaid payments to Maxus in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. Maxus will be notified, in writing, when this temporary suspension is terminated. This suspension applies to all Medicaid claims by Maxus.

This action is taken based upon credible allegations that you, as owner of Maxus, a behavioral health care provider, allegedly provided cash and other things of value to an official of DHS, in return for that official's acts, including the provision of internal DHS information that benefitted both you and Maxus. These acts were allegedly concealed from the agency. The allegation is of an exchange of cash and other things of value for the acts and information provided to you and Maxus that was unauthorized and illegal and was beneficial to Maxus, in violation of 18 U.S.C. §§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause exists to immediately suspend payment only in part. Effective with the date of this letter, DHS will immediately suspend Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds

that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Maxus has the right to submit written evidence for consideration by DHS. Maxus also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

Dawn Stehle

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services



**Division of Medical Services**

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789



October 7, 2014

Trinity Behavioral Healthcare System, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:     Trinity Behavioral Health Care System, Inc.
        Medicaid Provider No.
        Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all Medicaid payments to a provider when the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid Program against the individual or entity.

You are hereby notified that DHS received a credible allegation of fraud against Trinity Behavioral Health Care System, Inc. ("Trinity") and will suspend all Medicaid payments to Trinity in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. Trinity will be notified, in writing, when this temporary suspension is terminated. This suspension applies to all Medicaid claims by Trinity.

This action is taken based upon credible allegations that you, as owner of Trinity, a behavioral health care provider, allegedly provided cash and other things of value to an official of DHS, in return for that official's acts, including the provision of internal DHS information that benefitted both you and Trinity. These acts were allegedly concealed from the agency. The allegation is of an exchange of cash and other things of value for the acts and information provided to you and Trinity that was unauthorized and illegal and was beneficial to Trinity, in violation of 18 U.S.C. §§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause exists to immediately suspend payment only in part. Effective with the date of this letter, DHS will immediately suspend Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care

and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Trinity has the right to submit written evidence for consideration by DHS. Trinity also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services

# EXHIBIT F

text_0

Kristi I am so sad to tell you that I sent in my letter of resignation today. I want to call you so bad but can't even from
Catch my breath from the tears I am crying. I want you to know that I have been here 9 amazing years and would have been for another 50. I love ACA and have enjoyed it. I have been so uneasy about the future and the bottom line is that I have 3 babies to take care of and they are my priority. You are such a dear friend and I hope that you can look past this and continue that friendship. I did notify Francis as well. I feel terrible for both of you but need to find something that I have a guaranteed job and pay check. I hope you can understand!

# EXHIBIT G

STATE OF ARKANSAS
DEPARTMENT OF HUMAN SERVICES

MAXUS, INC. and
TRINITY BEHAVIORAL HEALTHCARE
SYSTEM, INC.,
      Appellants

      v.

DAWN STEHLE, in her individual capacity as
Director of the DIVISION OF MEDICAL
SERVICES, ARKANSAS DEPARTMENT
OF HUMAN SERVICES,
      Appellee

## <u>NOTICE OF APPEAL</u>

Now comes Maxus Inc. and Trinity Behavioral Healthcare System, Inc., through its attorneys, Michael J. Scotti III and Ron Hope, stating its notice of appeal.

1. **NOTICE OF APPEAL.** Maxus and Trinity hereby tender notice of appeal pursuant to their legal rights under federal and state law, including without limitation 42 C.F.R. 455.23(a) and Ark. Admin. Code 016.06.35-161-400, from the Arkansas Division of Medical Services' adverse decisions to suspend Medicaid payments. The adverse decisions giving rise to this notice were embodied in two letters directed to Ted Suhl, president and CEO of Maxus and Trinity, both dated October 7, 2014. Pursuant to these letters, DMS has suspended receipt of any Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries of Maxus and Trinity. Further, effective thirty (30) days from the date of these letters, DMS will suspend all other Medicaid payments due Trinity and Maxus. Trinity and Maxus allege that these adverse decisions made by DMS to suspend Medicaid payments are not supported by applicable federal law and rule, state law and rule, and Arkansas Department of Human Service policy.

2. **REQUEST FOR COMBINED HEARING.** Maxus and Trinity hereby request to combine their respective rights to appeal. Both entities are under identical control and ownership, and the adverse decision levied against each is identical. Additionally, the allegations asserted by DMS in its October 7, 2014 letters appear to cite the same underlying alleged facts with respect to Maxus and Trinity president and CEO Ted Suhl.

Dated this 22nd day of October, 2014

By: _____

Michael J. Scotti III

Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
312.360.6000

Ron Hope
Hope, Trice O'Dwyer & Wilson, P.A.
211 Spring Street
Little Rock, Arkansas 72201

Dated:   October 22, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he/she/they caused a copy of the foregoing NOTICE

OF APPEAL to be served upon the following parties via electronic mail and U.S. Mail, postage

prepaid, on October 22, 2014:

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S401
Little Rock, AR 72203-1437


Office of Appeals and Hearings
Arkansas Department of Human Services
P.O. Box 1437, Slot S401
Little Rock, AR 72203-1437

Brad R. Bergmooser

# EXHIBIT H

On Oct 13, 2014, at 11:34 AM, "Ron Hope" <rhope@htolaw.com> wrote:

Thank you Mark.  Was there a written determination by the Agency of a credible determination of fraud? Was there any documentation of an investigation pending under the Medicaid Program?

Thanks again,

Ron

Ronald A. Hope
Hope, Trice, O'Dwyer & Wilson, P.A.
211 S. Spring St.
Little Rock, AR  72201
direct 501.313.4201
main 501.372.4144
facsimile 501.372.7480
rhope@htolaw.com

**From:** Mark White [mailto:Mark.White@dhs.arkansas.gov]
**Sent:** Monday, October 13, 2014 11:25 AM
**To:** Ron Hope
**Cc:** Kathryn Eickhoff; Mike Scotti; Lori McDonald
**Subject:** RE: Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Attached please find the responsive documents. Two notes:

1. I have included copies of the notice letters we are sending to beneficiaries and their PCPs, as the letters refer to the allegations.
2. I have also included a copy of our transition plan summary as of Friday, as I am assuming it would fall under your request for "the file."

If you have any questions or other requests, please let me know.

Thanks,

Mark

----------------------
**PLEASE NOTE** my e-mail address has changed: Mark.White@DHS.Arkansas.gov

J. Mark White
Director, Office of Policy and Legal Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6315
Mark.White@DHS.Arkansas.gov

This message is intended only for the named recipient. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

**From:** Ron Hope [mailto:rhope@htolaw.com]
**Sent:** Friday, October 10, 2014 9:44 PM
**To:** Mark White
**Cc:** Kathryn Eickhoff; Mike Scotti
**Subject:** Re: Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Thank you Mark for your quick response. My purpose was to request everything you have regarding the suspensions of the two companies. If you'll let me know when the copies are ready I'll pick them up and you won't have to mail them. If it's not too voluminous, you are welcome to email them.

Thank you again,
Ron

Ron Hope, iPhone
501-313-4201 direct

On Oct 10, 2014, at 5:46 PM, "Mark White" <Mark.White@dhs.arkansas.gov> wrote:

> I am a bit unclear as to what you mean in requests #1 and #2 by "the file," in that the documents I believe are responsive to your request are also covered by requests #3 and #4. Nonetheless, I will copy those documents and forward them to you at the address provided. If you wish to clarify or supplement your request, please let me know.
>
> Thanks,
>
> Mark
> ----------------------

2

**PLEASE NOTE** my e-mail address has changed: <u>Mark.White@DHS.Arkansas.gov</u>

J. Mark White
Director, Office of Policy and Legal Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6315
<u>Mark.White@DHS.Arkansas.gov</u>

This message is intended only for the named recipient. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

**From:** Ron Hope [<u>mailto:rhope@htolaw.com</u>]
**Sent:** Friday, October 10, 2014 11:32 AM
**To:** Mark White
**Cc:** Kathryn Eickhoff; Scotti, III, Michael J.
**Subject:** Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Dear Mr. White,

Pursuant to the Arkansas Freedom of Information Act, ACA sec. 25-10-101 et seq., please provide or make available to our clients Maxus, Inc. and Trinity Behavioral Healthcare System, Inc., for inspection and copying the following public records relating to the recent temporary suspensions of payments to these companies:

1. A complete copy of the file regarding the temporary suspension of Medicaid payments to Maxus, Inc.
2. A complete copy of the file regarding the temporary suspension of Medicaid payment to Trinity Behavioral Healthcare System, Inc.
3. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Maxus, Inc.
4. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Trinity Behavioral Healthcare System, Inc.

Please forward copies of the responses to our clients in care of the undersigned counsel at 211 S. Spring St., Little Rock, Arkansas  72201.  If copies cannot be produced, please contact the undersigned to make arrangements for inspection and copying of the documents requested.  Thank you for your courteous attention to this matter.

Sincerely,

Ron Hope

Ronald A. Hope
Hope, Trice, O'Dwyer & Wilson, P.A.

3

211 S. Spring St.
Little Rock, AR 72201
direct 501.313.4201
main 501.372.4144
facsimile 501.372.7480
rhope@htolaw.com

CONFIDENTIAL & PRIVILEGED

Note: This transmission is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and intended to be delivered only to the named addressee(s) and the information contained in this e-mail is intended only for the personal and confidential use of the recipients(s) named above. This message may be an attorney-client communication and/or attorney work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, copying or other use of this message is strictly prohibited. If you have received this communication in error, please notify Hope, Trice O'Dwyer & Wilson, P.A. immediately at 501.372.4144 or by e-mail.

NOTICE : The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.

NOTICE : The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.

On Oct 10, 2014, at 5:46 PM, "Mark White" <Mark.White@dhs.arkansas.gov> wrote:

I am a bit unclear as to what you mean in requests #1 and #2 by "the file," in that the documents I believe are responsive to your request are also covered by requests #3 and #4. Nonetheless, I will copy those documents and forward them to you at the address provided. If you wish to clarify or supplement your request, please let me know.

Thanks,

Mark
----------------------
**PLEASE NOTE** my e-mail address has changed: Mark.White@**DHS**.Arkansas.gov

J. Mark White
Director, Office of Policy and Legal Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6315
Mark.White@DHS.Arkansas.gov

This message is intended only for the named recipient. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

---

**From:** Ron Hope [mailto:rhope@htolaw.com]
**Sent:** Friday, October 10, 2014 11:32 AM
**To:** Mark White
**Cc:** Kathryn Eickhoff; Scotti, III, Michael J.
**Subject:** Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Dear Mr. White,

Pursuant to the Arkansas Freedom of Information Act, ACA sec. 25-10-101 et seq., please provide or make available to our clients Maxus, Inc. and Trinity Behavioral Healthcare System, Inc., for inspection and copying the following public records relating to the recent temporary suspensions of payments to these companies:

1. A complete copy of the file regarding the temporary suspension of Medicaid payments to Maxus, Inc.
2. A complete copy of the file regarding the temporary suspension of Medicaid payment to Trinity Behavioral Healthcare System, Inc.
3. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Maxus, Inc.
4. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Trinity Behavioral Healthcare System, Inc.

Please forward copies of the responses to our clients in care of the undersigned counsel at 211 S. Spring St., Little Rock, Arkansas 72201. If copies cannot be produced, please contact the undersigned to make arrangements for inspection and copying of the documents requested. Thank you for your courteous attention to this matter.

Sincerely,

Ron Hope

Ronald A. Hope
Hope, Trice, O'Dwyer & Wilson, P.A.
211 S. Spring St.
Little Rock, AR 72201
direct 501.313.4201
main 501.372.4144
facsimile 501.372.7480
rhope@htolaw.com

CONFIDENTIAL & PRIVILEGED

Note: This transmission is protected by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and intended to be delivered only to the named addressee(s) and the information contained in this e-mail is intended only for the personal and confidential use of the recipients(s) named above. This message may be an attorney-client communication and/or attorney work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, copying or other use of this message is strictly prohibited. If you have received this communication in error, please notify Hope, Trice O'Dwyer & Wilson, P.A. immediately at 501.372.4144 or by e-mail.

NOTICE : The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.

NOTICE : The Arkansas Department of Human Services has determined that this message may contain confidential or otherwise protected information. We have used transport encryption to help protect this message while in transit to you. Please take all reasonable measures to protect any protected or confidential data that might be in this message, including the limitation of re-disclosure to the minimum number of recipients necessary. Please report any inappropriate disclosure to https://dhs.arkansas.gov/reporting or as required by law.

# EXHIBIT I

**From:**            Mark White <Mark.White@dhs.arkansas.gov>
**Sent:**           Monday, October 13, 2014 1:53 PM
**To:**                Ron Hope
**Cc:**                Kathryn Eickhoff; Scotti, III, Michael  J.; Lori McDonald
**Subject:**       Re: Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

The suspension letter was our written determination of a credible allegation of fraud. Although Department staff have been orally informed of an ongoing investigation by federal authorities, there are no written records showing the same. The referral letter addressed to OMIG and MFCU is the only written record of any state investigation.

Thanks,

Mark

Thanks,

Mark

Sent from my iPhone

On Oct 13, 2014, at 11:34 AM, "Ron Hope" <rhope@htolaw.com> wrote:

> Thank you Mark.  Was there a written determination by the Agency of a credible determination of fraud? Was there any documentation of an investigation pending under the Medicaid Program?
>
> Thanks again,
>
> Ron
>
> Ronald A. Hope
> Hope, Trice, O'Dwyer & Wilson, P.A.
> 211 S. Spring St.
> Little Rock, AR  72201
> direct 501.313.4201
> main 501.372.4144
> facsimile 501.372.7480
> rhope@htolaw.com
>
> **From:** Mark White [mailto:Mark.White@dhs.arkansas.gov]
> **Sent:** Monday, October 13, 2014 11:25 AM
> **To:** Ron Hope
> **Cc:** Kathryn Eickhoff; Mike Scotti; Lori McDonald
> **Subject:** RE: Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.
>
> Attached please find the responsive documents. Two notes:

1

1. I have included copies of the notice letters we are sending to beneficiaries and their PCPs, as the letters refer to the allegations.
2. I have also included a copy of our transition plan summary as of Friday, as I am assuming it would fall under your request for "the file."

If you have any questions or other requests, please let me know.

Thanks,

Mark

---------------------

**PLEASE NOTE** my e-mail address has changed: Mark.White@**DHS**.Arkansas.gov

J. Mark White
Director, Office of Policy and Legal Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6315
Mark.White@DHS.Arkansas.gov

This message is intended only for the named recipient. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

---

**From:** Ron Hope [mailto:rhope@htolaw.com]
**Sent:** Friday, October 10, 2014 9:44 PM
**To:** Mark White
**Cc:** Kathryn Eickhoff; Mike Scotti
**Subject:** Re: Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Thank you Mark for your quick response. My purpose was to request everything you have regarding the suspensions of the two companies. If you'll let me know when the copies are ready I'll pick them up and you won't have to mail them. If it's not too voluminous, you are welcome to email them.

Thank you again,
Ron

Ron Hope, iPhone
501-313-4201 direct

On Oct 10, 2014, at 5:46 PM, "Mark White" <Mark.White@dhs.arkansas.gov> wrote:

> I am a bit unclear as to what you mean in requests #1 and #2 by "the file," in that the documents I believe are responsive to your request are also covered by requests #3 and #4. Nonetheless, I will copy those documents and forward them to you at the address provided. If you wish to clarify or supplement your request, please let me know.
>
> Thanks,
>
> Mark
> ---------------------

2

**PLEASE NOTE** my e-mail address has changed: Mark.White@DHS.Arkansas.gov

J. Mark White
Director, Office of Policy and Legal Services
Arkansas Department of Human Services
P.O. Box 1437, Slot S260
Little Rock, AR 72203-1437
(501) 320-6315
Mark.White@DHS.Arkansas.gov

This message is intended only for the named recipient. If you are not the intended recipient you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

---

**From:** Ron Hope [mailto:rhope@htolaw.com]
**Sent:** Friday, October 10, 2014 11:32 AM
**To:** Mark White
**Cc:** Kathryn Eickhoff; Scotti, III, Michael J.
**Subject:** Maxus, Inc. and Trinity Behavioral Healthcare System, Inc.

Dear Mr. White,

Pursuant to the Arkansas Freedom of Information Act, ACA sec. 25-10-101 et seq., please provide or make available to our clients Maxus, Inc. and Trinity Behavioral Healthcare System, Inc., for inspection and copying the following public records relating to the recent temporary suspensions of payments to these companies:

1. A complete copy of the file regarding the temporary suspension of Medicaid payments to Maxus, Inc.
2. A complete copy of the file regarding the temporary suspension of Medicaid payment to Trinity Behavioral Healthcare System, Inc.
3. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Maxus, Inc.
4. Copies of all documents, or other evidence, that DHS employees have received, reviewed, sent, or authored in connection with the alleged "credible allegation of fraud" against Trinity Behavioral Healthcare System, Inc.

Please forward copies of the responses to our clients in care of the undersigned counsel at 211 S. Spring St., Little Rock, Arkansas 72201. If copies cannot be produced, please contact the undersigned to make arrangements for inspection and copying of the documents requested. Thank you for your courteous attention to this matter.

Sincerely,

Ron Hope

Ronald A. Hope
Hope, Trice, O'Dwyer & Wilson, P.A.

3

211 S. Spring St.
Little Rock, AR  72201
direct 501.313.4201
main 501.372.4144
facsimile 501.372.7480
rhope@htolaw.com

CONFIDENTIAL & PRIVILEGED

Note: This transmission is protected by the Electronic Communications Privacy
Act, 18 U.S.C. Sections 2510-2521 and intended to be delivered only to the
named addressee(s) and the information contained in this e-mail is intended only
for the personal and confidential use of the recipients(s) named above. This
message may be an attorney-client communication and/or attorney work product
and as such is privileged and confidential. If the reader of this message is not the
intended recipient or an agent responsible for delivering it to the intended
recipient, you are hereby notified that you have received this document in error
and that any review, dissemination, distribution, copying or other use of this
message is strictly prohibited. If you have received this communication in error,
please notify Hope, Trice O'Dwyer & Wilson, P.A. immediately at 501.372.4144
or by e-mail.

NOTICE : The Arkansas Department of Human Services has determined that this
message may contain confidential or otherwise protected information. We have
used transport encryption to help protect this message while in transit to you.
Please take all reasonable measures to protect any protected or confidential data
that might be in this message, including the limitation of re-disclosure to the
minimum number of recipients necessary. Please report any inappropriate
disclosure to https://dhs.arkansas.gov/reporting or as required by law.

NOTICE : The Arkansas Department of Human Services has determined that this message may
contain confidential or otherwise protected information. We have used transport encryption to
help protect this message while in transit to you. Please take all reasonable measures to protect
any protected or confidential data that might be in this message, including the limitation of re-
disclosure to the minimum number of recipients necessary. Please report any inappropriate
disclosure to https://dhs.arkansas.gov/reporting or as required by law.



**Division of Medical Services**

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789



October 7, 2014

Maxus, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:    Maxus, Inc.
       Medicaid Provider Nos.


       Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all Medicaid payments to a provider when the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid Program against the individual or entity.

You are hereby notified that DHS received a credible allegation of fraud against Maxus, Inc. ("Maxus") and will suspend all Medicaid payments to Maxus in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. Maxus will be notified, in writing, when this temporary suspension is terminated. This suspension applies to all Medicaid claims by Maxus.

This action is taken based upon credible allegations that you, as owner of Maxus, a behavioral health care provider, allegedly provided cash and other things of value to an official of DHS, in return for that official's acts, including the provision of internal DHS information that benefitted both you and Maxus. These acts were allegedly concealed from the agency. The allegation is of an exchange of cash and other things of value for the acts and information provided to you and Maxus that was unauthorized and illegal and was beneficial to Maxus, in violation of 18 U.S.C. §§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause exists to immediately suspend payment only in part. Effective with the date of this letter, DHS will immediately suspend Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds

that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Maxus has the right to submit written evidence for consideration by DHS. Maxus also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services



**Division of Medical Services**

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789



October 7, 2014

Trinity Behavioral Healthcare System, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:    Trinity Behavioral Health Care System, Inc.
       Medicaid Provider No. ·
       Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of
Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all
Medicaid payments to a provider when the agency determines there is a credible allegation of
fraud for which an investigation is pending under the Medicaid Program against the individual or
entity.

You are hereby notified that DHS received a credible allegation of fraud against Trinity
Behavioral Health Care System, Inc. ("Trinity") and will suspend all Medicaid payments to
Trinity in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue
until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or
until the legal proceedings related to the alleged fraud are completed. Trinity will be notified, in
writing, when this temporary suspension is terminated. This suspension applies to all Medicaid
claims by Trinity.

This action is taken based upon credible allegations that you, as owner of Trinity, a behavioral
health care provider, allegedly provided cash and other things of value to an official of DHS, in
return for that official's acts, including the provision of internal DHS information that benefitted
both you and Trinity. These acts were allegedly concealed from the agency. The allegation is of
an exchange of cash and other things of value for the acts and information provided to you and
Trinity that was unauthorized and illegal and was beneficial to Trinity, in violation of 18 U.S.C.
§§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause
exists to immediately suspend payment only in part. Effective with the date of this letter, DHS
will immediately suspend Medicaid payments for any new inpatient admissions and for any new
outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date
of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds
that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care

and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Trinity has the right to submit written evidence for consideration by DHS. Trinity also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

*Dawn Stehle*

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services



**ARKANSAS**
**DEPARTMENT OF**
**HUMAN**
**SERVICES**

**Office of Policy and Legal Services**

P.O. Box 1437, Slot S260 · Little Rock, AR 72203-1437
501-320-6315 · Fax: 501-682-8009 · TDD: 501-682-8933



October 8, 2014

Hon. Jeanette Hamilton, Director
Arkansas Medicaid Fraud Control Unit
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201

Hon. Jay Shue, Arkansas Medicaid Inspector General
Office of the Medicaid Inspector General
323 Center Street, Suite 1200
Little Rock, AR 72201

Ms. Hamilton and Mr. Shue:

In compliance with 42 C.F.R. § 455.23(a), the Arkansas Department of Human Services
("DHS") will suspend all Medicaid payments to two Medicaid providers – Maxus, Inc., and
Trinity Behavioral Health Care System, Inc. – on the basis of a credible allegation of fraud
for which an investigation is pending. The suspension notices are attached.

These suspensions are based on allegations that Mr. Ted Suhl, as owner of both providers,
provided cash and other things of value to an official of DHS, in return for that official's acts,
including the provision of internal DHS information that benefitted both providers. These
acts were allegedly concealed from the agency. If true, this alleged exchange of cash and
other things of value for the acts and information provided was unauthorized and illegal
and was beneficial to the providers, in violation of 18 U.S.C. §§ 371 & 666. It is our
understanding there is an ongoing federal investigation regarding these allegations.

The factual basis for these allegations is set forth in three documents filed in the United
States District Court for the Eastern District of Arkansas by the U.S. Attorney – an
Information charging Steven B. Jones with violation of 18 U.S.C. §§ 371 & 666; a Plea
Agreement signed by Mr. Jones and his attorney; and a Factual Basis for Plea statement
signed by Mr. Jones and his attorney. The three documents are attached.

As required by 42 C.F.R. § 455.23(d) and Ark. Code Ann. § 20-77-2501 *et seq.*, DHS is
referring this credible allegation of fraud to you both.

Sincerely,

J. Mark White
Director, Office of Policy and Legal Services, DHS



**Division of Medical Services**

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789



October 7, 2014

Maxus, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:     Maxus, Inc.
        Medicaid Provider Nos.


        Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all Medicaid payments to a provider when the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid Program against the individual or entity.

You are hereby notified that DHS received a credible allegation of fraud against Maxus, Inc. ("Maxus") and will suspend all Medicaid payments to Maxus in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. Maxus will be notified, in writing, when this temporary suspension is terminated. This suspension applies to all Medicaid claims by Maxus.

This action is taken based upon credible allegations that you, as owner of Maxus, a behavioral health care provider, allegedly provided cash and other things of value to an official of DHS, in return for that official's acts, including the provision of internal DHS information that benefitted both you and Maxus. These acts were allegedly concealed from the agency. The allegation is of an exchange of cash and other things of value for the acts and information provided to you and Maxus that was unauthorized and illegal and was beneficial to Maxus, in violation of 18 U.S.C. §§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause exists to immediately suspend payment only in part. Effective with the date of this letter, DHS will immediately suspend Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds

that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Maxus has the right to submit written evidence for consideration by DHS. Maxus also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services



**Division of Medical Services**

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197 · TDD: 501-682-6789



October 7, 2014

Trinity Behavioral Healthcare System, Inc.
ATTN: Mr. Ted Suhl
1033 Old Burr Road
Warm Springs, AR 72478

Re:   Trinity Behavioral Health Care System, Inc.
      Medicaid Provider No.
      Temporary Suspension

Dear Mr. Suhl:

Per 42 C.F.R. §455.23(a), Arkansas Department of Human Services ("DHS"), Division of Medical Services, the Medicaid agency for the State of Arkansas, is required to suspend all Medicaid payments to a provider when the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid Program against the individual or entity.

You are hereby notified that DHS received a credible allegation of fraud against Trinity Behavioral Health Care System, Inc. ("Trinity") and will suspend all Medicaid payments to Trinity in accordance with 42 C.F.R. §455.23(a). This suspension is temporary and will continue until DHS or the prosecuting authorities determine that there is insufficient evidence of fraud or until the legal proceedings related to the alleged fraud are completed. Trinity will be notified, in writing, when this temporary suspension is terminated. This suspension applies to all Medicaid claims by Trinity.

This action is taken based upon credible allegations that you, as owner of Trinity, a behavioral health care provider, allegedly provided cash and other things of value to an official of DHS, in return for that official's acts, including the provision of internal DHS information that benefitted both you and Trinity. These acts were allegedly concealed from the agency. The allegation is of an exchange of cash and other things of value for the acts and information provided to you and Trinity that was unauthorized and illegal and was beneficial to Trinity, in violation of 18 U.S.C. §§ 371 & 666.

Because of the large number of beneficiaries impacted by this action, DHS finds that good cause exists to immediately suspend payment only in part. Effective with the date of this letter, DHS will immediately suspend Medicaid payments for any new inpatient admissions and for any new outpatient beneficiaries. All remaining payments will be suspended thirty (30) days from the date of this letter, to allow time for existing beneficiaries to transition to new providers. DHS finds that this delay is in the best interests of the Medicaid program, so as to ensure continuity of care

and to avoid the duplicative or unnecessary expenses that could be caused by an immediate transition.

Trinity has the right to submit written evidence for consideration by DHS. Trinity also has a right to appeal this temporary suspension of payment pursuant to 42 C.F.R §455.23(a)(3) and Medicaid Program Manual Sections, 152.000, 156.000 and 161.400. Please refer to the Medicaid Program Manual for details and time limitations on appeal.

Sincerely,

Dawn Stehle
Director, Division of Medical Services
Arkansas Department of Human Services

U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**

OCT - 2 2014

IN OPEN COURT
JAMES W. McCORMACK, CLERK
BY: _Melanie Beard_
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:14-CR-197 BRW |
| | ) | |
| STEVEN B. JONES | ) | |
| | ) | |

### INFORMATION

The United States charges that, at all times material to this Information:

### GENERAL ALLEGATIONS

1.     The Arkansas Department of Human Services (ADHS) was an agency of the government of the State of Arkansas.  ADHS was Arkansas' largest state agency, with more than 7,500 employees and a budget of approximately $6.8 billion.  Among other things, ADHS works with a system of community mental health care centers to provide mental health services to adults, juveniles, and children.

2.     In each of the calendar years of 2007, 2008, 2009, 2010, 2011, and 2012 ADHS received over $10,000 in federal funding.

3.     Defendant STEVEN B. JONES was a resident of Crittenden County, Arkansas. JONES was a Deputy Director of ADHS from in or about April 2007 to in or about July 2013. Prior to becoming Deputy Director of ADHS, JONES served in the Arkansas House of Representatives from in or about November 1998 to in or about December 2004.  JONES represented District 54, which included most of Crittenden County.

4.     As a supervisor and employee, JONES was an agent of ADHS, and he was responsible for, among other things, overseeing five of ADHS's ten divisions. JONES worked directly with the Division Directors in areas that encompass both state and federal programs, including at-risk youth and delinquent youth services facilities.

5.     PERSON A was a resident of Crittenden County, Arkansas. PERSON A was the Pastor and Superintendent of a church located in West Memphis, Arkansas.

6.     PERSON B was a resident of Crittenden County, Arkansas. PERSON B was a juvenile probation officer in Crittenden County and city councilmember for West Memphis, Arkansas. PERSON B was also affiliated with PERSON A's church.

7.     PERSON C was the owner of two mental health companies, COMPANY A and COMPANY B.

8.     COMPANY A provided outpatient mental health services to juveniles.

9.     COMPANY B provided inpatient mental health services to juveniles.

### COUNT ONE
**Conspiracy**
**(Violation of 18 U.S.C. § 371)**

10.     The introductory allegations set forth in paragraphs 1 through 9 are realleged and incorporated by reference as though fully set forth herein.

### The Conspiracy

11.     Beginning in or about April 2007, and continuing through in or about February 2012, in the Eastern District of Arkansas, and elsewhere, the defendant, STEVEN B. JONES, together with PERSON A, PERSON B, PERSON C, and others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other:

-2-

a.      to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of $5,000 or more of ADHS, an agency of the State of Arkansas, in violation of 18 U.S.C. § 666(a)(1)(B); and

b.      to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of the State of Arkansas of their right to the honest and faithful services of its public officials, through bribery and the concealment of material information, in violation of 18 U.S.C. §§ 1343 and 1346.

### Objects of the Conspiracy

12.     It was an object of the conspiracy for JONES, PERSON A, PERSON B, PERSON C, and others to enrich themselves and COMPANY A and COMPANY B, and to advance COMPANY A and COMPANY B's business interests, by providing cash payments and other things of value to JONES in exchange for JONES agreeing to take official acts to benefit PERSON C, COMPANY A, and COMPANY B.

13.     It was an object of the conspiracy to hide, conceal, and cover up the nature and scope of JONES' dealings with PERSON A, PERSON B, and PERSON C, including the true source and nature of the payments and other things of value solicited and received by JONES.

### Manner and Means

14.     The conspiracy was carried out through the following manner and means, among others:

a.      JONES solicited and received things of value, including cash payments, from PERSON C.

-3-

b.     PERSON C provided things of value to JONES, through the use of intermediaries, PERSONS A and B.

c.     In return for cash payments and other things of value, JONES agreed to perform official acts that benefitted PERSON C, COMPANY A, and COMPANY B.

d.     JONES, PERSON B, and PERSON C hid, concealed, and covered up their activity and dealings by holding periodic meetings at restaurants in Memphis, Tennessee or rural Arkansas so they would not be easily recognized.  At the meetings, they discussed the business interests of PERSON C, COMPANY A, and COMPANY B, and JONES agreed to take official acts to benefit PERSON C, COMPANY A, and COMPANY B, including providing internal ADHS information to PERSON C.

e.     In general, prior to or during the meetings between JONES, PERSON B and PERSON C, PERSON C would provide PERSON B with checks from companies associated with PERSON C that were made payable to PERSON A's church.  After the restaurant meetings, PERSON B would provide the checks to PERSON A, who typically deposited the checks or caused the checks to be deposited into church-related checking accounts (including an account associated with the church's child development center) and received cash in return—either directly from the church-related accounts or after transferring the money to a personal checking account.  PERSON A would then provide PERSON B with all or part of the cash, and PERSON B would, in turn, provide all or part of the cash payment to JONES during a subsequent, in-person meeting between JONES and PERSON B.

f.     JONES and PERSON C used PERSON B as an intermediary to relay messages, schedule meetings, and deliver bribe payments from PERSON C to JONES.

-4-

g.      JONES, PERSON A, PERSON B, and PERSON C frequently spoke in basic code when talking to each other on the telephone and refrained from using the names of other participants in the conspiracy.

h.      JONES, PERSON A, PERSON B, PERSON C, and others hid, concealed, and covered up their dealings and activity by using bank accounts associated with PERSON A's church to funnel bribe payments to JONES.  The transmission of the funds that were paid by PERSON C to JONES, with the assistance of PERSONS A and B, occurred through the use of interstate wire communications.

## Overt Acts

15.     In furtherance of the conspiracy, and to effect its objects and purposes, STEVEN B. JONES, and others, committed the following overt acts, among others, in the Eastern District of Arkansas, and elsewhere:

16.     On or about August 3, 2011, during the following recorded telephone conversation between JONES and PERSON B, JONES provided information to PERSON B regarding reports JONES had received in internal DHS monitoring meetings concerning COMPANY A and COMPANY B:

PERSON B:   Listen, this is what I called you about.  Our friend got some concerns about the way some of the referral process is going in Northeast Arkansas.  [Competitor company], it's like, everybody is obligated to give them to [competitor company]. I don't know if that's a move that was made by the State or what, but nothing has changed here in Crittenden County, we have a system of how we refer.

JONES:       I know you got that on lock. (laughing)

PERSON B:   Yeah, yeah.  [PERSON C] just had some concerns so, when you get home this weekend, if you can man, well it's state convocation [for PERSON B's church] this weekend, so we probably won't get a chance to touch.  But within the next two weeks.

JONES:   Yeah, I've actually been, I actually intended to call you a couple of weeks ago. Because some stuff, I told you I sit in on the monitor meetings now, because of [PERSON C].

PERSON B:   Right.

JONES:   And some stuff came up with [PERSON C] regarding [PERSON C] at the last . . . not [PERSON C] personally, regarding [PERSON C's] organization which is directed at [PERSON C] and I got the new monitoring reports yesterday . . . Monday, and I just haven't read them yet, but I was going to say, hell, you might, uh, get back on schedule.

17.   On or about August 3, 2011, during the same recorded telephone conversation, JONES and PERSON B continued to discuss scheduling a meeting with PERSON C, with JONES suggesting that they meet in Brinkley, Arkansas "like we did that time".  PERSON B told JONES he would call PERSON C and discuss scheduling the meeting.  JONES then agreed to provide information concerning internal reports about PERSON C and about a referral program in place at DHS, stating, "I get you up to speed with what's going on, you know, some of the stuff that's been said [about PERSON C] . . . Just let [PERSON C] know we still trying to look out on the inside, but I did not know about the referral thing changing. . . . [UI] So, we'll see if I can find out what's going on with that."

18.   On or about September 11, 2011, JONES, PERSON B, and PERSON C met at a restaurant in Memphis, Tennessee. PERSON C used a business credit card to pay for the meal, which cost $189.64.

19.     On or about September 11, 2011, during a recorded telephone conversation after the restaurant meeting, PERSON B called JONES and asked JONES: "Can you roll that information over in your head real quick and let's come back to the table next weekend?" JONES replied, "You know I can." JONES and PERSON B then had the following exchange:

PERSON B:   Alright. That's what we need to do.

JONES:      Ok.

PERSON B:   But [PERSON C's] adamant. [PERSON C] wants to know where you are on it. And, you know, what's the pros and cons?

JONES:      Yeah, let me just, let me just weigh it and make sure that it's cool. Because I know internally we have lots of discussions when those types of issues come up, so . . . .

PERSON B:   Right.

JONES:      Let me think it through for a minute and I'll get back with you.

PERSON B:   Ok. Ok. Alright. I appreciate you man.

20.     On or about November 23, 2011, during conversation consensually recorded by PERSON B, PERSON B told JONES: "[L]isten are you going to be in town, 'cause I got that little package I owe you from our last meeting." After JONES confirmed that he was in town, PERSON B stated, "You in town. Alright, well I ain't gonna be able to get with you today, but I'm going to catch you before the weekend's out. I done went up there and blessed the food man. So, you know I got to bring it to the table." JONES replied, "You're the man. . . Yeah, you kinda like the Lord, he may not come when you want him, but you right on time."

21.     On or about November 27, 2011, JONES met PERSON B at a restaurant in West Memphis, Arkansas, which was surveilled and consensually recorded.

22.     On or about November 27, 2011, during the surveilled and consensually recorded meeting at the restaurant in West Memphis, Arkansas, JONES accepted from PERSON B a $1,000 cash payment JONES believed to be bribe money provided by PERSON C related to the September 11, 2011 meeting.

All in violation of Title 18, United States Code, § 371.

## COUNT TWO
### Bribery Concerning Programs Receiving Federal Funds
### (Violation of 18 U.S.C. § 666(a)(1)(B))

23.     Paragraphs 1 through 9 and 15 through 22 are realleged and incorporated by reference as though fully set forth herein.

24.     In each of the calendar years 2009, 2010, and 2011, ADHS received in excess of $10,000 from the United States government under Federal programs involving grants, subsidies, loans, guarantees, insurance, and other forms of assistance.  In addition, JONES' position with ADHS was largely funded by Federal monies.

25.     From in or about August 2009 and continuing until in or about February 2012, in the Eastern District of Arkansas and elsewhere, the defendant, STEVEN B. JONES, a deputy director of ADHS—an agency of the government of the State of Arkansas—did knowingly and corruptly solicit and demand for his own benefit and the benefit of others, and accept and agree to accept, a thing of value from PERSON B and PERSON C—that is, cash payments, meals and beverages—for JONES and others intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of ADHS that involves $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

-8-

PATRICK C. HARRIS
First Assistant United States Attorney

PATRICIA S. HARRIS (AR #89208)
ANGELA S. JEGLEY (AR #79100)
Assistant United States Attorneys
Eastern District of Arkansas
Post Office Box 1229
424 W. Capitol Avenue, Suite 500
Little Rock, Arkansas 72203
Tel:  (501) 340-2600
Fax:  (501) 340-2725
Tricia.harris@usdoj.gov
Angela.jegley@usdoj.gov

JACK SMITH
Chief

EDWARD P. SULLIVAN (NY #2731032)
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W., 12th Floor
Washington, D.C. 20530
Tel:  (202) 514-1412
Fax:  (202) 514-3003
E-mail:  edward.sullivan@usdoj.gov

U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**

OCT - 2 2014

IN OPEN COURT
JAMES W. McCORMACK, CLERK
By: _Melanie Beard_
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA     )
    )
v.     )    No. 4:14-CR-197 BRW
    )
STEVEN B. JONES     )
    )

### PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the United States Attorney's Office for the Eastern District of Arkansas (USAO-EDAR) and the Public Integrity Section, Criminal Division, United States Department of Justice, and Steven B. Jones (hereinafter referred to as the "defendant") enter into the following agreement:

### Charges and Statutory Penalties

1.     The defendant agrees to plead guilty to a two-count Information, which includes Count 1, Conspiracy, in violation of Title 18, United States Code, Section 371, and Count 2, Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 666(a)(1)(B).

2.     The defendant understands that he is charged in Count 1 of the Information with Conspiracy, which has the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

    a.     First, from in or about April 2007, and continuing to in or about February 2012, two or more people reached an agreement to commit the crimes of bribery and honest services wire fraud;

*Ex. A*

b.     Second, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

c.     Third, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

d.     Fourth, while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

3.     The defendant further understands that he is charged in Count 2 of the Information with Bribery Concerning Programs Receiving Federal Funds.   The defendant understands that Title 18, United States Code, Section 666(a)(1)(B) has the following essential elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

a.     First, the defendant was an agent of the Arkansas Department of Human Services (ADHS), an agency of the government of the State of Arkansas;

b.     Second, between in or about August 2009 and continuing until in or about February 2012, the defendant corruptly solicited or demanded for the benefit of himself and others and accepted and agreed to accept from another, something of value, that is cash payments, meals and beverages, in connection with a business, transaction, or series of transactions of ADHS;

c.     Third, the business, transaction or series of transactions of ADHS involved something of a value of $5,000 or more; and

d.     Fourth, ADHS received benefits in excess of $10,000 in each of the calendar years 2009, 2010, 2011, and 2012, pursuant to a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance.

3.      The defendant understands that pursuant to Title 18, United States Code, Section 371, Count 1 carries a maximum sentence of five (5) years of imprisonment, a fine of $250,000 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, a three year term of supervised release, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.   The defendant further understands that pursuant to Title 18, United States Code, Section 666(a)(1)(B), Count 2 carries a maximum sentence of ten (10) years imprisonment, a fine of $250,000 or fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, a three year term of supervised release, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

4.      If the Court accepts the defendant's plea of guilty and the defendant fulfills each of the terms and conditions of this Plea Agreement, the United States agrees that it will not further prosecute the defendant for any crimes described in the attached "Factual Basis for Plea" or for any conduct of the defendant now known to the USAO-EDAR, the Public Integrity Section, and to the law enforcement agents working with the USAO-EDAR and the Public Integrity Section on the present investigation.   Nothing in this Plea Agreement is intended to provide any limitation of liability arising out of any acts of violence.

<u>Factual Stipulations</u>

5.      The defendant agrees that the attached "Factual Basis for Plea" fairly and accurately describes the defendant's actions and involvement in the offense to which the defendant is pleading guilty.   The defendant knowingly, voluntarily, and truthfully admits the facts set forth in the Factual Basis for Plea.

**Sentencing**

6.      The defendant is aware that the sentence will be imposed by the Court after
considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing
Guidelines"). The defendant acknowledges and understands that the Court will compute an
advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be
determined by the Court relying in part on the results of a Pre-Sentence Investigation by the
Court's probation office, which investigation will commence after the guilty plea has been entered.
The defendant is also aware that, under certain circumstances, the Court may depart from the
advisory sentencing guideline range that it has computed, and may raise that advisory sentence up
to and including the statutory maximum sentence or lower that advisory sentence. The defendant
is further aware and understands that the Court is required to consider the advisory guideline range
determined under the Sentencing Guidelines, but is not bound to impose that sentence; the Court is
permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may
be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing
these facts, the defendant understands and acknowledges that the Court has the authority to impose
any sentence within and up to the statutory maximum authorized by law for the offenses identified
in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence
imposed.

7.      The United States reserves the right to inform the Court and the probation office of
all facts pertinent to the sentencing process, including all relevant information concerning the
offenses committed, whether charged or not, as well as concerning the defendant and the
defendant's background. Subject only to the express terms of any agreed-upon sentencing

-4-

recommendations contained in this Plea Agreement, the United States further reserves the right to make any recommendation as to the quality and quantity of punishment.

      8.    The defendant is aware that any estimate of the probable sentence or the probable sentencing range relating to the defendant pursuant to the advisory Sentencing Guidelines that the defendant may have received from any source is only a prediction and not a promise, and is not binding on the United States, the probation office, or the Court, except as expressly provided in this Plea Agreement.

### Sentencing Guidelines Stipulations

      9.    The defendant understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, *Guidelines Manual* 2011 (hereinafter "Sentencing Guidelines" or "U.S.S.G."). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties stipulate to the following:

      a.    <u>Base Offense Level Under the Guidelines</u>

      The parties agree and stipulate that, because the defendant was a public official, the Base Offense Level, pursuant to U.S.S.G. § 2C1.1(a), is a Level 14.

      b.    <u>Specific Offense Characteristics Under the Guidelines</u>

      The parties agree and stipulate that because the offense involved more than one bribe, the defendant's Base Offense Level should be increased by two levels, pursuant to U.S.S.G. § 2C1.1(b)(1).

The parties agree and stipulate that pursuant to U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1, the things of value and benefits received by the defendant totaled between $10,000 and $20,000.

The parties do not agree and stipulate regarding the applicability of other Specific Offense Characteristics.

    c.    <u>Acceptance of Responsibility</u>

Provided that the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the United States, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, the United States agrees that a two-level reduction would be appropriate, pursuant to U.S.S.G § 3E1.1(a).

The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

        i.    fails to admit a complete factual basis for the plea at the time the defendant is sentenced or at any other time;

       ii.    challenges the adequacy or sufficiency of the United States' offer of proof at any time after the plea is entered;

      iii.    denies involvement in the offense;

      iv.    gives conflicting statements about that involvement or is untruthful with the Court, the United States, or the probation office;

       v.    fails to give complete and accurate information about the defendant's financial status to the probation office;

      vi.    obstructs or attempts to obstruct justice, prior to sentencing;

-6-

vii.   has engaged in conduct prior to signing this Plea Agreement which

reasonably could be viewed as obstruction or an attempt to obstruct

justice, and has failed to fully disclose such conduct to the United

States prior to signing this Plea Agreement;

viii.  fails to appear in Court as required;

ix.    after signing this Plea Agreement, engages in additional criminal

conduct; or

x.     attempts to withdraw the plea of guilty.

If the defendant has accepted responsibility as described above, and the defendant's

offense level is 16 or greater, the United States agrees that an additional one-level reduction would

be appropriate, pursuant to U.S.S.G. § 3E1.1(b), because the defendant has assisted authorities by

providing timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the

United States to avoid preparing for trial and permitting the Court to allocate its resources

efficiently.

    d.   <u>Criminal History Category and Sentencing Recommendation</u>

The defendant understands that his Criminal History Category will be determined by the

Court after completion of a Pre-Sentence Investigation Report by the probation office.   Based

upon the information now available to the United States (including representations by the

defense), the defendant's Criminal History Category is Level I.   The United States further agrees

to recommend the low end of any applicable sentencing guideline range.

**Agreement as to Sentencing Allocution**

4.      The parties agree that either party may suggest that the Court consider a sentence outside of the advisory Sentencing Guidelines range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

5.      In support of any variance or departure argument from the advisory Sentencing Guideline range, the defendant agrees to provide to the United States reports, motions, memoranda of law and documentation of any kind on which the defendant intends to rely at sentencing not later than the deadlines set by the Court or, if no sentencing schedule is set by the Court, 21 days before sentencing.   Any basis for sentencing with respect to which all expert reports, motions, memoranda of law and documentation have not been provided to the United States on or before the deadlines set by the Court, or if no sentencing schedule is set by the Court, 21 days before sentencing, shall be deemed waived.

**Court Not Bound by the Plea Agreement**

6.      It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Sentencing Guidelines range, or other sentencing issues.   In the event that the Court considers any Sentencing Guidelines adjustments, departures, or calculations different from any stipulations contained in this Plea Agreement, or contemplates a sentence outside the advisory Sentencing Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a), the parties reserve the right to answer any related inquiries from the Court.

-8-

Case 4:14-cr-00197-BRW   Document 5   Filed 10/02/14   Page 9 of 15

### Appeal Waiver

7.     The defendant is aware that he has the right to challenge the defendant's sentence and guilty plea on direct appeal.   The defendant is also aware that the defendant may, in some circumstances, be able to argue that the defendant's guilty plea should be set aside, or sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255). Knowing that, and in consideration of the concessions made by the United States in this Plea Agreement, the defendant knowingly and voluntarily waives his right to appeal or collaterally challenge: (a) the defendant's guilty plea and any other aspect of the defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and (b) the defendant's sentence or the manner in which his sentence was determined pursuant to 18 U.S.C. § 3742, except to the extent that the Court sentences the defendant to a period of imprisonment longer than the statutory maximum, or the Court departs upward from the applicable Sentencing Guidelines range pursuant to the provisions of U.S.S.G. § 5K.2 or based on a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

8.     The defendant further understands that nothing in this Plea Agreement shall affect the USAO-EDAR or the Public Integrity Section's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).   However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights.   By signing this Plea Agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this Plea Agreement with the defendant's attorney. The defendant further agrees, together with the United States, to request that the district court enter

a specific finding that the waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

9.    The defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in the United States Court of Appeals for the Eighth Circuit or Supreme Court cases decided after the date of this Plea Agreement that are held by the United States Court of Appeals for the Eighth Circuit or Supreme Court to have retroactive effect.

**Restitution**

10.    In addition to the other penalties provided by law, the Court may also order the defendant to make restitution under 18 U.S.C. § 3663.   The defendant understands that restitution may be ordered by the Court to all victims of the defendant's criminal conduct and not merely for those victims included in the count(s) to which the defendant agrees to plead guilty.

**Release/Detention**

11.    The defendant acknowledges that while the United States will not seek a change in the defendant's release conditions pending sentencing, the final decision regarding the defendant's bond status or detention will be made by the Court at the time of the defendant's plea of guilty. Should the defendant engage in further criminal conduct or violate any conditions of release prior to sentencing, however, the United States may move to change the defendant's conditions of release or move to revoke the defendant's release.

**Breach of Agreement**

12.    The defendant understands and agrees that if, after entering this Plea Agreement, the defendant fails specifically to perform or to fulfill completely each and every one of the

defendant's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, the defendant will have breached this Plea Agreement.   In the event of such a breach: (a) the United States will be free from its obligations under the Plea Agreement; (b) the defendant will not have the right to withdraw the guilty plea; (c) the defendant shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the United States will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements made by the defendant and any of the information or materials provided by the defendant, including such statements, information and materials provided pursuant to this Plea Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Plea Agreement, including the defendant's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

13.     The defendant understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn.   The defendant knowingly and voluntarily waives the rights which arise under these rules.

14.     The defendant understands and agrees that the United States shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence.   The defendant further understands and agrees that the United States need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

15.     Nothing in this Plea Agreement shall be construed to permit the defendant to commit perjury, to make false statements or declarations, to obstruct justice, or to protect the defendant from prosecution for any crimes not included within this Plea Agreement or committed

-11-

by the defendant after the execution of this Plea Agreement.   The defendant understands and

agrees that the United States reserves the right to prosecute the defendant for any such offenses.

The defendant further understands that any perjury, false statements or declarations, or obstruction

of justice relating to the defendant's obligations under this Plea Agreement shall constitute a

breach of this Plea Agreement.   However, in the event of such a breach, the defendant will not be

allowed to withdraw this guilty plea.

### Waiver of Statute of Limitations

16.     It is further agreed that should any conviction following the defendant's plea of

guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not

time-barred by the applicable statute of limitations on the date of the signing of this Plea

Agreement (including any counts that the United States has agreed not to prosecute or to dismiss at

sentencing pursuant to this Plea Agreement) may be commenced or reinstated against the

defendant, notwithstanding the expiration of the statute of limitations between the signing of this

Plea Agreement and the commencement or reinstatement of such prosecution.   It is the intent of

this Plea Agreement to waive all defenses based on the statute of limitations with respect to any

prosecution that is not time-barred on the date that this Plea Agreement is signed.

### Complete Agreement

17.     No other agreements, promises, understandings, or representations have been made

by the parties or their counsel than those contained in writing herein, nor will any such agreements,

promises, understandings, or representations be made unless committed to writing and signed by

the defendant, defense counsel, and a prosecutor for the USAO-EDAR or the Public Integrity

Section.

18.     The defendant further understands that this Plea Agreement is binding only upon the USAO-EDAR and the Public Integrity Section.   This Plea Agreement does not bind the Civil Division of the United States Department of Justice or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor.   It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against the defendant.

19.     If the foregoing terms and conditions are satisfactory, the defendant may so indicate by signing the Plea Agreement in the space indicated below and returning the original to me once it has been signed by the defendant and by you or other defense counsel.

Respectfully submitted,

PATRICK C. HARRIS
First Assistant United States Attorney

_____
PATRICIA S. HARRIS (AR #89208)
ANGELA S. JEGLEY (AR #79100)
Assistant United States Attorneys
Eastern District of Arkansas
Post Office Box 1229
424 W. Capitol Avenue, Suite 500
Little Rock, Arkansas 72203
Tel:   (501) 340-2600
Fax:   (501) 340-2725
E-mail:   tricia.harris@usdoj.gov
          angela.jegley@usdoj.gov

JACK SMITH
Chief

_____
EDWARD P. SULLIVAN (NY #2731032)
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave., N.W., 12th Floor
Washington, D.C. 20530
Tel:   (202) 514-1412
Fax:   (202) 514-3003
E-mail:   edward.sullivan@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read this Plea Agreement in its entirety and discussed it with my attorney.   I hereby
acknowledge that it fully sets forth my agreement with the United States.   I further state that no
additional promises or representations have been made to me by any official of the United States
in connection with this matter.   I understand the crimes to which I have agreed to plead guilty,
the maximum penalties for those offenses and Sentencing Guideline penalties potentially
applicable to them.   I am satisfied with the legal representation provided to me by my attorney.
We have had sufficient time to meet and discuss my case.   We have discussed the charges against
me, possible defenses I might have, the terms of this Plea Agreement, and whether I should go to
trial.   I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am
guilty of the offenses to which I am pleading guilty, and I believe this Plea Agreement is in my
best interest.

Date: _8-18-14_                              _____
                                             STEVEN B. JONES
                                             Defendant

-14-

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this Plea Agreement, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully.   These pages accurately and completely set forth the entire Plea Agreement.   I concur in my client's desire to plead guilty as set forth in this Plea Agreement.

Date: __8-18-14__

MICHAEL BOOKER, ESQ.
Attorney for the Defendant

DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**FILED**

OCT - 2 2014

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

OPEN COURT
ES W. McCORMACK, CLERK

*Melanie Beard*

DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:14-CR-197 BRW |
| | ) | |
| STEVEN B. JONES | ) | |
| | ) | |

## FACTUAL BASIS FOR PLEA

In support of the defendant's plea of guilty to Counts 1 and 2 of the Information, charging Conspiracy, in violation of Title 18, United States Code, Section 371, and Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 666(a)(2) and 2, STEVEN B. JONES (hereinafter referred to as the "defendant") admits that the following facts are true and that, if this matter were to proceed to trial, the United States could prove, through competent evidence, the following facts beyond a reasonable doubt:

1.     The Arkansas Department of Human Services (ADHS) was an agency of the government of the State of Arkansas.  ADHS was Arkansas' largest state agency, with more than 7,500 employees and a budget of approximately $6.8 billion.  Among other things, ADHS works with a system of community mental health care centers to provide mental health services to adults, juveniles, and children.

2.     In each of the calendar years of 2007, 2008, 2009, 2010, 2011, and 2012 ADHS received over $10,000 in federal funding.

Ex. A-1

3.      Defendant STEVEN B. JONES was a resident of Crittenden County, Arkansas.
JONES was a Deputy Director of ADHS from in or about April 2007 to in or about July 2013.
Prior to becoming Deputy Director of ADHS, JONES served in the Arkansas House of
Representatives from in or about November 1998 through in or about December 2004.  JONES
represented District 54, which included most of Crittenden County.

4.      As a supervisor and employee, JONES was an agent of ADHS, and he was
responsible for, among other things, overseeing five of ADHS's ten divisions.  JONES worked
directly with the Division Directors in areas that encompass both state and federal programs,
including at-risk youth and delinquent youth services facilities.

5.      PERSON A was a resident of Crittenden County, Arkansas.  PERSON A was the
Pastor and Superintendent of a church located in West Memphis, Arkansas.

6.      PERSON B was a resident of Crittenden County, Arkansas.  PERSON B was a
juvenile probation officer in Crittenden County and city councilmember for West Memphis,
Arkansas.  PERSON B was also affiliated with PERSON A's church.

7.      PERSON C was the owner of two mental health companies, COMPANY A and
COMPANY B.

8.      COMPANY A provided outpatient mental health services to juveniles.

9.      COMPANY B provided inpatient mental health services to juveniles.

10.     Beginning in or about April 2007, and continuing through in or about February
2012, in the Eastern District of Arkansas, and elsewhere:

a.      JONES solicited, accepted, and agreed to accept things of value from
PERSON C.

-2-

b.      PERSON C provided things of value to JONES, through the use of intermediaries, PERSONS A and B, including multiple cash payments totaling at least $10,000.

c.      In return for cash payments and other things of value, JONES agreed to perform and actually performed official acts that benefitted PERSON C, COMPANY A, and COMPANY B.

d.      JONES, PERSON B, and PERSON C concealed their activity and dealings by holding periodic meetings at restaurants in Memphis, Tennessee or rural Arkansas so they would not be easily recognized. At the meetings, they discussed the business interests of PERSON C, COMPANY A, and COMPANY B, and JONES agreed to take official acts to benefit PERSON C, COMPANY A, and COMPANY B, including providing internal ADHS information to PERSON C.

e.      In general, prior to or during the meetings between JONES, PERSON B and PERSON C, PERSON C would provide either PERSON A or PERSON B with checks from companies associated with PERSON C that were made payable to PERSON A's church. PERSON A typically deposited the checks or caused the checks to be deposited and received cash in return. PERSON A would then provide PERSON B with all or part of the cash, and PERSON B would, in turn, provide all or part of the cash payment to JONES during a subsequent, in-person meeting between JONES and PERSON B. On at least one occasion, PERSON A provided the cash directly to JONES. JONES also informed PERSON A that he wanted to receive cash instead of checks so that the bribe payments would not be easily traceable.

-3-

f.     JONES and PERSON C used PERSON B as an intermediary to relay messages, schedule meetings, and deliver bribe payments from PERSON C to JONES.

g.     JONES and PERSON B frequently spoke in basic code when talking to each other on the telephone and refrained from using PERSON C's name.

h.     JONES, PERSON A, PERSON B, PERSON C, and others hid, concealed, and covered up their dealings and activity by using bank accounts associated with PERSON A's church to funnel bribe payments to JONES.  The transmission of the funds that were paid by PERSON C to JONES, with the assistance of PERSONS A and B, occurred through the use of interstate wire communications.

11.    On or about August 3, 2011, during a recorded telephone conversation between JONES and PERSON B, JONES provided information to PERSON B regarding reports that JONES had received during internal ADHS monitoring meetings concerning COMPANY A and COMPANY B.

12.    On or about August 3, 2011, during the same recorded telephone conversation, PERSON B told JONES that PERSON C wanted to meet with JONES to discuss concerns about a referral process that PERSON C believed was disadvantageous to PERSON C's businesses.

13.     On or about August 3, 2011, during the same recorded telephone conversation, JONES and PERSON B continued to discuss scheduling a meeting with PERSON C, with JONES suggesting that they meet in Brinkley, Arkansas "like we did that time". PERSON B told JONES he would call PERSON C and discuss scheduling the meeting. JONES then agreed to provide information concerning ADHS's internal reports about PERSON C, stating, "I get you up to speed with what's going on, you know, some of the stuff that's been said [about PERSON C] . . . Just let [PERSON C] know we still trying to look out on the inside, but I did not know about the referral thing changing. . . . [UI] So, we'll see if I can find out what's going on with that." JONES also told PERSON B they should "get back on schedule," meaning that JONES wanted to start receiving bribe payments again as he had in the past on several occasions.

14.     On or about September 11, 2011, JONES, PERSON B, and PERSON C met at a restaurant in Memphis, Tennessee. PERSON C paid for the meals and beverages. During the meeting, JONES and PERSON C discussed ADHS issues affecting PERSON C's businesses.

15.     On or about September 11, 2011, during a recorded telephone conversation after the restaurant meeting in Memphis, Tennessee, PERSON B called JONES and asked JONES: "Can you roll that information over in your head real quick and let's come back to the table next weekend?" JONES replied, "You know I can." JONES and PERSON B then had the following exchange:

PERSON B:    Alright. That's what we need to do.

JONES:       Ok.

PERSON B:    But [PERSON C's] adamant. [PERSON C] wants to know where you are on it. And, you know, what's the pros and cons?

JONES:        Yeah, let me just, let me just weigh it and make sure that it's cool.  Because I
              know internally we have lots of discussions when those types of issues come up,
              so . . . .

PERSON B:    Right.

JONES:        Let me think it through for a minute and I'll get back with you.

PERSON B:    Ok. Ok. Alright. I appreciate you man.

16.    On or about November 23, 2011, during a conversation that was consensually recorded by PERSON B, PERSON B told JONES: "[L]isten are you going to be in town, 'cause I got that little package I owe you from our last meeting." After JONES confirmed that he was in town, PERSON B stated, "You in town. Alright, well I ain't gonna be able to get with you today, but I'm going to catch you before the weekend's out.  I done went up there and blessed the food man.  So, you know I got to bring it to the table."  JONES replied, "You're the man. . . Yeah, you kinda like the Lord, he may not come when you want him, but you right on time."

17.    On or about November 27, 2011, JONES met PERSON B at a restaurant in West Memphis, Arkansas, which was surveilled and consensually recorded.

18.    On or about November 27, 2011, during the surveilled and consensually recorded meeting at the restaurant in West Memphis, Arkansas, JONES accepted from PERSON B a $1,000 cash payment, which JONES believed to be bribe money provided by PERSON C related to the September 11, 2011 meeting.

19.    The defendant has read this Factual Basis for Plea and has discussed it with his attorney.  The defendant fully understands the contents of this Factual Basis for Plea and agrees without reserve that it accurately describes the events and his acts.  The defendant acknowledges that the contents of this Factual Basis for Plea do not constitute all of the facts relevant to the matters discussed herein.

_____          9-15-14
STEVEN B. JONES                           _____
Defendant                                 Date


_____          _____
MICHAEL BOOKER, ESQ.                      Date
Counsel for Defendant

-7-

FOR IMMEDIATE RELEASE   CRM

THURSDAY, OCTOBER 2, 2014       (202) 514-2007

WWW.JUSTICE.GOV TTY (866) 544-5309

### FORMER DEPUTY DIRECTOR OF THE LARGEST STATE

### AGENCY IN ARKANSAS PLEADS GUILTY TO BRIBERY SCHEME

WASHINGTON – A former deputy director of the Arkansas Department of Human Services (ADHS), a multi-billion dollar state agency, pleaded guilty today for providing official assistance in exchange for bribes from the owner of two mental health companies.

Assistant Attorney General Leslie R. Caldwell of the Justice Department's Criminal Division and First Assistant United States Attorney Patrick C. Harris of the Eastern District of Arkansas made the announcement.

Steven B. Jones, 49, of Marion, Arkansas, pleaded guilty to a two-count information charging him with conspiracy and bribery concerning programs receiving federal funds.  A sentencing hearing is scheduled for April 2, 2015, before U.S. District Judge Billy Roy Wilson of the Eastern District of Arkansas.

According to his plea agreement, Jones served as deputy director of ADHS from approximately April 2007 until July 2013.  While serving in that capacity, Jones solicited and accepted multiple cash payments and other things of value from the owner of two businesses that provided inpatient and outpatient mental health services to juveniles.  This individual provided the cash payments and other things of value to Jones through the use of two intermediaries, a local pastor and a former county probation officer and city councilman.

As part of his plea, Jones admitted that in return for the bribes, he provided official assistance, including providing internal ADHS information about the individual's businesses.  Jones further admitted that he and other members of the conspiracy concealed their dealings by, among other things, holding meetings at restaurants in Memphis, Tennessee, or rural Arkansas, where they would not be easily recognized; funneling the cash payments through the pastor's church; providing the bribe payments in

cash so that the transactions would not be easily traceable; and speaking in code during telephone conversations.

      The case was investigated by the FBI's Little Rock Field Office, and is being prosecuted by Trial Attorney Edward P. Sullivan of the Criminal Division's Public Integrity Section and Assistant U.S. Attorneys Patricia S. Harris and Angela S. Jegley of the Eastern District of Arkansas.

# # #

14-1081

DO NOT REPLY TO THIS MESSAGE.  IF YOU HAVE QUESTIONS, PLEASE USE THE CONTACTS IN THE MESSAGE OR CALL THE OFFICE OF PUBLIC AFFAIRS AT 202-514-2007.



**Division of Medical Services**

Medicaid Director's Office

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197



October 10, 2014

Re: Maxus, Inc. dba Arkansas Counseling Associates

Dear Beneficiary:

Maxus, Inc. (also known as Arkansas Counseling Associates) will be suspended as a Medicaid provider on November 5, 2014. This will affect the services you receive from Maxus. Arkansas Medicaid will not pay for your current behavioral health services at Maxus after November 5, 2014. If you choose to continue your services at Maxus after that date, you will be responsible for paying for them.

Maxus was suspended from Medicaid because of credible allegations of engaging in conduct that defrauds or abuses the Medicaid program. Effective immediately, Arkansas Medicaid will not pay for any <u>new</u> services at Maxus, Inc.

Value Options Arkansas can help you find another Medicaid provider in your area. Value Options Arkansas has set up a toll-free phone number that you can call. The Hotline is open from 8:00 a.m. to 5:00 p.m., Monday through Friday. Please call **1-877-821-0566, then, when asked, select Option 2.**

Please feel free to contact Vivian Jackson, 501-537-1359, or Derica Scott, 501-396-6369, at the Arkansas Medicaid Behavioral Health Unit if you have additional questions or concerns about this letter.

Sincerely,

Dawn Stehle, DHS – DMS Medicaid Director

Cc: Marilyn Strickland, DHS – DMS Chief Operating Officer
Anita Castleberry, DHS – DMS Business Operations Manager
Mark White, DHS Chief Counsel



**Division of Medical Services**
Medicaid Director's Office

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197



October 10, 2014

Re: Trinity Behavioral Health Care

Dear Parent or Guardian:

Trinity Behavioral Health Care will be suspended as a Medicaid provider on November 5, 2014. This will affect the services your child receives from Trinity. Arkansas Medicaid will not pay for staying at Trinity after November 5, 2014. If you choose to continue your child's services at Trinity after that date, you will be responsible for paying for them.

Trinity was suspended from Medicaid because of credible allegations of engaging in conduct that defrauds or abuses the Medicaid program.

ValueOptions Arkansas can help you find services from other Medicaid providers. A Care Coordinator is ready to help you move your child to another provider. You can call Value Options at **1-877-821-0566, then, when asked, press Option 2.** Someone will be available from 8:00 a.m. to 5:00 p.m., Monday through Friday to take your call.

All moves must occur before November 5, 2014, to allow Medicaid payment for services to continue.

Please feel free to contact Vivian Jackson, 501-537-1359, or Derica Scott, 501-396-6369, at the Arkansas Medicaid Behavioral Health Unit if you have questions or concerns about this letter.

Sincerely,

*Dawn Stehle*

Dawn Stehle, DHS – DMS Medicaid Director

Cc: Marilyn Strickland, DHS – DMS Chief Operating Officer
Anita Castleberry, DHS – DMS Business Operations Manager
Mark White, DHS Chief Counsel



**Division of Medical Services**
Medicaid Director's Office

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197



October 10, 2014

Re: Trinity Behavioral Health Care
      Maxus, Inc. dba Arkansas Counseling Associates

Dear Provider:

Trinity Behavioral Health Care and Maxus, Inc. (also known as Arkansas Counseling Associates) will be suspended as a Medicaid provider on November 5, 2014. This may affect your practice's volume of requests for services. Arkansas Medicaid will not pay for any services at Trinity and Maxus after November 5, 2014, so many Medicaid beneficiaries and their families will be looking elsewhere for help.

Trinity Behavioral Health Care and Maxus, Inc. were suspended as Medicaid providers by Medicaid based upon allegations of engaging in conduct that defrauds or abuses the Medicaid program. This means Arkansas Medicaid will not pay for new referrals, admissions, intakes, inpatient or outpatient services for Medicaid beneficiaries at Trinity Behavioral Health or Maxus, Inc. as of now.

ValueOptions Arkansas will assist both beneficiaries and providers to ease the disruption in services. Please contact Nicole May, Melissa Ortega, or Kerri Brazzel for additional information at **501-707-0950 or 1-877-821-0566, Option 2.**

All transition services must occur before November 5, 2014 to allow for continued Medicaid payment for affected beneficiaries.

Please feel free to contact Anita Castleberry, 501-682-8154 or Debra Garrison, 501-537-1361, if you have additional questions or concerns related to this letter.

Sincerely,

Dawn Stehle, DHS -DMS Medicaid Director

Cc: Marilyn Strickland, DHS – DMS Chief Operating Officer
Anita Castleberry, DHS-DMS Business Operations Manager
Mark White, DHS Chief Counsel



**ARKANSAS DEPARTMENT OF HUMAN SERVICES**

**Division of Medical Services**
Medicaid Director's Office

P.O. Box 1437, Slot S401 · Little Rock, AR 72203-1437
501-682-8292 · Fax: 501-682-1197



October 10, 2014

Re:   Trinity Behavioral Health Care
        Maxus, Inc., dba Arkansas Counseling Associates

Dear Primary Care Physician:

Trinity Behavioral Health Care and Maxus, Inc. (also known as Arkansas Counseling Associates) will be suspended as a Medicaid provider on November 5, 2014. Arkansas Medicaid will not pay for any services at Trinity and Maxus after November 5, 2014, so many Medicaid beneficiaries and their families will be looking elsewhere for help as they transition to new providers. This may affect your practice's volume of requests for referrals to other mental health providers.

Trinity Behavioral Health Care and Maxus, Inc. were suspended as Medicaid providers by Medicaid based upon allegations of engaging in conduct that defrauds or abuses the Medicaid program. This means Arkansas Medicaid will not pay for **new** services for Medicaid beneficiaries at Trinity Behavioral Health or Maxus, Inc. as of now.

Because your practice may experience increased requests for new referrals to other outpatient behavioral health centers or residential treatment facilities, Medicaid has developed a list of your primary care patients who may be affected. To obtain your list, please contact Debra Garrison at 501-537-1361.

The Department of Human Services, Division of Medical Services, has established a 30-calendar-day window within which beneficiaries currently at Trinity or receiving outpatient services at Maxus, Inc. may be transferred to other Medicaid-approved providers. All transition services must occur before November 5, 2014 to allow for continued Medicaid payment for services.

Please feel free to contact Anita Castleberry, 501-682-8154, or Debra Garrison, 501-537-1361, if you have additional questions or concerns related to this matter.

Sincerely,

Dawn Stehle, DHS – DMS Medicaid Director

Cc: Marilyn Strickland, DHS – DMS Chief Operating Officer
Anita Castleberry, DHS – DMS Business Operations Manager
Mark White, DHS Chief Counsel

❖ DMS to contact HP for letters (complete)
❖ DMS will draft notifications to beneficiaries, providers, PCP's (in process)
  ➢ DMS or its designee to notify the above groups
❖ Value Options will:
    ➢ Provide Care Coordination Services to transition the approximately 80 beneficiaries admitted to the present psychiatric residential treatment facility into appropriate medically necessary behavioral health services by assisting them and their families based upon review of their individual needs. It is anticipated this transition period will take 30 days.
    ➢ Establish a toll-free beneficiary hotline number to assist beneficiaries and their families (guardians) with referrals to other outpatient providers located within the beneficiary's area of residence. The toll free number will be available during regular business days and hours (8 a.m. to 5 p.m.). The phone number is 877-821-0566, option 2 at the voice prompt. Value Options will keep a phone log of the contacts and referrals made.
    ➢ Value Options will provide weekly reports monitoring the beneficiary transition and access to services.
    ➢ Value Options will provide DMS with a list of beneficiaries potentially receiving services from the inpatient and outpatient provider (completed)
❖ DMS will utilize beneficiary listings to run claims data and identify associated PCPs.  (in process)
❖ Beneficiary records transfer will be handled through regular HIPAA compliant requests. Value Options will assist providers and beneficiaries with coordinated dissemination of information related to timely records authorizations.
❖ Value Options shall authorize extension of benefits per normal process if additional patient assessments are required.
❖ PCP referrals for new provider services shall be handled according to established RSPMI policy; however, DMS will assess PCP capacity in the affected areas and utilize Medicaid Managed Care Services contract to resolve any issues that may arise.
❖ DMS and Value Options will coordinate with Division of Behavioral Health Services to ensure processes for transitioning beneficiaries are in alignment.